

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS

**REWARDS NETWORK ESTABLISHMENT SERVICES INC.,**

a Delaware Corporation,

   Plaintiff,

  v.              Case No. 1:16-cv-09952

**LA BOUCHERIE, INC.**, a New York Corporation;

and **Philip Lajaunie**, an Individual.

   Defendants.

<u>**ANSWER WITH COUNTERCLAIMS**</u>

Date mailed: January 2, 2018

Defendant Lajaunie for his Answer alleges as follows:

Denies each and every allegation contained in the paragraphs of the Amended Complaint marked 1, 2, 4, 5, 6, 7, 8, 9, 10, 13, 14, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 29, 30, 31, 34, 35, 36, 38, 39, 40, 41, 42, and 43.

Denies having sufficient knowledge to admit or deny the allegations contained in the paragraphs of the Amended Complaint marked 3, 11, 12, 15, 16, 23, and 32.

Defendant Philip Lajaunie, Pro se, as for his verified Counter Claims against Plaintiff REWARDS NETWORK ESTABLISHMENT SERVICES, INC.

<u>AS FOR A FIRST CAUSE OF COUNTER CLAIM</u>

1. Defendant Philip Lajaunie (Lajaunie) is an individual with a residence at 970 W. Broadway, #84, P.O. Box 30,000, Jackson, WY 83002
2. Plaintiffs Rewards Network Establishment Services Inc. (RN) was and is an Illinois entity with its Headquarters office located at 2 N Riverside Plaza, Chicago, IL 60606
3. According to information available publicly, RN is "a financial and marketing services company that provides restaurants with immediate capital".
4. According to RN's own web site: "Restaurant finance and marketing that grows your business"
5. In 2017, Rewards Network was acquired by TowerBrook Capital Partners, an investment firm headquartered in New York and London with more than $7 billion under management.
6. During 2015 and 2016, a New York representative for RN (NYC-based Craig Thompson) contacted Lajaunie's oldest restaurant, La Boucherie, Inc (doing business as: "Les Halles", a popular New York City restaurant since 1990) to propose additional capital.
7. With its lease scheduled to end in November 2015, La Boucherie Inc (LBI) chose not to respond to RN's advances.

8. However, Lajaunie was negotiating with LBI's new landlord to originate a new 10-year lease.
9. Negotiations were conducted positively (especially thanks to the restaurant's long-term popularity), and with the main business terms being agreed to, LBI's long-term lawyer took over, in order to finalize the lease legal terms.
10. When it became apparent that the new lease was nearing completion, LBI signaled to RN that it might be interested in a loan to renovate its 25 year-old premises.
11. LBI was already heavily upgrading its equipment, and changing its configuration to increase capacity by, in particular, moving the kitchen to the lower level.
12. Under a temporary arrangement with the landlord, LBI was using rent funds to perform the upgrades.
13. The RN representative quickly responded, and proposed to include Defendant Lajaunie's other restaurant (15 John Corp., operating as "Les Halles Downtown") to borrow extra funds and reach that restaurant's local area customers.
14. At the time of the agreement's execution (on or about March 10, 2016), RN's representative proposed to increase the borrowed funds to the maximum available, in order to upgrade the downtown restaurant as well.
15. Since RN was offering marketing and new exposure for both restaurants, Lajaunie believed it was a good opportunity, to upgrade both locations, and pay off expensive debts.
16. Final details were agreed to at signing, and the new "take" calculated there and then.
17. RN's "take" was defined as the amount of funds that RN was to collect on a daily basis from the restaurants' credit cards inflow, at the credit card processing source, before the funds reach the restaurants' designated bank accounts.
18. The "take" was calculated by RN to be 7% of the credit card inflow until all borrowed funds were to be repaid. The restaurants were borrowing a total of $600,000, and were to repay a fixed amount of $768,000, over one year.
19. Moreover, the marketing provided by RN estimated the loan reimbursement to be effectuated over a shorter period, since any increase in business would augment the restaurants' credit card inflow, and therefore the amount of funds being repaid to RN.
20. RN funded the loan on or about March 15, 2016
21. On or about March 21, 2016, Lajaunie was informed by LBI's lawyer that the landlord had found another tenant willing to pay more rent, and that the restaurant had to be vacated at the end of that month (since the former lease had expired on November 30, 2015, and the restaurant was operating under a month-to-month lease).
22. The restaurant promptly closed its doors on March 23, 2016 after being in business for over 25 years -ever growing in popularity. The keys were handed over to the landlord on March 31, 2016 at midnight.
23. The second restaurant (15 John Corp./Les Halles Downtown) was instantly burdened by enormous debt, and upon advice from a lawyer specialized in bankruptcies, 15 John Corp filed for Chapter 11 Reorganization Protection in August 2016. After struggling for 11 months, the Bankruptcy Court converted the Chapter 11 procedure into a Chapter 7 procedure, and the restaurant closed its doors on July 31, 2017.
24. RN initiated a law suit against LBI and Lajaunie early during the Chapter 11 period.
25. Lajaunie effectuated online research on RN, its loans and practices, and found out that RN has a long history of being sued for usurious loans, and has paid enormous settlements. Based on the

