**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| REWARDS NETWORK | ) | |
| ESTABLISHMENT SERVICES INC., | ) | |
| a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16 cv 09952 |
| | ) | |
| LA BOUCHERIE, INC., a New York | ) | |
| Corporation; and PHILIP LAJAUNIE, an | ) | |
| Individual, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS MOTION VACATE DEFAULT JUDGMENT AND
TO REOPEN DISCOVERY AND ALLOW LA BOUCHERIE
<u>TO ANSWER PLAINTIFF'S AMENDED COMPLAINT</u>**

Defendants, La Boucherie, Inc. and Philip LaJaunie, by and through their attorneys, Murphy Law Group, LLC, hereby requests that this Court, vacate the default judgment entered against Defendant La Boucherie, Inc., allow La Boucherie to file an Answer to the Amended Complaint, and reopen discovery for both Defendants as set forth below. In support of its motion, Defendants state as follows.

<u>**INTRODUCTION**</u>

Over the past year and a half that this case has been pending, La Boucherie, Inc's ("La Boucherie") interests have not been represented. Due to his poor financial position, Philip LaJaunie ("LaJaunie"), the founder and principal of La Boucherie, has represented himself *pro se*. As a result, La Boucherie's interests have not been represented and it has not had the opportunity to investigate the sufficiency of the claims that have been alleged against it by Rewards Network Establishment Services Inc. ("Plaintiff"). Default judgment has been issued against La Boucherie.

Given the significant amount of liability at stake and the likelihood it possesses meritorious defenses, La Boucherie requests that this Court vacate the entry of default against it, in the interest of justice. La Boucherie and LaJaunie both request that this Court also reopen discovery to allow them to investigate the sufficiency of Plaintiff's claims and any defenses they may have.

## ARGUMENT

La Boucherie requests that this Court vacate the default judgment entered against it. Counsel has prepared, and is ready to file, an answer to the Amended Complaint on behalf of La Boucherie. Due to LaJaunie's poor financial situation, he was unable to afford an attorney for La Boucherie or himself before this point. While LaJaunie has represented himself *pro* se, his limited legal knowledge has prevented him from adequately representing his own interests and conducting discovery on his behalf. La Boucherie also has meritorious defenses to the claims brought against it by Plaintiff, that have not been able to be brought forth, given the fact LaJaunie has appeared *pro se*. Defendants recognize that this case has been pending since October 2016, but any significant litigation has only taken place since January 2018, when LaJaunie answered Plaintiff's Complaint. Defendants' Counsel has conducted a relatively brief review of Defendants' case and has already discovered several meritorious defenses to Plaintiff's claims. Given the significant liability facing Defendants and the meritorious defenses that Counsel has identified based on a short review of the available information, the interests of justice would be furthered by allowing discovery to be reopened to allow the merits of the case to be litigated.

## I.      La Boucherie Requests that this Court vacate the default judgment

This Court should vacate the default judgment entered against La Boucherie. On January 19, 2018, this Court granted default judgment against La Boucherie for its failure to appear and respond to the complaint. *See* Docket No. 30. Nine months later, on September 6, 2018, Plaintiff

filed its Rule 55(b) motion for entry of default judgment against La Boucherie. However, the interests of justice would best be served by vacating the default judgment and allowing La Boucherie to litigate the dispute on its merits.

A party seeking to vacate an entry of default prior to the entry of final judgment must show: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 630 (7th Cir. 2009). While the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context. *Id.* The courts have articulated a policy of favoring trial on the merits over default judgment. *Id.*

The circumstances of the case show that La Boucherie has not acted in bad faith in failing to answer Plaintiff's Complaint. Even though the Court entered default judgment against La Boucherie for failing to answer Plaintiff's Complaint, it was unable to given the circumstances. As stated above, LaJaunie's financial situation prevented him from having the necessary funds to hire an attorney at the onset of the case. By appearing *pro se*, LaJaunie was unable to represent La Boucherie. *Nocula v. Tooling Systems International Corp.*, 520 F.3d 719, 725 (7th Cir.2008). As such, La Boucherie was unable to answer the complaint because LaJaunie could not do so on its behalf, since a corporation is not permitted to represent itself in federal court, it must appear by counsel or not at all. *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008). Thus, La Boucherie has good cause for its failure to answer Plaintiff's compliant.