defendant's restaurants' loan reimbursement amount and timeline, the loan was usurious under the State of Illinois' and the State of New York's laws: $768,000 for a loan of $600,000 yields 28%.
26. It is yet unclear to Lajaunie whether there is a Federal Usury rate, and whether 28% would exceed it.
27. By reason of the foregoing, Lajaunie seeks, and is entitled to, a Judgment dismissing RN's claims against him.

## AS AND FOR A SECOND CAUSE OF COUNTER CLAIM

28. Defendant repeats and reiterates the allegations contained in paragraphs "1" through "27"
29. La Boucherie, Inc. and 15 John, Corp. have paid a certain amount (about $140,000) to RN.
30. Defendant believes that, should the RN loans be confirmed as usurious, RN should return the monies paid, to both LBI and 15 John Corp.
31. By reason of the foregoing, Lajaunie seeks, and is entitled to, a judgment in his favor, or the restaurants' favor, of all monies paid to RN. Moreover, should such rate be established as usurious, Defendants may be eligible for Triple Damages.

## AS AND FOR A THIRD CAUSE OF COUNTER CLAIM

32. Defendant repeats and reiterates the allegations contained in paragraphs "1" through "31"
33. Lajaunie, through its businesses, and personally, has paid consequential amounts of money to defend against RN's law suit, and related expenses.
34. By reason of the foregoing, Lajaunie seeks, and is entitled to, a judgment in his favor for all expenses due and related to RN's actions.

## AS AND FOR A FOURTH CAUSE OF COUNTER CLAIM

35. Defendant repeats and reiterates the allegations contained in paragraphs "1" through "34"
36. A fundamental portion of RN's "sales pitch" for its loans, is the marketing RN provides to the borrower.
37. No marketing was provided to LBI or 15 John Corp., Lajaunie's restaurants.
38. Even after RN's representative met with Lajaunie a few times, especially after LBI's closure, when Lajaunie was trying to increase his last restaurant's exposure to generate an urgent increase in business, RN provided no marketing. Sales, in fact, decreased dramatically, which led the Bankruptcy Court to convert into a Chapter 7 procedure, and to the restaurant closure.
39. By reason of the foregoing, Lajaunie seeks, and is entitled to, a Judgment in his favor, for an award amount to be determined by the Court.

## AS AND FOR A FIFTH CAUSE OF COUNTER CLAIM

40. Defendant repeats and reiterates the allegations contained in paragraphs "1" through "39"
41. In its legal action against LBI and Lajaunie, RN claims that Lajaunie has committed fraud, while RN's own narrative debunks such claim. By stating such claim in public filings despite obvious falsehood, the damage to Lajaunie in his defense in multiple legal actions against him due to the restaurants' closures, is defamatory and extremely impactful.
42. By reason of the foregoing, Lajaunie seeks, and is entitled to, a Judgement in his favor, for an amount to be determined by the Court.

## AS AND FOR A SIXTH CAUSE OF COUNTER CLAIM

43. Defendant repeats and reiterates the allegations contained in paragraphs "1" through "42"

44. During (Lajaunie's restaurant) 15 John Corp' bankruptcy proceedings, RN used a law firm called Quarles & Brady LLP, represented by lawyer Isaac Gabriel. During this procedure, RN, through its representative Isaac Gabriel, made numerous defamatory statements against Lajaunie, although knowing that such statements were not factual.
45. By reason of the foregoing, Lajaunie seeks, and is entitled to, a Judgement in his favor, for an amount to be determined by the Court.