La Boucherie's request is also timely. Counsel for La Boucherie and LaJaunie filed its appearance before this court on September 25, 2018. *See* Docket No. 83. La Boucherie's request to vacate has come two weeks after its Counsel has appeared in the case. Given its quick request after retaining counsel, La Boucherie's request is also timely.

La Boucherie's also has meritorious defenses to Plaintiff's Claims. In its Complaint, Plaintiff alleges in Count I that La Boucherie breached Sections 11(d), (g), and (i) of the Agreement in which La Boucherie represented that "the fair market value of their assets exceeded their liabilities; they were meeting their current liabilities as they mature; they had no reason to believe that their businesses would cease operations within the next year, and they had not considered or discussed with anyone the possibility of filing a bankruptcy petition; and all of the information provided on the Application for participation in Rewards Network's Program is true and correct." *See* Docket No. 15 at ¶ 29. Plaintiff alleges that La Boucherie breached Section 11 by failing to disclose the eviction action against La Boucherie's at the time of signing the Agreement, which constitute Events of Non-Performance under Section 12(k) of the Agreement. Plaintiff further alleges in Count III, that La Boucherie made the misrepresentations in order to induce Plaintiff to enter into the Agreement.

However, there exists meritorious factual defenses to Plaintiff's claim that La Boucherie committed fraud. To state a claim for common law fraud, a plaintiff must allege that the defendant intentionally made a false statement of material fact or failed to disclose a material fact, that the plaintiff had a right to rely on the false statement or omission, that the statement or omission was made for the purpose of inducing reliance thereon, the plaintiff, in fact, relied on the statement or omission, and the plaintiff suffered injury as a direct result. *Fox v. Heimann*, 375 Ill. App. 3d 35, 47 (1st Dist. 2007). There are several reasons that, given the opportunity, Defendants will be able to show that judgment should be entered in their favor, and not the Plaintiff. Given the preference for resolving cases on the merits, Defendant La Boucherie requests that the Court grant it the opportunity to respond and participate in this lawsuit. A copy of the answer that La Boucherie proposes to file instanter is attached to this motion as Exhibit A.

### A. La Boucherie Had a Good Faith Basis to Believe its Operations Would Continue for More Than a Year

First, contrary to Plaintiff's numerous assertions, La Boucherie did not make any misrepresentations to Plaintiff. A brief review of La Boucherie's case has produced documents that contradict Plaintiff's claims of misrepresentations, but have not been presented to this Court. Attached is an affidavit produced by Robert V. Ferrari, who was LaJaunie's and La Boucherie's attorney in 2015. *Ex. B*. Ferrari states that during 2015, La Boucherie, LaJaunie, and the landlord were in negotiations to extend La Boucherie's lease. The main issue in the negotiations was the increased rent. Ferrari does state that an eviction proceeding was commenced, but that the landlord informed LaJaunie that he commenced the proceeding so that he could use the security deposit in lieu of rent. After LaJaunie brought on Terence Brennan, a world class chef, as a business partner, he was able to make the rent payments requested by the landlord. LaJaunie agreed to pay the increased rent demanded by the landlord, and thus had a good faith belief on March 8, 2016 that a new 10-year lease would be extended on La Boucherie's premises.

Given the circumstances surrounding March 8, 2016, La Boucherie had a good faith basis to believe that its representations in Section 11 of the Agreement were accurate and truthful. This defeats a claim for fraud as La Boucherie could not have intentionally made a false statement of fact because it reasonably believed that the lease would be extended 10 years by agreeing to the landlord's demanded rent. This also would defeat Plaintiff's claim that La Boucherie violated Section 11(g), because according to Ferrari's affidavit, La Boucherie had no reason to believe that its operations would close in a year. In fact, La Boucherie believed that its operations would continue for 10 more years. Thus, a brief review of La Boucherie's cases has produced documents

that establish a meritorious defense exists that defeats Plaintiff's claims that misrepresentations were made to it.

### B. Plaintiff Ignored Any Potential Breach by La Boucherie and Entered Into a New Agreement With 15 John Corp. for Payment of the Credit Receivables.

On March 24, 2016, La Boucherie did close its doors. However, as stated above, La Boucherie's closing was due to its landlord unexpectedly entering into an agreement with a different tenant after the details of the 10-year lease extension had been agreed upon, but not yet signed. On March 28, 2016, Plaintiff's representative, Craig Thompson ("Thompson"), became aware of La Boucherie's closure. (Ex. C) LaJaunie informed Thompson of the issues with the landlord on March 30, 2016. (Ex. D ). Plaintiff asserts that La Boucherie's closure on March 24, 2016, has created "a rebuttable presumption that [La Boucherie's] representations under Section 11(d), (e), (g), and (i) were materially untrue at the time they were made." (*See* Docket No. 15., ¶ 21). According to the Complaint, La Boucherie's undelivered Card Receivable's balance (the "Receivables"), became immediately due and payable on March 24, 2016 under Sections 12 and 13 of the agreement. However, Plaintiff's actions after March 30, 2016, contradict its argument that La Boucherie's actions constituted "bad acts" under the Agreement. *Id.* at ¶ 22.

Instead of demanding full payment of the Receivables after its closure, La Boucherie, through LaJaunie, was informed by Thompson, on March 30, 2016 not to worry about La Boucherie's closure and that the full balance would just have to be paid back through 15 John Corp. since the Agreement was a shared contract. (Ex. D). Section 2 of the Agreement clearly states that if the "Merchant" consists of more than one legal entity, and one of the entities goes out of business, the closing entity will have no further obligations to remit the Receivables or make payments unless it breached the agreement by committing any of the "bad acts" set forth in Sections 12 and 13, before going out of business.

6

A meeting was set up on April 4, 2016 in which Plaintiff's representatives and La Boucherie, through LaJaunie, met to discuss Sections 11, 12, & 13, with regards to La Boucherie's closure and to determine how to resolve the outstanding balance. (Ex. E)  After the meeting on April 4 2016, Plaintiff attempted to work things out regarding the Receivables, rather than declare them to be immediately due and owing.  (Ex. F)  Further meetings were set up to discuss how 15 John Corp., would be taking over La Boucherie's repayment of the Receivables.

On April 4, 2016, at the request of Plaintiff, La Boucherie, LaJaunie, and a group of Plaintiff's executives discussed the repayment of the Receivables in a conference call. It was agreed upon that La Boucherie had closed for good, and that its portion of the Receivable's would be paid off by 15 John Corp., the other merchant to the Agreement.  It was agreed upon, that the repayment period would be extended to two years, with 15 John Corp. paying off its portion in the first year and La Boucherie's in the second year.  15 John Corp. complied with the new payment plan until August of 2017, when it filed for bankruptcy.  At that time, a new payment plan was negotiated between Plaintiff and 15 John Corp.'s bankruptcy lawyers.  15 John Corp. continued to make payments for a full 15 months.

It is clear from the communications and Plaintiff's actions, that La Boucherie's closing did not constitute a "bad act" in accordance with Sections 12 and 13 of the Agreement. Nor was it treated as such by Plaintiff. Rather, the circumstances of the closure were communicated with Plaintiff and rather than finding La Boucherie to be in breach of the Agreement, Plaintiff twice negotiated payment plans to allow 15 John Corp. to pay off the remaining balance of the Receivables.  By renegotiating a new payment plan, Plaintiff took the risk that 15 John Corp. would also go out of business.  Again, these communications have been discovered by La

Boucherie's attorneys with a brief review of the case. As such, the default judgment should be vacated and allow this or any other factual issues to be tested in discovery.

## II.     Defendants Request the Court to Reopen Discovery

Counsel's limited review of the available information is reflected above. There are clearly more issues to be explored in discovery. There is a qualitative difference between the rigorous factual discovery that results from having litigants represented by counsel. Defendants respectfully request that this court reopen discovery to allow it to fully defend themselves against Plaintiff's claims. What is more, the factual issues that relate to La Boucherie are shared by LaJaunie personally. The defense of one is the defense of the other.

As a general rule, "the decision whether to grant a motion to reopen discovery rests within the sound discretion of the Court." *Ty, Inc. v. Publications Int'l, Ltd.*, 99 C 5565, 2003 WL 21294667, at *6 (N.D. Ill. June 4, 2003). Where a party can offer no reasonable explanation for its failure to take discovery, a request to reopen discovery should be denied. *Id.* Given the fact that La Boucherie's interest have been unrepresented up to this point, it would be reasonable in the interest of fairness and justice for this Court to reopen discovery for La Boucherie.

Plaintiff filed its three count Amended Complaint ("Complaint") on October 3, 2017 against both La Boucherie and LaJaunie, seeking recovery under certain Receivables Purchase and Marketing Agreement (the "Agreement") entered into between Plaintiff and La Boucherie. *See* Docket No. 15. Due to unforeseeable events, LaJaunie's restaurants failed in 2016 and 2017, which led 15 John Corp. to file for bankruptcy. This resulted in Defendants having insufficient funds to hire an attorney and required him to proceed as a *pro se* litigant. *See* Docket No. 25. As such, LaJaunie has been unable to represent the interest of La Boucherie or conduct any discovery on its behalf. As the Court is aware, although individuals may represent themselves in federal

court, *pro se* litigants and non-lawyers cannot represent other individuals or corporations. *Nocula v. Tooling Systems International Corp.*, 520 F.3d 719, 725 (7th Cir.2008). Thus, even if LaJaunie wished to represent La Boucherie's interest, his financial situation and status as a *pro se* litigant prevented him from doing so.

On Mach 28, 2018, this Court ordered that all written discovery was to be issued and exchanged by April 27, 2018 and all fact discovery to be completed by June 29, 2018. *See* Docket No. 45. LaJaunie has conducted limited discovery by issuing discovery requests upon Plaintiff, and needed to file a motion to compel to gain Plaintiff's compliance with his requests. LaJaunie has not even conducted any depositions of Plaintiff or its officers, due to the fact he requested such depositions after discovery was closed. *See* Docket No. 69.

While La Boucherie knows that its request to reopen discovery comes more than three months after it has closed, in the interests of fairness and justice this Court should allow discovery to be reopen. At the current moment, Plaintiff has moved for a Rule 55(b) motion for entry of default judgment against La Boucherie, in the amount of almost $700,000. *See* Docket No. 80. Given the significant liability facing La Boucherie and the circumstances of the case, La Boucherie respectfully requests this Court to reopen discovery to allow it to conduct discovery into the sufficiency of Plaintiff's claims.

Furthermore, La Boucherie believes that meritorious defenses exist that would absolve it of liability to Plaintiff. As discussed above, La Boucherie has discovered documents that establish that Plaintiff's claims lack merit. These documents have been conducted with a limited review of the information that is currently available to Counsel. As such, further discovery is warranted to discover more documents that may support La Boucherie's claims and depose the necessary individuals involved to establish the validity of La Boucherie's defenses. Denying La Boucherie's

request to reopen discovery would severely prejudice it by denying it the opportunity to investigate defenses that were impossible to be raised on its behalf before this point in the case.

Since the factual issues and any meritorious defenses are shared between La Boucherie and LaJaunie, a denial to reopen discovery would also prejudice LaJaunie as well. While LaJaunie has attempted to conduct discovery on his own behalf, his insufficient knowledge of the law has prevented him from making a quality attempt at conducting discovery. LaJaunie is also aware that on June 29, 2018, this Court denied his request to conduct depositions since discovery was closed on June 29, 2018. *See* Docket No. 69. However, the brief review of available information by Counsel has established that meritorious defenses may exist for LaJaunie. If this court were to reopen discovery for La Boucherie, reopening discovery for LaJaunie would not prejudice Plaintiff, as La Boucherie and LaJaunie share the same factual interests and would conduct the same discovery into their shared defenses.

Thus, Defendants respectfully request that this Court reopen discovery to allow it to conduct discovery.

## **CONCLUSION**

WHEREFORE, Defendants, La Boucherie and LaJaunie, request, as detailed above, that this Court reopen discovery to allow discovery to be conducted into the sufficiency of Plaintiff's claims, to vacate the default judgment entered against La Boucherie, allow La Boucherie to file an Answer to Plaintiff's Amended Complaint, and for any other relief the Court deems just and merited.

Date: October 11, 2018                 Respectfully Submitted,

                                              LA BOUCHERIE and PHILIP
                                              LAJAUNIE

By:    <u>/s/ Eugene E. Murphy, Jr.</u>
        One of Their Attorneys

Eugene E. Murphy, Jr. (ARDC No. 6198863)
MURPHY LAW GROUP, LLC
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
Phone (312) 202-3200
emurphy@mhlitigation.com