**PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS**


**EXHIBIT 1**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **REWARDS NETWORK ESTABLISHMENT SERVICES INC., a Delaware Corporation,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:16-cv-09952** |
| **LA BOUCHERIE, INC., a New York Corporation; and PHILIP LAJAUNIE, an individual.** | |
| **Defendants.** | |

### <u>AFFIDAVIT OF PATRICIA BUNKLEY</u>

I, Patricia Bunkley, being first duly sworn on oath, depose and state the following:

1.      I am the Director of Retention and Recovery at Rewards Network Establishment Services Inc. ("RN"), the Plaintiff in this action. I am over eighteen (18) years of age and of sound mind. This affidavit is made on my personal knowledge and the documents attached hereto, and if called as a witness, I would testify competently to the facts stated herein and the documents attached hereto.

2.      In my capacity as a Director of Retention and Recovery at RN, I am familiar with and have access to the books and records which are kept in RN's normal course of business. I reviewed the books and records related to this law suit including all documents referenced herein.

3.      RN is a corporation duly organized under the laws of the State of Delaware, which maintains its principal place of business in Chicago, Illinois. RN is authorized to do business in the state of New York.

4.     On or about March 10, 2016, RN, La Boucherie, Inc. ("La Boucherie") and 15 John Corp. d/b/a Les Halles Downtown ("Les Halles") entered into a Receivables Purchase and Marketing Agreement (the "Agreement").  A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

5.     Pursuant to the Agreement, RN agreed to purchase card receivables in the total sum of $768,000 (the "Card Receivables") in exchange for a payment of $600,000 to La Boucherie and Les Halles (the "Payment").

6.     To induce RN to enter into the Agreement, Philip Lajaunie ("Lajaunie") executed a personal guaranty (the "Guaranty"), under which he guaranteed to be immediately liable to RN for any sums due under the Agreement.  A true and correct copy of the Guaranty is attached hereto as **Exhibit B**.

7.     On or about March 15, 2016, RN remitted the Payment pursuant to those certain Vendor Payee Amendments, true and correct copies of which are attached to Exhibit A.

8.     La Boucherie breached sections 11(d), (e) and (g) of the Agreement by failing to disclose a pending eviction action against La Boucherie at the time of the execution of the Agreement.

9.     Shortly after execution of the Agreement, La Boucherie ceased operations due to the eviction.

10.    The aforementioned events constitute Events of Non-Performance under Section 12(k) of the Agreement.

11.    After an Event of Non-Performance, RN is entitled to immediately recover all sums due under the Agreement and Guaranty.

12.    On or about August 25, 2016, Les Halles filed a Chapter 11 Voluntary Petition for

bankruptcy protection in the U.S. Bankruptcy Court, Southern District of New York (Manhattan), case number 16-12453 (the "Bankruptcy").

13.     On October 18, 2016, an Order Granting Interim Use of Cash Collateral was entered in the Bankruptcy (the "Interim Order").  Pursuant to the Interim Order, Les Halles was required to remit "4% of all Master Card and Visa credit card receivables collected during the First Interim Cash Collateral Period."  A true and correct copy of the Interim Order is attached hereto as **Exhibit C**.

14.     All payments received by RN during the course of the Bankruptcy were tracked on the Debtor Overview Report, and all payments received during the Bankruptcy were applied to the Agreement.  Payments were entered at or near the time of receipt.  A true and correct copy of the Debtor Overview Report is attached hereto as **Exhibit D**.

15.     The Interim Order was extended by stipulation or order (collectively, the "Extensions") on or about December 16, 2016, January 13, 2017, February 14, 2017, March 8, 2017, April 4, 2017, May 10, 2017, June 16, 2017 and August 9, 2017.  True and correct copies of the Extensions are attached hereto collectively as **Exhibit E**.  Under the Extensions, RN agreed to forbear from enforcing its rights under the Agreement and Guaranty in this action as long as Les Halles made payments pursuant to the Interim Order.

16.     On February 13, 2017, RN filed a Proof of Claim in the Bankruptcy establishing its claim in the sum of "At least $664,180.14, plus accruing costs, attorneys' fees, and other amounts pursuant to the terms of the RN Documents and applicable law."  A true and correct copy of the Proof of Claim is attached hereto as **Exhibit F.**

17.     On November 6, 2017, the Bankruptcy was converted to a case under Chapter 7. A true and correct copy of the November 6, 2017 order is attached hereto as **Exhibit G**.

18.     On January 19, 2018, an Order of Final Decree was entered closing the Bankruptcy.  A true and correct copy of the January 19, 2018 Order of Final Decree is attached hereto as **Exhibit H**.

19.     My full and careful review of the books and records held and maintained by RN in the above-captioned suit relating to La Boucherie and Lajaunie shows that as of August 8, 2018, La Boucherie and Lajaunie owe RN the following sums:

| | |
|---|---|
| Purchased receivables balance (11.1.16): | $648,791.85 |
| Rejected transactions: | $13,082.84 |
| Attorneys' fees and costs incurred in the Bankruptcy[1]: | $27,303.34 |
| Payments collected during the Bankruptcy: | ($33,569.20) |
| **Total:** | **$655,608.83** |

20.     Additionally, La Boucherie and Lajaunie are obligated to pay RN's attorneys' fees, expenses and costs pursuant to Section 13 of Agreement and the Guaranty as will be supported by a separate affidavit from Dinsmore & Shohl LLP.

21.     The matters set forth in this affidavit are true in substance and in fact and are based upon my own personal knowledge and upon my own personal review of the records held and maintained by RN concerning La Boucherie, Les Halles and Lajaunie, including the Statement, Usage Statement and Debtor Overview Report reflecting the sums due and owing upon the event of default as described herein and the sums collected and applied to the Agreement.  True and correct copies of the Statement are Usage Statement are attached hereto collectively as **Exhibit I**.

---

[1] Invoices from RN's counsel during the Bankruptcy are attached hereto collectively as **Exhibit J**.

22.     The Statement and Debtor Overview Report were generated by RN's electronic payment management system AS400 and ADS (the "System"), which calculates, tracks and maintains balances based upon parameters inputted into the System as set forth in the underlying obligation, in this case, the Agreement.  Credits are entered into the System at or near the time they are received, and all credits received for application to the Agreement have been reflected above.

23.     The System is recognized as standard in the business and produces an accurate record in the form of the Statement when property employed, and the System was properly employed to generate the Statement.

24.     RN has performed all that has been required of it to be performed under the Agreement and Guaranty and has demanded that La Boucherie and Lajaunie fulfil their respective obligations under the Agreement and Guaranty; however, they have failed and refused to do so.

The undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.


AFFIANT STATES NOTHING MORE

Patricia Bunkley

SUBSCRIBED and SWORN
to before me this *16th* day of
August, 2018.

Notary Public

OFFICIAL SEAL
SYLVIA TERRY
Notary Public - State of Illinois
My Commission Expires Jan 27, 2019

**Affidavit of Patricia Bunkley**

**Exhibit A**



Date of Agreement: 3/10/16

### REWARDS NETWORK RECEIVABLES PURCHASE AND MARKETING AGREEMENT

This Rewards Network Receivables Purchase and Marketing Agreement (the "Agreement") is between Rewards Network Establishment Services Inc., a Delaware corporation ("Rewards Network," "We" and/or "Us"), and each of the legal entities set forth below (collectively, "Merchant" and/or "You").

| La Boucherie Inc. | NY | # 300,000 | 384,000 |
|---|---|---|---|
| Legal Name of Merchant | State of Formation | Allocation of Purchase Price (if any) | Allocation of Amount Sold (if any) |

| Les Halles | 411 Park Avenue South | New York, NY 10016 |
|---|---|---|
| DBA (Location Name) | Location Address (Number, Street) | (City, State, Zip) |

| 15 John Corp | NY | # 300,000 | # 384,000 |
|---|---|---|---|
| Legal Name of Merchant | State of Formation | Allocation of Purchase Price (if any) | Allocation of Amount Sold (if any) |

| Les Halles Downtown | 15 John St | New York, NY 10038 |
|---|---|---|
| DBA (Location Name) | Location Address (Number, Street) | (City, State, Zip) |

#### Primary Terms

In this Agreement, you are selling to us a percentage of the payments your customers make with credit, debit, and other types of payment cards ("Card Receivables"). You are selling Card Receivables from (check one):

**Premier Restaurant Funding:**

[✓] All of your customers

**Dining Credits:**

[ ] Rewards Network Members only

We agree to buy from you (and you agree to sell to us) the amount of future Card Receivables shown below (the "Amount Sold") in exchange for the "Purchase Price" shown below. In order to deliver to us the Amount Sold, you assign to us the share of your Receivables ("Specified Percentage") shown below, for the customers indicated above, every day from the date we deliver the Purchase Price until we have received the entire Amount Sold.

Purchase Price: $ 600,000

Amount Sold: $ 768,000

Specified Percentage: 7 %

11/15          Page 1 of 11



We are buying Card Receivables from you, not loaning you money. One advantage to you of selling Card Receivables instead of borrowing money is that there are no minimum payments, payment schedules, or due dates. If your business is slow, you will not have to worry about having to make a loan payment by a due date, since this is not a loan.

We take some risks in this deal, like the possibility of not getting the Card Receivables we bought as quickly as we thought we would, or not getting them at all if you go out of business. However, you are not allowed to engage in "bad acts" that unfairly prevent us from receiving what we paid for. For example, you are not allowed to stop taking payment cards as a form of payment, change your payment card processor without our approval, or close your business and start up another similar business right away. The details on this are below.

We also will provide you with marketing services as part of this Agreement. Rewards Network currently has millions of diners who participate in our dining rewards programs ("Members"). When Members dine at participating restaurants, we provide them with rewards such as cash back or frequent flyer miles. This gives our Members an incentive to dine at participating restaurants, including yours. We promote participating restaurants through various media, including social media, digital advertising, and targeted emails to our Members. In addition to marketing, we also will provide you with Member data, and access to our Comment Management System, allowing you to read and respond to Member reviews. Every review we publish is verified as written by an actual diner at your establishment. The marketing services we provide will continue throughout your program participation and can be terminated upon 30 days' written notice after the Card Receivables we purchased have been reduced to zero.

### Detailed Terms and Conditions

### PURCHASE OF RECEIVABLES AND SERVICES

**1. Assignment of Receivables.** Upon your receipt of the Purchase Price, we will own all right, title and interest in the Card Receivables we bought. You will no longer have any rights in those Card Receivables. As long as there is no Event of Non-Performance as set out in Section 12 below, we will take delivery of the Card Receivables as they are generated in the ordinary course of your business, regardless of how long it may take for the Card Receivables to be generated and delivered. We expressly assume the risk that your restaurant(s) may not generate the entire Amount Sold, in which case we will not receive some or all of the Card Receivables we bought.

**2. Multiple Merchants/Locations.** If the Merchant consists of more than one legal entity or location, then you agree that each of those entities and/or locations will continue to remit to us the Specified Percentage of Card Receivables from that entity or location each day until we have received the entire Amount Sold. You will do this regardless of how you choose to allocate the Purchase Price among the entities or locations, and regardless of whether any of the entities or locations went out of business. However, when an entity or location goes out of business, that entity or location will have no obligation to continue to remit Card Receivables or make payments to us unless it breached this Agreement by committing any of the "bad acts" set forth below before going out of business. You acknowledge and agree that: (i) there is a direct and tangible benefit to each entity and location from entering into this Agreement, including from the marketing services described above; (ii) you are entering into this Agreement collectively in order to sell a larger amount of Card Receivables to us than we would buy from the entities or locations separately; (iii) each entity or location will benefit from our payment of the Purchase Price, regardless of how it is allocated (or not allocated) among you; and (iv) the fair saleable value of each of your assets exceeds its liabilities, and each of you is meeting your current liabilities as they mature. If the Merchant has allocated the Purchase Price and Amount Sold among multiple entities or locations comprising the Merchant on page 1 of this Agreement, Merchant is hereby requesting that Rewards Network provide separate account statements to each entity or location comprising the Merchant based on this allocation. Each entity or location comprising the Merchant acknowledges and agrees that (a) Rewards Network is providing separate account statements; and (b) notwithstanding our provision of such account statements or the fact that the Merchant has made an allocation for administrative convenience, each entity or location comprising the Merchant is obligated to continue to remit to us the Specified Percentage of Card Receivables from that entity or location each day until we have received the entire Amount Sold set forth at the bottom of page 1 of this Agreement.



**3. Payment.** We will pay the Purchase Price to you after we have accepted this Agreement. If the Merchant consists of more than one legal entity or location, we may deliver the Purchase Price to you by delivering the Purchase Price to the first legal entity listed on page 1 of this Agreement (the "Merchant Representative"). Upon our delivery of the Purchase Price to the Merchant Representative, the Merchant shall be deemed to have received the Purchase Price regardless of how the Merchant Representative distributes (or does not distribute) these funds among the entities or locations constituting the Merchant.

**4. Marketing and Other Services.** During your program participation, we will market each of your locations to Members who are enrolled in rewards programs operated by us or managed by us for "Partners" who offer our program to members of their own rewards programs. The marketing that we provide may include email, websites, or other marketing as determined by us. We will provide a reward to Members who have a Qualified Transaction (defined in the next sentence) at your locations identified above (each, a "Participating Location"). A "Qualified Transaction" is any transaction in which a Member uses a credit, debit or other payment card ("Payment Card") registered with us to purchase goods and services at a Participating Location and which meets our requirements to qualify for a Member reward. We will also provide you with operational insight and customer feedback services relating to the Qualified Transaction(s), as we determine, based on information that we receive or gather from your program participation. (All Member marketing provided hereunder, along with all operational insight and customer feedback services, is referred to as the "Marketing Services".)

**MERCHANT PAYMENT PROCESS**

**5. Merchant Payment Amount.** After we pay you the Purchase Price, and beginning on a date determined in our sole discretion, you will deliver to us the Specified Percentage of Card Receivables generated by all of your Participating Locations (the "Merchant Payment") each day until you have delivered to us the Amount Sold. On days when banks are not open, the Specified Percentage will be delivered to us on the next banking day. If you have more than one Participating Location, you understand that some Participating Locations may remit more Card Receivables to us than others. If the amounts that result from the Specified Percentage include fractional cents, you authorize us to round the amounts up or down to the nearest penny.

**6. Authorized Processors; Disclosures to American Express; Processor Changes.**

(a) Use of Authorized Processors. You agree to accept Payment Cards for business transactions at all Participating Locations, to use only Payment Card processors authorized by us ("Authorized Processor(s)") to process all of your Payment Card transactions, and to provide us with information for all Payment Card transactions at such locations through the Authorized Processors. You authorize the Authorized Processor(s) and any other entity that provides Payment Card-related services and has access to information on Payment Card transactions at such locations (including a payment card network), to provide us any information we request concerning your Payment Card transactions, including, but not limited to, aggregate Payment Card transactions and transaction amounts, so that we can monitor your compliance with this Agreement and identify Qualified Transactions for the purpose of providing rewards to our Members. During the term of this Agreement, you agree not to use Payment Card processors that are not Authorized Processors, either in addition to or in lieu of Authorized Processors.

(b) American Express Authorization. During the term of this Agreement, you specifically authorize American Express to provide to us, on a daily basis, the following information at your American Express-designated SE number level: (i) % Payment Card spend by Members of the aggregate Payment Card spend at all Participating Locations; and (ii) % of Payment Card transactions by Members of the aggregate number of Payment Card transactions at all Participating Locations. We will treat the foregoing information in accordance with our Merchant Privacy Policy, available at www.rewardsnetwork.com/privacy. You may withdraw the foregoing authorization by exercising your rights as provided in Section 17.

(c) Processor Changes; Effect of Missed Transaction Data on Merchant Payments. You recognize that, if a change from an Authorized Processor is carried out without any advance notice to us, we will lose our ability to collect the Card Receivables through Merchant Payments and reward our Members for Qualified Transactions at your Participating Locations. For this reason, if you change to another Payment Card processor during your program participation, you must give us 15 days advance written notice of any such change. The notice must be directed to clientservices@rewardsnetwork.com. **If you do not give us the required notice, you must pay us a $500 administrative processor change fee.**

**7. Authorization to Initiate Electronic Debits to Bank Account ("Authorization").** You irrevocably authorize us (which includes for the purposes of this authorization, our agents, service providers, successors and assigns) to initiate electronic debit entries via the Automated Clearing House ("ACH") network or similar network to one or more bank accounts owned by you and designated by you or any substitute bank accounts you later specify (individually and collectively, "Bank Account") for any amounts due to us, including Merchant Payments and Substitute Merchant Payments (defined in Section 13(b) below), on or after the dates such amounts are created or come due. If you deliver on a daily basis, you authorize us to initiate a single debit for the combined amounts of different



days' Merchant Payments (e.g., initiate a single debit on Monday for Merchant Payments that were created on Friday, Saturday and Sunday) or to initiate individual debits for such Merchant Payments. You will not allow a Bank Account to be closed or replaced unless you provide us at least 10 days advance written notice and sufficient information and documentation for us to update our records relating to a replacement Bank Account. The notice must be directed to clientservices@rewardsnetwork.com. **If we are unable to withdraw amounts from a Bank Account for any reason, you agree to pay us a $25 returned transaction fee for each such occurrence in addition to all other remedies available to us.** You authorize us to initiate a separate debit to the Bank Account for this fee or to add this fee to a debit for a subsequent Merchant Payment. In the event that any debit is not successful, you authorize us to reinitiate the debit up to two additional times. In the event we make an error in initiating a debit or credit, you authorize us to initiate a credit or debit to correct the error. To the extent that we initiate debits over the ACH network, you agree to be bound by the rules governing the ACH network. You agree that you will not cancel this Authorization or instruct any depository holding Card Receivables we have purchased to reject our debits.

**8. Method of Payment to RN.** You will receive full payment for all Payment Card transactions from your Authorized Processor(s), but an amount equal to the Merchant Payment will be held by you in trust on our behalf and you will remit that amount to us. We may debit the amount of Merchant Payments or Substitute Merchant Payments, as defined below, from the Bank Account at any time.

**9. Collection of Card Receivables through Program Participation.** We will take delivery of Merchant Payments and Substitute Merchant Payments (if applicable) until we receive an amount equal to the Amount Sold. We will transmit statements to you indicating the amount of Merchant Payments due to us for the collection of Card Receivables during the statement period and the balance of undelivered Card Receivables at the end of the statement period after the application of the Merchant Payments. You agree to review each statement promptly after we send it to you and notify us if there is any discrepancy or error. If you do not notify us within thirty (30) days, you agree that the information in our statement is accurate. You agree to respond to reasonable inquiries regarding the current status of your business, and to notify us in writing if you cease operating your business.

**10. Continued Marketing Services and Program Fees Following Collection of Card Receivables.** When the Amount Sold has been fully delivered and the balance of Card Receivables we purchased has been reduced to zero, we will continue to provide our Marketing Services to you until this Agreement is terminated under Section 15. During that period, you agree to perform your obligations and to pay us a "Program Fee" for our Marketing Services in the amount of 20.0% ("Program Fee Percentage") of each Qualified Transaction.

## REPRESENTATIONS

**11. Representations.** You represent to us that: (a) you are the sole and lawful owner of the Card Receivables and you own the Card Receivables free and clear of any liens, encumbrances, and adverse claims of any other person or entity ("Person"); (b) you have the full right to sell to us the Card Receivables free and clear of any liens encumbrances, and adverse claims of any other Person; (c) you have not entered into any agreements or made any offers to any person or entity to (i) sell, transfer or otherwise encumber the Card Receivables or (ii) sell, transfer or otherwise encumber all, or substantially all, of your assets; (d) the fair market value of your assets exceeds your liabilities; (e) you are meeting your current liabilities as they mature; (f) execution of this Agreement and your participation in our Program does not constitute a breach of your obligations to another Person; (g) you have no reason to believe that your business will cease operations within the next year, and you have not considered or discussed with anyone the possibility of filing a bankruptcy petition; (h) your legal name(s), DBA name(s), location address(es) and state of incorporation or formation are accurately set forth above; (i) all of the information provided on your Application for participation in our Program is true and correct; (j) each Bank Account is used for business purposes and not for personal, family or household purposes and you are an authorized signor on each Bank Account, and (k) you will use the Purchase Price solely for business or commercial purposes, and not for personal/consumer, family, or household purposes. You agree that, in the event that your Participating Location goes out of business or is the subject of a voluntary or involuntary filing for protection under the United States Bankruptcy Code within forty-five (45) days of us delivering the Purchase Price to you, there shall be a rebuttable presumption that your representations in Sections 11(d), (e), (g) and (i) were materially untrue when they were made to us.

## NON-PERFORMANCE

**12. Events of Non-Performance.** You agree not to commit any of the following "bad acts," each of which is an event of non-performance under this Agreement ("Event of Non-Performance"), during the term of this Agreement: (a) you sell, transfer, or grant a security interest in Card Receivables to anyone other than us; (b) you allow any lien or other encumbrance to attach to our interest (or that of our transferee) in your Card Receivables; (c) you sell your business, any of the locations used by your business, or all or substantially all of your assets used by your business or any Participating Location to a third party before delivering to us all of the Card Receivables we purchased under this Agreement; (d) you materially change the operation of your business at any Participating Location (e.g., changes in concept, size, etc.); (e) you stop taking Payment Cards as an accepted method of payment for transactions,



or discourage the use of Payment Cards, at any Participating Location; (f) you change your legal name or jurisdiction of formation without giving us advance notice of the change; (g) we are unable to debit the Bank Account for the full amount of any Merchant Payment or Substitute Merchant Payment, as defined below; (h) you change Payment Card processors without giving us advance notice as provided in Section 6(c); (i) we revoke the authorization of an Authorized Processor and you do not obtain a replacement Authorized Processor within fifteen (15) days after receiving notice from us; (j) you utilize one or more Payment Card processors that is not an Authorized Processor to process any of your Payment Card transactions; and (k) any representation set forth in your Application, in Section 11 above and/or in Section 19 below shall be false or misleading in any material respect; provided, however, that none of the foregoing (except for subpart 12(k)) shall constitute an Event of Non-Performance if it occurred because a Participating Location went out of business in the ordinary course. These Events of Non-Performance are intended only to prevent you from interfering with our bargained-for right to collect the Card Receivables we purchased as they are created in the ordinary course of your business. They do not create any obligation for you to deliver Card Receivables to us if they are simply not generated by your business.

**13. Obligations Upon an Event of Non-Performance.**

(a) Upon any Event of Non-Performance, and except as provided in subpart 13(b) below, we may exercise any and all rights and remedies available to us under applicable law, including without limitation all rights and remedies under this Agreement and the Uniform Commercial Code (UCC). You agree that each Event of Non-Performance has the effect of preventing us from obtaining the Card Receivables we purchased from you, and that the full undelivered Card Receivables balance therefore constitutes a reasonable amount of liquidated damages to which we shall be entitled if any Event of Non-Performance occurs. You further agree that we shall be entitled to recover all unpaid fees and other amounts due to us under this Agreement. All of these amounts are immediately due and payable if an Event of Non-Performance occurs, and you agree that we are authorized to withdraw these amounts from the Bank Account without further notice to you. In the event that a legal proceeding is brought to enforce or obtain a declaration of our rights under this Agreement, you agree to pay all reasonable attorneys' fees, costs, and expenses we incur in any and all such proceedings. All rights and remedies available to us are cumulative and not exclusive of any other remedies available to us in law or equity, or under other sections of this Agreement.

(b) If an Event of Non-Performance under Section 12(h) occurs, and a Participating Location remains open for business, we may elect, at our sole discretion, and without waiving our right to pursue the remedies set forth in subpart 13(a) above, to pursue the remedy set forth in this subpart 13(b). If we do not receive Payment Card transaction information for three (3) or more consecutive days due to a change in Payment Card Processors without giving us advance notice, you authorize us, at our sole discretion, to initiate daily debits from your Bank Account equal to the average amount of the prior successful ten (10) Merchant Payment debits from your Bank Account until such time as we begin receiving Payment Card transaction data from an Authorized Processor or until we elect to proceed with our remedies under subpart 13(a) above. If the number of successful Merchant Payment debits from your Bank Account prior to our first missed Payment Card transaction fee resulting from your change of processors is less than ten, then the daily debits that you authorize us to initiate shall be equal to the average of all such prior successful Merchant Payments. Any debits successfully completed in accordance with the previous sentences will be treated as Merchant Payments and referred to as "Substitute Merchant Payments" under this Agreement. During the period that Substitute Merchant Payments are being made, we will stop our Marketing Services. If we are able to resume Merchant Payments using Payment Card transaction information from an Authorized Processor that you have selected, we will reinstate your program participation, at which time you will resume making Merchant Payments to us and we will resume our Marketing Services as if the Event of Non-Performance had not occurred.

**14. Discontinuation of Marketing Services.** Upon the occurrence of any Event of Non-Performance, we may discontinue providing any Marketing Services to you or on your behalf.

### TERMINATION OF AGREEMENT

**15. Termination.** When the Amount Sold has been fully delivered and the balance of Card Receivables we purchased has been reduced to zero, you may terminate our Marketing Services by sending a written request via electronic mail to clientservices@rewardsnetwork.com. This Agreement will terminate and Rewards Network will have no further obligation to you at the close of your business on the 30th day after the written notice is received.

**16. Survival after Termination.** Notwithstanding the termination of this Agreement, Sections 20, 23, 24, 25 and 26 will survive termination and remain in full force and effect.

### REPURCHASE OF CARD RECEIVABLES

**17. Repurchase of Card Receivables.** If there are Card Receivables sold to us but undelivered, and no Event of Non-Performance under Section 12 has occurred, you have the option to repurchase the undelivered Card Receivables ("Repurchase Option"). You can



repurchase the undelivered Card Receivables by paying to us an amount ("Repurchase Amount") equal to (i) the full undelivered Card Receivables balance, plus (ii) any other fees and other amounts due to us under this Agreement. You must provide at least seven (7) days' prior written notice to us of your intent to exercise your Repurchase Option ("Repurchase Notice") by sending a written request via electronic mail to clientservices@rewardsnetwork.com.

## SECURITY INTEREST PLEDGED IN COLLATERAL

**18. Security Interest and Collateral Pledged.** The security interest granted in this Section 18 will not become effective unless and until you commit a "bad act" as described in Section 12. If you commit a "bad act," the security interest will become effective immediately, without any notice to you and without any further action required. As security for, the prompt, full and timely performance and observance of the obligations and agreements set out in Sections 12 and 13 of this Agreement (the "Obligations"), you hereby grant to us a continuing security interest (the "Security Interest"), which, once it becomes effective, will remain in full force and effect until all of the Obligations have been paid, performed and observed, in the following: All of your personal property and fixtures, tangible and intangible, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (the "Collateral"), including without limitation: all equipment, furniture, artwork, inventory, instruments, investment property, documents, general intangibles, deposits, contract rights, tradenames, trademarks, patents, supporting obligations, payment intangibles, chattel paper, commercial tort claims, licenses, liquor licenses, permits, franchise agreements, payments due from credit card and bank card companies or processors, accounts receivable, accounts, leases, deposit accounts, refunds of bonds, monies due or to become due from the State Liquor Authority and/or State Division of Alcoholic Beverage Control and, to the extent not listed above as original collateral, all products and proceeds of all of the Collateral in whatever form, including, without limitation, all payments under insurance, whether or not we are the loss payee thereof, all proceeds of any governmental taking, and any indemnity, warranty, letter of credit (including the right to draw on such letter of credit), or guaranty payable by reason of any default under, loss of, damage to or otherwise with respect to, any of the foregoing. The Security Interest that you grant us is being given solely for the purpose of ensuring that you do not act to deprive us of our bargained-for ability to collect the Card Receivables as they are generated in the ordinary course of your business, as your business was described to us when we considered your Application to participate in our Program. The Security Interest does not secure repayment of a debt obligation and we have no right to demand payment of the balance of the Amount Sold in the absence of an Event of Non-Performance under Section 12.

**19. Financing Statements, Covenants and Remedies.** You authorize us (or any designee, nominee, transferee or servicer) to file UCC-1 or comparable statements as we deem necessary or appropriate to: (a) provide notice of our purchase of the Card Receivables under this Agreement, noting that the transaction is intended as a sale and not an assignment for security; and (b) perfect the security interest granted by you to us under this Agreement. You agree to promptly furnish upon our request written statements and schedules identifying and describing the Collateral in such detail as we may require. All of the Collateral is and will continue to be located at your place of business for so long as there remain outstanding Obligations unless we consent in writing prior to any removal. You represent/warrant that you are the legal and beneficial owner of the Collateral and have the sole right to grant a security interest therein or other encumbrance; and you will not permit anything to be done that may impair or lessen the value of any of the Collateral or the Security Interest granted herein. You will, at your own expense, maintain insurance covering the Collateral in an amount not less than the full replacement value of such Collateral and against such risks, in such form and with such insurers, as will be satisfactory to us. Upon the occurrence of an Event of Non-Performance, we may pursue any and all rights and remedies we may have under the law including, without limitation, the rights of a secured party under the Uniform Commercial Code. Upon demand, you will pay all costs and expenses and reimburse us for all costs and expenditures, including without limitation attorneys' fees and legal expenses, in connection with enforcing our rights under this Agreement; all our costs and expenses incurred will be fully secured hereby; and you will indemnify and hold us harmless from any and all such costs and expenses. After deducting all reasonable costs and expenses and all other charges (including attorneys' fees) due against the Collateral, any residue of the proceeds of any sale or other disposition will be applied to payment of the Obligations, except as otherwise provided by law or directed by any court of competent jurisdiction thereof. You will be liable for any deficiency in payment of the Obligations, including all reasonable costs and expenses and all other charges (including attorneys' fees) due against the Collateral.



OTHER TERMS AND CONDITIONS

**20. Indemnification.** You agree to indemnify, defend and hold us and our affiliates harmless from and against all losses and expenses incurred by us or our affiliates in connection with (a) any Event of Non-Performance under the Agreement, and (b) any claim initiated by any third party in connection with any alleged act or failure to act by you.

**21. Intellectual Property and Data Rights.** We grant you no right to use, and you agree not to use, any intellectual property of ours or any third party (including, without limitation, any Partner). You grant permission to us, including our employees, agents, contractors and affiliates, to create ourselves or copy and modify from your or your franchisor's Website visual images, photographs, digital images, drawings, renderings, accompanying written descriptions, or any other materials that capture you, your property, signage, menus, and personnel and any intellectual property embodied therein. You represent and warrant that you have all rights to grant, and hereby grant to us, our Partners, our affiliates, and our third-party service providers and independent contractors a limited, non-exclusive, royalty-free license to publicly use (including but not limited to reproduce, display and distribute) all intellectual property embodied by materials that you provide or that we create or obtain or modify from your or your franchisor's Website (pursuant to the immediately preceding sentence) in connection with our marketing services, including but not limited to all of franchisor's materials, marks and trade dress if you are a franchisee. You grant us the right, subject to all applicable laws, to use and distribute in any manner the information that is created or collected through our program.

**22. Billing Disputes.** You will be responsible for all billing disputes relating to Payment Card transactions.

**23. Limitation on Liability.** We will not be liable for any loss of profits or special, consequential, incidental or punitive damages arising out of or relating to this Agreement to the maximum extent permitted under Illinois law.

**24. Governing Law.** This Agreement is governed by, and any dispute, claim or controversy arising out of or relating to this Agreement shall be resolved in accordance with the laws of the State of Illinois (to the exclusion of its conflict of laws rules).

**25. Arbitration Agreement.** Unless prohibited by federal law, you and we each shall have the option to require any claim or dispute relating in any way to this Agreement or the parties' dealings with one another ("Claim"), except for a Claim concerning the validity, scope or enforceability of this Arbitration Agreement, to be resolved through BINDING INDIVIDUAL ARBITRATION. This Arbitration Agreement involves interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), and not by state law.

In any claim or dispute to be resolved by arbitration, neither you nor we will be able to have a court or jury trial or participate in a class action or class arbitration. Other rights that you and we would have if you or we went to court will not be available or will be more limited in arbitration, including the right to appeal. You and we each understand and agree that by agreeing that either of us can require a claim or dispute to be resolved by individual arbitration, WE ARE EACH WAIVING THE RIGHT TO A COURT OR JURY TRIAL. ANY DISPUTE ONE OF US CHOOSES TO RESOLVE THROUGH ARBITRATION SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS, AND NOT AS A CLASS ACTION, REPRESENTATIVE ACTION, CLASS ARBITRATION OR ANY SIMILAR PROCEEDING. The arbitrator(s) may not consolidate the claims of multiple parties.

Arbitrations shall be administered by JAMS in accordance with its Streamlined Arbitration Rules and Procedures or comparable JAMS rules in effect at the time the arbitration is initiated. You may obtain information about arbitration, arbitration procedures and fees from JAMS by calling (800) 352-5267 or visiting www.jamsadr.com. If JAMS is unable or unwilling to arbitrate a dispute, then the dispute may be referred to any other arbitration organization or arbitrator you and we agree upon in writing or that is appointed pursuant to section 5 of the FAA. The arbitration shall take place in the federal judicial district where you are located. The arbitrator shall be authorized to award any relief that would have been available in court, provided that the arbitrator's authority is limited to you and us alone, except as otherwise specifically stated herein. No arbitration decision will have any preclusive effect as to non-parties. The arbitrator's decision shall be final and binding. The parties agree that this Arbitration Agreement extends to any other parties involved in any Claims, including but not limited to your and our employees, affiliated companies and vendors. This Arbitration Agreement shall take precedence over the rules of the arbitration organization or arbitrator in the event of any conflict.

We will be responsible for paying all arbitration fees other than the amount of filing fees you would have incurred in a state or federal court where you are located, whichever is less. Notwithstanding any other provision herein, you and we may not require arbitration of a Claim filed in a small claims court for Claims within its jurisdiction. In addition, notwithstanding an election to require arbitration of a Claim, you and we each may exercise any lawful rights to seek provisional remedies or self-help, without waiving the right to arbitrate by doing so. Notwithstanding any other provision of this Agreement, if the foregoing class action waiver and prohibition against class arbitration is determined to be invalid or unenforceable, then this



entire Arbitration Agreement shall be void. If any portion of this Arbitration Agreement other than the class action waiver and prohibition against class arbitration is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Arbitration Agreement. This Arbitration Agreement will survive the termination of this Agreement and/or your or our bankruptcy or insolvency (to the extent permitted by applicable law).

YOU HAVE THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT, BUT YOU MUST EXERCISE THIS RIGHT PROMPTLY. If you do not wish to be bound by this arbitration agreement, you must notify us in writing within thirty (30) days after the date you sign this Agreement. You must send your request to: accountservices@rewardsnetwork.com. The request must include your full name, address, account number, and the statement "I reject the Arbitration Agreement contained in my Rewards Network Receivables Purchase and Marketing Agreement." If you exercise the right to reject arbitration, the other terms of this Agreement shall remain in full force and effect as if you had not rejected arbitration.

26. Contacting You. You authorize us and our affiliates, agents, representatives, assigns and service providers (collectively, the "Messaging Parties") to contact you using automatic telephone dialing systems, artificial or prerecorded voice message systems, text messaging systems and automated email systems in order to provide you with information about this Agreement and your program participation, including without limitation information about Merchant Payments. You authorize the Messaging Parties to make such contacts using any telephone numbers (including wireless, landline and VOIP numbers) or email addresses you supply to the Messaging Parties in connection with this Agreement, your program participation or any other matter. You understand that anyone with access to your telephone or email account may listen to or read the messages the Messaging Parties leave or send you, and you agree that the Messaging Parties will have no liability for anyone accessing such messages. You further understand that, when you receive a telephone call, text message or email, you may incur a charge from the company that provides you with telecommunications, wireless and/or Internet services, and you agree that the Messaging Parties will have no liability for such charges. You expressly authorize the Messaging Parties to monitor and record your calls with the Messaging Parties. You understand that, at any time, you may withdraw your consent to receive text messages and calls to your cell phone or to receive artificial or prerecorded voice message system calls by calling (800) 422-5155, emailing us at clientservices@rewardsnetwork.com, or writing to us at: Rewards Network, attn: Account Services, 2 N. Riverside Plaza, Suite 200, Chicago, IL 60606. To stop text messages, you can also simply reply "STOP" to any text message the Messaging Parties send you. To stop emails, you can follow the opt-out instructions included at the bottom of the Messaging Parties' emails.

MISCELLANEOUS

27. Transfer of Rights and Assignment of Agreement. We may sell, pledge, assign or otherwise transfer (a) any or all of the Card Receivables, (b) the right to receive Merchant Payments or Substitute Merchant Payments, (c) this Agreement, and/or (d) any other rights under this Agreement to any person (each, a "Transferee") without your consent. Any Transferee will be entitled to exercise any and all of our rights and receive all benefits afforded us hereunder, including the collection of the Merchant Payments or Substitute Merchant Payments, the collection of Card Receivables and the collection of any amounts due under Section 13 arising from an Event of Non-Performance. We may also delegate any of our duties and engage any service providers to perform any of our obligations or exercise any of our rights under this Agreement. This Agreement and your obligations under this Agreement are not assignable or transferable by you without our express written consent. This Agreement will be binding upon and inure to the benefit of the parties and their respective successors and assigns.

28. Authority; Further Assurances; Operation of Business. Each Party represents that it has the full power and authority to enter into this Agreement and to perform its obligations under this Agreement. You and each person whose signature appears on this Agreement represents and warrants that he or she is fully authorized to execute this Agreement on your behalf and that this Agreement has been duly executed and delivered by you and is your legal, valid and binding obligation enforceable against you in accordance with its terms. You will operate your business (i) in accordance with all applicable federal, state and local laws, including without limitation all laws relating to the collection and remittance of taxes to applicable taxing authorities, and all labor and employment laws, including those relating to withholding of taxes and payment of gratuities, and (ii) in a manner that is not reasonably likely to adversely impact our relationship with our Members and Partners.

29. Privacy Policy. You agree to our merchant privacy policy, which is available at www.rewardsnetwork.com/privacy, as updated by us from time to time.

30. Notices. All notices will be in writing and will be deemed given (i) to you when sent to your address, email address or fax number shown in our records, and (ii) to us when sent via electronic mail to: clientservices@rewardsnetwork.com.

31. Entire Agreement; Amendments. This Agreement contains the entire understanding between the parties and supersedes all prior agreements in any form between the parties; however, any of your outstanding obligations owing under any prior agreement and/or any


REWARDS NETWORK.

grant by you of any security interest to us under any prior agreement are not extinguished by this Agreement. The terms of this Agreement will not be modified except as agreed to in writing by both parties. You acknowledge and agree that you have executed this Agreement without any reliance on any or statement, warranty or representation by us or our agents or representatives for the consideration expressed herein.

**32. Partial Invalidity and Waiver.** If any provision herein other than the arbitration provision is held to be unenforceable, such provision will be ineffective only to the extent of such unenforceability without invalidating the remainder of the Agreement. Our failure to enforce at any time any part of this Agreement is not a waiver of rights nor in any way affects the validity of this Agreement.

**33. Third-Party Beneficiary; No Agent.** Except as otherwise specifically stated herein, nothing in this Agreement will operate to confer benefits on entities other than you, us, or our respective successors or assigns; except that American Express is the intended third party beneficiary with respect to the "Authorized Processors; Disclosures to American Express; Processor Changes" section of this Agreement and reserves all rights to assert any and all claims in connection with such section, as if it were a party to this Agreement. The parties hereby expressly agree that we are not your fiduciary or partner.

**34. Non-Disclosure Obligations.** You agree that you will not disclose the terms of this Agreement regarding the ratio of the Purchase Price to the Card Receivables, the Specified Percentage, and the Program Fee, except as may be required by applicable law.

**35. Counterparts and Facsimile Signature.** This Agreement need not be signed by us, and the delivery of the Purchase Price to you will constitute our agreement to the Agreement in the State of Illinois. A facsimile or electronic copy of this Agreement signed by you will be considered an original document.

This Agreement will be binding on the parties hereto as of the date we approve this Agreement and make the Payment.

**BY SIGNING THIS AGREEMENT IN THE SPACE PROVIDED BELOW, YOU AGREE TO THE TERMS OF THE AGREEMENT AS OUTLINED ABOVE, INCLUDING THE ARBITRATION CLAUSE IN SECTION 25 AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE AGREEMENT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS AGREEMENT, WE GAVE IT TO YOU AND YOU WERE FREE TO REVIEW IT.**

La Boucherie Inc.
Legal Name of Merchant

By: X

| Authorized Signature | Philip Lajaunie | President |
|---|---|---|
| | Print Name | Title |

15 John Corp
Legal Name of Merchant

By: X

| Authorized Signature | Philip Lajaunie | President |
|---|---|---|
| | Print Name | Title |



AMENDMENT TO AGREEMENT                    Vendor Payee Amendment

Date of Amendment: _Mar. 11_____, 20_16_

Rewards Network Establishment Services Inc. ("We" and/or "Us"), a Delaware corporation, has entered into a Rewards Network Receivables Purchase And Supply and Marketing Agreement (each an "Agreement"), as may be applicable, with the legal entity set forth below ("Merchant"), dated as of the date set forth below

| La Boucherie Inc. | dba | Les Halles | ("You") |

(Legal Name of Merchant)                    (Public Name of Merchant)

_3/10/16_

Effective Date of Agreement

You and we agree, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, to modify and amend the Agreement as follows:

1.  All capitalized terms used but not otherwise defined herein have the meanings given to them in the Agreement.

2.  You desire to purchase goods and/or services ("Products") from and/or pay existing obligations ("Vendor Obligations") to the vendors on Exhibit A attached hereto (each a "Vendor"). You will provide the information on Exhibit A and we have no obligation to verify it.

3.  Payment to Vendor. You hereby irrevocably direct that all or a part of the Purchase Price, in the amount(s) set forth on Exhibit A, be made payable to Vendor, as your designated payee (each a "Vendor Payment"). We agree to issue the Vendor Payment payable in accordance with Exhibit A and to deliver each Vendor Payment directly to you. We will be deemed to have fully performed our obligation to make any Vendor Payment immediately upon delivery of the Vendor Payment to you. You assume all risk of non-receipt by Vendor and we have no obligation to verify Vendor's receipt of any Vendor Payment. You release us from any and all claims arising from or relating to any alleged delay in delivering or failure to deliver any Vendor Payment.

4.  Third-Party Vendor. You acknowledge that Vendor is an independent third party with no authority to act for or on behalf of us, or bind us in any manner whatsoever.

5.  No Third Party Beneficiary. Payment to a Vendor by us is done strictly as an accommodation to you and does not create or constitute an intent or agreement to create any rights or benefits for Vendor, whether as third party beneficiary or otherwise.

6.  Taxes. You acknowledge that we will not under any circumstances be responsible for payment of any taxes due as a result of any Vendor Payment.

7.  DISCLAIMER OF WARRANTIES. YOU ACKNOWLEDGE THAT WE DID NOT PARTICIPATE IN THE SELECTION, MANUFACTURE OR SUPPLY OF THE PRODUCTS. YOU HAVE SELECTED THE PRODUCTS, AND THE SUPPLIER THEREOF, BASED ON YOUR OWN JUDGMENT. WE MAKE NO REPRESENTATIONS AND DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, CONCERNING THE PRODUCTS, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR FOR MERCHANTABILITY. YOUR SOLE REMEDY FOR BREACH OF ANY WARRANTY OR SERVICE AGREEMENT RELATING TO SUCH PRODUCTS WILL BE AGAINST SUCH VENDOR, THE MANUFACTURER, OR SERVICE PROVIDER, OF SUCH PRODUCTS, AND NOT AGAINST US, AND SUCH WARRANTY SHALL HAVE NO EFFECT WHATSOEVER ON THE RIGHTS AND OBLIGATIONS OF YOU AND US UNDER THE AGREEMENT OR HEREIN.

8.  WAIVER AND RELEASE. YOU EXPRESSLY AGREE THAT ANY CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES ARISING FROM OR RELATED TO THE PRODUCTS, INCLUDING BUT NOT LIMITED TO, FAILURE TO DELIVER, FAILURE TO PERFORM, FAILURE OF WARRANTY, DELIVERY OF NON-COMPLYING PRODUCTS, DELIVERY OF DEFECTIVE PRODUCTS, OR ANY OTHER CLAIMS OR DEFENSES RELATING TO THE PRODUCTS, WILL BE LIMITED TO AND ASSERTED AGAINST VENDOR ONLY, AND WILL NOT BE ASSERTED AGAINST US. TO THE EXTENT THAT ANY SUCH CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES WOULD CONSTITUTE A DEFENSE TO ANY OBLIGATIONS OWED TO US UNDER THE AGREEMENT, YOU EXPRESSLY WAIVE ALL SUCH DEFENSES, AND RELEASE US FROM ALL LIABILITY FOR ANY SUCH CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES.

9.  Except as specifically amended by the terms of this Amendment, and any other amendments agreed to in writing between the parties, all other terms, conditions, and provisions of the Agreement(s) will remain in full force and effect.

10. The Agreement(s), this Amendment, and any other amendments agreed to in writing between the parties, together constitute the entire agreement between us and you as relates to the contents therein and no further changes, revisions, and modifications may be made unless in writing and duly authorized by us and you.


**REWARDS NETWORK.**

11. This Amendment will be governed by and construed in accordance with the internal laws (as opposed to the conflict of law principles) of the State of Illinois.

12. You represent and warrant that on the date of this Amendment you are duly organized, validly existing and in good standing under the laws of your state of organization and that you have the requisite power and authority to execute and agree to this Amendment.

13. The signature of any party by electronic copy or facsimile will be considered as an original signature.

14. This Amendment need not be signed by us and will be deemed accepted by us unless we notify you in writing that it is not.

| Authorized Signature | Philip Lajaunie | President |
|---|---|---|
| | Print Name | Title |



EXHIBIT A TO VENDOR
PAYEE AMENDMENT

Legal Name of Merchant:  La Bouchene Inc.

GIBRALTAR
_____          $ ∅∅.∅∅ (ZERO PAYMENT)     N/A
Vendor Name                       Amount Paid to Vendor        Account # / Invoice #

N/A                               N/A
_____          _____
Vendor Address                    City, State & Zip Code

                                  $
_____          _____
Vendor Name                       Amount Paid to Vendor        Account # / Invoice #

_____          _____
Vendor Address                    City, State & Zip Code

                                  $
_____          _____
Vendor Name                       Amount Paid to Vendor        Account # / Invoice #

_____          _____
Vendor Address                    City, State & Zip Code

You represent and affirm that the Vendor information above is provided by you to us, is complete and accurate, and we are under no
obligation to verify this information.

_____          Philip Lajaunie               President
Authorized Signature              Print Name                    Title



AMENDMENT TO AGREEMENT                    Vendor Payee Amendment

Date of Amendment: ᴹᴬʳ  11  , 20 16

Rewards Network Establishment Services Inc. ("We" and/or "Us"), a Delaware corporation, has entered into a Rewards Network Receivables Purchase And Marketing Agreement (each an "Agreement"), as may be applicable, with the legal entity set forth below ("Merchant"), dated as of the date set forth below.

| 15 John Corp. | dba  Les Halles Downtown | ("You") |
| (Legal Name of Merchant) | (Public Name of Merchant) | |

3/10/16

Effective Date of Agreement

You and we agree, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, to modify and amend the Agreement as follows:

1.  All capitalized terms used but not otherwise defined herein have the meanings given to them in the Agreement.

2.  You desire to purchase goods and/or services ("Products") from and/or pay existing obligations ("Vendor Obligations") to the vendors on Exhibit A attached hereto (each a "Vendor"). You will provide the information on Exhibit A and we have no obligation to verify it.

3.  Payment to Vendor. You hereby irrevocably direct that all or a part of the Purchase Price, in the amount(s) set forth on Exhibit A, be made payable to each Vendor, as your designated payee (each a "Vendor Payment"). We agree to issue the Vendor Payment payable in accordance with Exhibit A and to deliver each Vendor Payment directly to you. We will be deemed to have fully performed our obligation to make any Vendor Payment immediately upon delivery of the Vendor Payment to you. You assume all risk of non-receipt by Vendor and we have no obligation to verify Vendor's receipt of any Vendor Payment. You release us from any and all claims arising from or relating to any alleged delay in delivering or failure to deliver any Vendor Payment.

4.  Third-Party Vendor. You acknowledge that Vendor is an independent third party with no authority to act for or on behalf of us, or bind us in any manner whatsoever.

5.  No Third Party Beneficiary. Payment to a Vendor by us is done strictly as an accommodation to you and does not create or constitute an intent or agreement to create any rights or benefits for Vendor, whether as third party beneficiary or otherwise.

6.  Taxes. You acknowledge that we will not under any circumstances be responsible for payment of any taxes due as a result of any Vendor Payment.

7   DISCLAIMER OF WARRANTIES. YOU ACKNOWLEDGE THAT WE DID NOT PARTICIPATE IN THE SELECTION, MANUFACTURE OR SUPPLY OF THE PRODUCTS. YOU HAVE SELECTED THE PRODUCTS, AND THE SUPPLIER THEREOF, BASED ON YOUR OWN JUDGMENT. WE MAKE NO REPRESENTATIONS AND DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, CONCERNING THE PRODUCTS, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR FOR MERCHANTABILITY. YOUR SOLE REMEDY FOR BREACH OF ANY WARRANTY OR SERVICE AGREEMENT RELATING TO SUCH PRODUCTS WILL BE AGAINST SUCH VENDOR, THE MANUFACTURER, OR SERVICE PROVIDER, OF SUCH PRODUCTS, AND NOT AGAINST US, AND SUCH BREACH SHALL HAVE NO EFFECT WHATSOEVER ON THE RIGHTS AND OBLIGATIONS OF YOU AND US UNDER THE AGREEMENT OR HEREIN.

8   WAIVER AND RELEASE. YOU EXPRESSLY AGREE THAT ANY CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES ARISING FROM OR RELATED TO THE PRODUCTS, INCLUDING BUT NOT LIMITED TO: FAILURE TO DELIVER, FAILURE TO PERFORM, FAILURE OF WARRANTY, DELIVERY OF NON-COMPLYING PRODUCTS, DELIVERY OF DEFECTIVE PRODUCTS, OR ANY OTHER CLAIMS OR DEFENSES RELATING TO THE PRODUCTS, WILL BE LIMITED TO AND ASSERTED AGAINST VENDOR ONLY, AND WILL NOT BE ASSERTED AGAINST US. TO THE EXTENT THAT ANY SUCH CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES WOULD CONSTITUTE A DEFENSE TO ANY OBLIGATIONS OWED TO US UNDER THE AGREEMENT, YOU EXPRESSLY WAIVE ALL SUCH DEFENSES, AND RELEASE US FROM ALL LIABILITY FOR ANY SUCH CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES.

9   Except as specifically amended by the terms of this Amendment, and any other amendments agreed to in writing between the parties, all other terms, conditions, and provisions of the Agreement(s) will remain in full force and effect.

10  The Agreement(s), this Amendment, and any other amendments agreed to in writing between the parties, together constitute the entire agreement between us and you as relates to the contents therein and no further changes, revisions, and modifications may be made unless in writing and duly authorized by us and you.



11. This Amendment will be governed by and construed in accordance with the internal laws (as opposed to the conflict of law principles) of the State of Illinois.

12. You represent and warrant that on the date of this Amendment you are duly organized, validly existing and in good standing under the laws of your state of organization and that you have the requisite power and authority to execute and agree to this Amendment.

13. The signature of any party by electronic copy or facsimile will be considered as an original signature.

14. This Amendment need not be signed by us and will be deemed accepted by us unless we notify you in writing that it is not.

| Authorized Signature | Philip Lajaunie | President |
|---|---|---|
| | Print Name | Title |


**REWARDS**
NETWORK.

EXHIBIT A TO VENDOR
PAYEE AMENDMENT

Legal Name of Merchant: 15 John Corp.                    *SECURE WIRE ACCT.*

$72,779.00   ACCT#

GIBRALTAR CAPITAL ADVANCE LLC   $761,583   ABA#
Vendor Name                    Amount Paid to Vendor    Account # / Invoice #

400 SKOKIE BLVD. #375   NORTHBROOK, IL. 60062
Vendor Address          City, State & Zip Code

GIBRALTAR CAPITAL ADVANCE   $88,604.00
Vendor Name                  Amount Paid to Vendor    Account # / Invoice #

400 SKOKIE BLVD #375   NORTHBROOK IL 60062
Vendor Address         City, State & Zip Code

_____   $_____   _____
Vendor Name        Amount Paid to Vendor    Account # / Invoice #

_____   _____
Vendor Address     City, State & Zip Code

You represent and affirm that the Vendor information above is provided by you to us, is complete and accurate, and we are under no obligation to verify this information.

_____   Philip Lajaunie   President
Authorized Signature   Print Name      Title

**Affidavit of Patricia Bunkley**

**Exhibit B**

 REWARDS

### PERSONAL LIABILITY AGREEMENT & CONSUMER REPORT AUTHORIZATION

In order to induce Rewards Network Establishment Services Inc. ("Rewards Network") to enter into the foregoing Rewards Network Receivables Purchase and Marketing Agreement (the "Agreement"), each person, whose name and signature appear below (individually, a "Signatory"), states that he/she has read the Agreement identified and dated below and personally agrees to be immediately liable to Rewards Network for any and all sums due by the Merchant under Section 13 of the Agreement occasioned by an Event of Non-Performance under Section 12 of the Agreement. Rewards Network is not required to first seek to collect any sums due from the Merchant(s) selling the Card Receivables. This responsibility is continuing, irrevocable, unconditional and joint and several among each person identified below. Sections 20, 23, 24, 25 **(which is an arbitration provision with a class action waiver)**, 26 and 29 of the Agreement are specifically incorporated into this Personal Liability Agreement.

By signing below, each Signatory expressly authorizes Rewards Network (which includes, for the purpose of this paragraph, Rewards Network's successors, assigns, agents and service providers) to obtain consumer reports about the Signatory in connection with the Agreement and any dealings between Rewards Network and Signatory. Any such reports may contain personal information about the Signatory, including, but not limited to, public record information and information about Signatory's credit-worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living, criminal history, citizenship status or fraudulent activity. If adverse action is taken, based in whole or in part on the information contained in the consumer report, Signatory will be provided with the name, address, and telephone number of the consumer reporting agency as well as a summary of Signatory's rights under the Fair Credit Reporting Act. Signatory voluntarily and knowingly authorizes and requests any consumer reporting agency engaged by Rewards Network to furnish the above mentioned information to Rewards Network. Signatory understands that the above-mentioned information may be obtained from a variety of sources, including, but not limited to, public records, vendors credit bureaus and financial institutions. Signatory further authorizes Rewards Network to obtain the above-mentioned reports at any time during which the Agreement is in effect or Card Receivables remain undelivered.

In the event that we hold any Signatory personally liable, Signatory understands that Rewards Network may report information about Signatory's personal liability to consumer reporting agencies and such information may have a negative impact on Signatory's personal credit.

Rewards Network Receivables Purchase and Marketing Agreement dated _____3/10/16_____

Phillip Lajaunie
_____
Printed Name of Signatory

_____
Printed Name of Signatory

_____
Signature of Signatory

_____
Signature of Signatory

____03/10/16____
Date

_____
Date



REWARDS

<u>ADDITIONAL MERCHANT INFORMATION</u>

LES NAILES

15 JOHN ST. NEW YORK, NY 10038
Mailing Address (Number, City, State, Zip)

YOKO IIZUKA
Day-to-Day Contact Name

646 831-6978
Alternate Phone/Cell Phone (Not Restaurant Phone)

YI@FIRSTADMININC.COM
Email Address

**Affidavit of Patricia Bunkley**

**Exhibit C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
IN RE:                                                    Case No.: 16-12453 (MEW)
                                                          Chapter 11 Reorganization

      15 JOHN CORP.,
      a/k/a LES HALLES,
      a/k/a FIRST ADMIN INC.,

              Debtor.
-------------------------------------------------------------X

## ORDER GRANTING INTERIM
## UNDERLINE USE OF CASH COLLATERAL

      Upon the Application of the Debtor dated September 30, 2016 seeking the use of cash

collateral under a grant of adequate protection with respect to the purported secured creditors,

American Express and Rewards Network Establishment Services Inc. (collectively, the "Secured

Creditors") which may assert a security interest in the Debtor's property, as such term is defined

in Section 363(a) of the Bankruptcy Code ("Cash Collateral") during the period commencing with

the entry of this Order for a period of until November 16, 2016 ("First Interim Cash Collateral

Period") and the Debtor having projected that the Debtor will create cash proceeds and will be

required to expend certain necessary expenses; and it further appearing that service of the

Application upon the Secured Creditors, the United States Trustee, and certain of the largest

unsecured Debtor's creditors, who have made available e-mail addresses, in the manner provided

in the Application, is sufficient under the circumstances herein, pursuant to 11 U.S.C. §§102 and

363; and good and adequate cause has been shown to justify the granting of the relief requested,

as explained on the record at a hearing held on October 5, 2016,

      ***IT IS HEREBY ORDERED:***

1.      The Debtor is authorized to continue to operate the business of the Debtor and expend funds, and use the proceeds of the credit card receivables as identified in the Application on a preliminary basis, in accordance with the budget attached to this Order as Exhibit "A" (the "Budget"), for a period from the August 25, 2016 (the "Petition Date") through and including November 16, 2016.

2.      The Debtor may use the Cash Collateral of the Secured Creditors for actual and necessary expenses incurred in the ordinary course of the business of the Debtor in the amounts, and for the purposes, as set forth on the Budget.  No payments are being made or shall be made by the Debtor to any insider of the Debtor.

3.      The following Secured Creditors are each granted interim adequate protection pursuant to 11 U.S.C. § 363, subject to the terms of the remaining paragraphs of this Order:

(a)      The Debtor shall pay to American Express 5% of all American Express credit card receivables collected during First Interim Cash Collateral Period.

(b)      The Debtor shall pay to Rewards Network 4% of all Master Card and Visa  credit card receivables collected during the First Interim Cash Collateral Period.

(c)      In addition, each Secured Creditor is hereby granted, nunc pro tunc as of the Petition Date, valid and perfected replacement liens in the post-petition assets and personal property of the Debtor, tangible and intangible, to the same extent, validity, perfection, rank  and priority of the security interests held by such Secured Creditors in such property prior to the Debtor's Chapter 11 filing, but solely to the extent of any diminution in value of such Secured Creditor's interest in collateral resulting from the Debtor's use of Cash Collateral during the First Interim Cash Collateral Period, and

2

subject to any valid and enforceable security interests or liens which existed as of the filing date.

4.      All of the liens granted to the Secured Creditors herein are expressly subordinated to the claims of the Office of the United States Trustee pursuant to 28 U.S.C. Section 1930(a), and to statutory interest thereon.  Under the terms of this interim use, such subordination may be extended to include a carve out for Chapter 7 Trustee Fees and Chapter 7 Trustee attorney's fees in the event of a conversion upon entry of an Order authorizing final use of cash collateral if so ordered by the Court or agreed to by all secured creditors.

5.      This Order is without prejudice to the rights of the Secured Creditors to seek, as adequate protection, amounts which are in excess of the amounts which are to be paid to such Secured Creditors under this Order.

6.      Adequate protection is granted hereunder on an interim basis only.  No final determination has been made as to the existence of security interests that would be affected by the Debtor's proposed use of the proceeds of post-petition receivables or as to whether the Secured Creditors face circumstances that warrant adequate protection.  The Debtor shall have the right to seek to clawback any adequate protection payments made hereunder (and the Court shall retain the right to order such clawback and repayment), and any adequate protection liens granted hereunder shall be subject to cancellation in their entirety, to the extent that the Court determines that adequate protection was not necessary or appropriate under Sections 361, 363 and 506(c) of the Bankruptcy Code.

7.      Nothing contained herein shall be deemed to be a determination of the extent, validity, perfection or enforceability of the Secured Creditors claims  against the Debtor as of the

Case 1:16-cv-09953 Document #: 1-6 Filed: 10/19/18 Page 30 of 174 PageID #:925

Petition Date or of security interests, liens, other interest and claims granted to the Secured Creditors with respect thereto, and the right to challenge the validity, perfection, or enforceability of all such liens, claims, security interests, interests and other rights of the Secured Creditors are hereby reserved to the Debtor, any subsequent trustee, and any other party in interest.

8.    No provision of this Order shall constitute or be interpreted as a waiver or modification of the applicable terms of Sections 506(c) and 552 of the Bankruptcy Code.  All issues relevant to the applicability of those provisions are hereby reserved.

9.    The Debtor may at any time request in writing the Secured Creditor's permission to exceed any budgeted line item amount, which permission shall not be unreasonably withheld by the Secured Creditor upon the Debtor's demonstration of the necessity to exceed the budgeted amount due to unforeseen circumstances.  If (i) Debtor has requested consent to exceed any budgeted line amount (which request shall include all relevant supporting documentation and the ability for Secured Creditor or its agent to inspect the Debtor's books and records), (ii) either of the Secured Creditors has not given its consent within five (5) business days after such written request by Debtor, and (iii) the Debtor believes that Secured Creditor's consent was unreasonably withheld, the Debtor may seek authorization of the Court upon not less than five (5) business days notice to the Secured Creditors and its counsel to exceed a budgeted line item amount.

10.    The use of Cash Collateral set forth in this Order shall continue subject to further Court Order.  A final (or further interim) hearing to consider use of Cash Collateral will be held on **November 16, 2016 at 10:00 a.m**.

11.    Within twenty (20) days after the end of each calendar month, the Debtor shall serve the Secured Creditors, and their respective counsel, with copies of operating reports for such month.

4

Case 1:16-cv-09052 Document #: 1 Filed: 10/19/18 Page 31 of 174 PageID #:926

In addition, within 24 hours of the entry of this Order, the Debtor shall provide American Express and Rewards Network with (i) all of the Debtors' credit card processing information in a manner which it provided prior to the Chapter 11 filing to track and tabulate all credit card transactions processed by the Debtor to calculate the amounts due under this Order, and (ii) the Debtor's banking information, including a voided check from the account from which the adequate protection payments provided for herein are to be drawn. Rewards Network shall be entitled to process each of its approved adequate protection payments as provided for under its Agreement with the Debtor, which shall occur via automated clearing house debits from the Debtor's bank account on a daily basis during the First Interim Cash Collateral Period provided that any such costs and expenses associated with ACH debits or credit card processor charges shall be borne by Rewards Network.

12.    The Debtor shall maintain appropriate insurance during the pendency of its Chapter 11 case and shall  provide to Secured Creditors proof of such insurance and proof of payment of all premiums, which premiums shall be paid promptly when due.

13.    Except as otherwise expressly provided in this Order, the Debtor and Secured Creditors, shall retain all of their respective rights and remedies thereunder, subject to the provisions of the Bankruptcy Code.

11.    Notwithstanding anything to the contrary contained herein, the Debtor's authority to use in any way and to any extent the Cash Collateral shall immediately terminate, upon a finding by the Court of the occurrence of any of the following events (each a "Termination Event"):

(a)    The Debtor's failure to comply with any of the terms and conditions contained in this Order;

(b)    The entry of an Order dismissing this case or converting this case to one under Chapter 7 of the Bankruptcy Code;

5

    (c)      Upon the effective date of a plan of reorganization of the Debtor confirmed by this Court;

    (d)      Entry of an Order by the Court approving or authorizing the appointment of a Chapter 11 Trustee or Chapter 7 Trustee in this case.

12.    The provisions of this Order shall be binding upon, and inure to the benefit of Secured Creditors, the Debtor, and their respective successors and assigns, including but not limited to, any Trustee or other fiduciary appointed as a legal representative of the Debtor whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case or in connection with any other state or federal proceeding.

13.    The automatic stay imposed by Section 362 of the Bankruptcy Code shall be, and hereby is, lifted and vacated to the extent necessary to implement and effectuate the terms and conditions of this Order. Except to the extent otherwise provided in this Order, the automatic stay imposed by Section 362 of the Bankruptcy Code, in all other respects, shall remain in effect during the pendency of this case.

Dated:    New York, New York
        October 18, 2016

                        **s/Michael E. Wiles**
                        UNITED STATES BANKRUPTCY JUDGE

| | Week #1 | Week #2 | Week #3 | Week #4 | 4 weeks Budget | 30 Days |
|---|---|---|---|---|---|---|
| **Sales** | $ 35,000.00 | $ 35,000.00 | $ 40,000.00 | $ 40,000.00 | $ 150,000.00 | $ 160,714.29 |
| COGS (F&B) | $ 9,450.00 | $ 9,450.00 | $ 10,800.00 | $ 10,800.00 | $ 40,500.00 | $ 43,392.86 |
| **Gross Profit** | $ 25,550.00 | $ 25,550.00 | $ 29,200.00 | $ 29,200.00 | $ 109,500.00 | $ 117,321.43 |
| | | | | | | |
| Labor Cost | $ 9,700.00 | $ 9,700.00 | $ 10,000.00 | $ 10,000.00 | $ 39,400.00 | $ 42,214.29 |
| Payroll ER Taxes | $ 1,750.00 | $ 1,750.00 | $ 2,000.00 | $ 2,000.00 | $ 7,500.00 | $ 8,035.71 |
| Rent | | | | | $ 32,000.00 | $ 34,285.71 |
| Utilities | | | | | $ 5,000.00 | $ 5,357.14 |
| Water | | | | | $ 1,600.00 | $ 1,714.29 |
| Linens | $ 250.00 | $ 250.00 | $ 300.00 | $ 300.00 | $ 1,100.00 | $ 1,178.57 |
| Kitchen/ CL Supplies | | | | | $ 250.00 | $ 267.86 |
| Waste & Removal | $ 250.00 | $ 250.00 | $ 300.00 | $ 300.00 | $ 1,100.00 | $ 1,178.57 |
| Extermination | | | | | $ 200.00 | $ 214.29 |
| Equipment Rental | | | | | $ 500.00 | $ 535.71 |
| Paper Supply | | | | | $ 1,000.00 | $ 1,071.43 |
| Insurance (WC/CP) | | | | | $ 5,000.00 | $ 5,357.14 |
| Phone/ Internet | | | | | $ 500.00 | $ 535.71 |
| POS | | | | | $ 1,300.00 | $ 1,392.86 |
| Payroll Processing | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 800.00 | $ 857.14 |
| Bank/ Office supply | | | | | $ 150.00 | $ 160.71 |
| Maintenance | | | | | $ 300.00 | $ 321.43 |
| **Total Expenses** | $ 15,350.00 | $ 15,350.00 | $ 18,600.00 | $ 18,600.00 | $ 97,700.00 | $ 104,678.57 |
| | | | | | | |
| **Net Profit** | $ 15,350.00 | $ 15,350.00 | $ 18,600.00 | $ 18,600.00 | $ 11,800.00 | $ 12,642.86 |
| **%** | | | | | 7.87% | 7.87% |

**Affidavit of Patricia Bunkley**

**Exhibit D**

| Transaction | Amount | Date Paid | Date Post | Collector | Reference # |
|---|---|---|---|---|---|
| Check | (699.08) | 03-13-2017 | 03-13-2017 | DeCicco, Kathy | |
| Check | (652.64) | 03-20-2017 | 03-21-2017 | DeCicco, Kathy | |
| Check | (867.99) | 03-27-2017 | 03-27-2017 | DeCicco, Kathy | |
| Check | (867.99) | 03-30-2017 | 03-30-2017 | DeCicco, Kathy | |
| Returned Check | 867.99 | 03-27-2017 | 03-30-2017 | DeCicco, Kathy | |
| Check | (1,011.18) | 04-04-2017 | 04-04-2017 | DeCicco, Kathy | |
| Check | (1,072.11) | 04-11-2017 | 04-11-2017 | DeCicco, Kathy | |
| Check | (1,368.06) | 04-17-2017 | 04-17-2017 | DeCicco, Kathy | |
| Check | (1,257.58) | 04-24-2017 | 04-24-2017 | DeCicco, Kathy | |
| Check | (1,169.41) | 05-01-2017 | 05-01-2017 | DeCicco, Kathy | |
| Check | (893.21) | 05-08-2017 | 05-08-2017 | DeCicco, Kathy | |
| Check | (1,116.75) | 05-16-2017 | 05-16-2017 | DeCicco, Kathy | |
| Check | (1,116.75) | 05-22-2017 | 05-22-2017 | DeCicco, Kathy | |
| Check | (1,133.47) | 05-31-2017 | 05-31-2017 | DeCicco, Kathy | |
| Check | (793.36) | 06-05-2017 | 06-05-2017 | DeCicco, Kathy | |
| Check | (978.56) | 06-12-2017 | 06-12-2017 | DeCicco, Kathy | |
| Check | (893.72) | 06-19-2017 | 06-19-2017 | DeCicco, Kathy | |
| Check | (1,106.39) | 06-26-2017 | 06-26-2017 | DeCicco, Kathy | |
| Check | (836.06) | 07-05-2017 | 07-05-2017 | DeCicco, Kathy | |
| Check | (560.89) | 07-10-2017 | 07-10-2017 | DeCicco, Kathy | |
| Check | (865.55) | 07-17-2017 | 07-17-2017 | DeCicco, Kathy | |
| Check | (1,045.84) | 07-25-2017 | 07-25-2017 | DeCicco, Kathy | |
| Check | (1,047.76) | 07-31-2017 | 07-31-2017 | DeCicco, Kathy | |
| Check | (740.02) | 08-04-2017 | 08-04-2017 | DeCicco, Kathy | |
| Returned Check | 740.02 | 08-04-2017 | 08-09-2017 | DeCicco, Kathy | |

| Whose Number | Number | Contacted | Attempted | Dials | Action | Result |
|---|---|---|---|---|---|---|
| Phillip Lajaunie | 917-771-0727 | 01/01/1901 | 01/01/1901 | 0 | Home | Never Tried |
| Restaurant | 212-571-2100 | 01/01/1901 | 01/01/1901 | 0 | Restaurant | Never Tried |

| Budget | Net | PostDates |
|---|---|---|
| | | |

**Debtor Overview Report**

| Note Date | Time | Last Name | Note Text |
|-----------|------|-----------|-----------|

| Transaction | Amount | Date Paid | Date Post | Collector | Reference # |
|-------------|--------|-----------|-----------|-----------|-------------|
| Assigned by Client | 13,082.84 | 09-01-2016 | 09-01-2016 | System, | NewBiz |
| Check | (798.44) | 11-21-2016 | 11-21-2016 | DeCicco, Kathy | |
| Check | (954.04) | 11-30-2016 | 11-30-2016 | DeCicco, Kathy | |
| Check | (517.94) | 12-05-2016 | 12-05-2016 | DeCicco, Kathy | |
| Check | (1,094.34) | 12-12-2016 | 12-12-2016 | DeCicco, Kathy | |
| Check | (1,233.35) | 12-21-2016 | 12-21-2016 | DeCicco, Kathy | |
| Check | (1,192.11) | 12-27-2016 | 12-27-2016 | DeCicco, Kathy | |
| Check | (787.59) | 01-03-2017 | 01-03-2017 | DeCicco, Kathy | |
| Check | (727.07) | 01-09-2017 | 01-09-2017 | DeCicco, Kathy | |
| Check | (731.80) | 01-16-2017 | 01-16-2017 | DeCicco, Kathy | |
| Check | (657.58) | 01-23-2017 | 01-23-2017 | DeCicco, Kathy | |
| Check | (444.58) | 01-30-2017 | 01-30-2017 | DeCicco, Kathy | |
| Check | (703.80) | 02-06-2017 | 02-06-2017 | DeCicco, Kathy | |
| Check | (734.05) | 02-21-2017 | 02-21-2017 | DeCicco, Kathy | |
| Check | (628.71) | 02-27-2017 | 02-27-2017 | DeCicco, Kathy | |
| Check | (636.15) | 03-06-2017 | 03-06-2017 | DeCicco, Kathy | |
| Check | (100.06) | 03-13-2017 | 03-13-2017 | DeCicco, Kathy | |
| Check | (608.31) | 02-13-2017 | 07-10-2018 | DeCicco, Kathy | |
| Check | (532.92) | 11-14-2016 | 07-10-2018 | DeCicco, Kathy | |

| Whose Number | Number | Contacted | Attempted | Dials | Action | Result |
|--------------|--------|-----------|-----------|-------|--------|--------|
| Phillip Lajaunie | 917-771-0727 | 10/18/2016 | 10/18/2016 | 1 | Home | NO ANSWER |
| Restaurant & Yoko Iizuka (( | 212-285-8585 | 01/01/1901 | 10/18/2016 | 1 | Restaurant | LEFT MESSAGE |
| Yoko Iizuka - Dtd | 646-831-6978 | 10/18/2016 | 10/18/2016 | 1 | Contact | LEFT VOICE MAIL MES |

| Budget | Net | PostDates |
|--------|-----|-----------|

**Affidavit of Patricia Bunkley**

**Exhibit E**

LEO FOX, ESQ. (LF-1947)
630 THIRD AVENUE, 18TH FLOOR
NEW YORK, NEW YORK 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN RE:                                                                      Case No.: 16-12453 (MEW)
                                                                            Chapter 11 Reorganization

      15 JOHN CORP.,
      a/k/a LES HALLES,
      a/k/a FIRST ADMIN INC.,

                  Debtor.
------------------------------------------------------------X

## STIPULATION AND ORDER EXTENDING
## USE OF CASH COLLATERAL,
## ADJOURNING THE CHAPTER 11 TRUSTEE MOTION
## TO AND TOLLING THE ILLINOIS ACTION  TO JANUARY 16, 2017

**WHEREAS** pursuant to the Order Granting Interim Use Of Cash Collateral entered on
October 18, 2016 [Dkt. No. 36] (the "Interim Order"), the use of cash collateral by the above
Debtor in the above case is to be heard on November 16, 2016,

**WHEREAS** the Motion of Rewards Network Establishment Services Inc. ("Rewards
Network") to Appoint a Chapter 11 Trustee (Docket No. 17) was adjourned to November 16, 2016,

**WHEREAS** an action was commenced on October 24, 2016 in the United States District
Court for the Northern District of Illinois entitled *Rewards Network vs. Philip Lajaunie and La
Boucherie Inc.* under Index No. 16-CV-09552 (the "Illinois Action"),

**WHEREAS**, the Debtor, Rewards Network, and American Express have agreed to extend
the terms of the Interim Order and have authorized the continued use of cash collateral, subject to
the same adequate protection terms to be provided by the Debtor as set forth in the Interim Order,

2

*IT IS STIPULATED BY AND BETWEEN* the the Debtor, Rewards Network, Philip Lajaunie and Le Boucherie Inc. as follows:

1.      That the Debtor's use of cash collateral, the Debtor's adequate protection payments, and the grant of replacement liens provided in the Interim Orderas to the alleged collateral of American Express and Rewards Network are hereby continued under the terms of this Stipulation and Order through and including January 16, 2017 or to such other date as directed by the Court (the "Adjournment Date"), and, except as expressly modified herein, the remainder of the Interim Order also remains effective through and including the Adjournment Date.

2.      The Motion to Appoint a Chapter 11 Trustee is adjourned to the Adjournment Date.

3.      Philip Lajaunie and Le Boucherie Inc. agree that the Summons and Complaint in the Illinois Action have been served upon them and that all acts, filings and deadlines in the Illinois Action are hereby stayed and tolled, pending settlement discussions, until two (2) weeks after notice is given by either party to the other that settlement discussions have ended but in no event earlier than January 16, 2017, except in the event of the Debtor's breach in providing the adequate protection payments to Rewards Network, in which case such stay/tolling shall terminate immediately.  It is the intention of the parties that any act, filing or deadline to be undertaken in the Illinois Action on or before January 16, 2017 shall be deemed to have been taken on November 11, 2016 and that the statements within this Stipulation and Order do not constitute an appearance in or consent to, the Illinois Action, by the Defendants in the Illinois Action.  .

**15 JOHN CORP.,**                              **REWARDS NETWORK**
**a/k/a LES HALLES,**                           **ESTABLISHMENT SERVICES INC.**
**a/k/a FIRST ADMIN INC.**
Debtor-In-Possession


By:    */s/ Leo Fox*              By:    */s/ Isaac M. Gabriel, Esq.*
LEO FOX, ESQ.  (LF-1947)              Isaac M. Gabriel, Esq.

Case 1:16-cv-09952 Document 1-1 Filed 10/19/18 Page 40 of 174 PageID #:945

3

| | |
|---|---|
| Attorney for Debtor | Quarles & Brady LLP |
| 630 Third Avenue | One Renaissance Square |
| New York, New York 10017 | Two North Central Avenue |
| (212) 867-959 | Phoenix, Arizona 85004-2391 |
| | (602) 230-4622 |

Dated: November __, 2016          Dated: November __, 2016


**PHILIP LAJAUNIE**          **LE BOUCHERIE, INC.**


By:    _/s/ Philip Lajaunie_          By:    _/s/ Philip Lajaunie_
                    President


Date:  December 16, 2016
New York New York          **s/Michael E. Wiles**
                    UNITED STATES BANKRUPTCY JUDGE

LEO FOX, ESQ. (LF-1947)
630 THIRD AVENUE, 18TH FLOOR
NEW YORK, NEW YORK 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

IN RE:                                                Case No.: 16-12453 (MEW)
                                                      Chapter 11 Reorganization

       15 JOHN CORP.,
       a/k/a LES HALLES,
       a/k/a FIRST ADMIN INC.,

               Debtor.
-----------------------------------------------------------X

## STIPULATION AND ORDER EXTENDING
## USE OF CASH COLLATERAL,
## ADJOURNING THE CHAPTER 11 TRUSTEE MOTION
## <u>TO AND TOLLING THE ILLINOIS ACTION  TO FEBRUARY 15, 2017</u>

    ***WHEREAS*** pursuant to Stipulation and Order dated December 16 2016 (Docket No. 49),

(a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Dkt. No. 36]

(the "Interim Order"), for the use of cash collateral by the above Debtor in the above case was

extended from November 16, 2016 to January 17, 2017, (b) the return date of the Motion of

Rewards Network Establishment Services Inc. ("Rewards Network") to Appoint a Chapter 11

Trustee (Docket No. 17) was adjourned from November 16, 2016 to January 17, 2017, (c) in the

action commenced on October 24, 2016 in the United States District Court for the Northern

District of Illinois entitled <u>*Rewards Network vs. Philip Lajaunie and La Boucherie Inc.*</u> under

Index No. 16-CV-09552 (the "Illinois Action"), the parties agreed to a stand-still therein until no

earlier than January 16, 2017,

*WHEREAS*, the parties wish to extend the deadline dates of January 16, 2017 to February 15, 2017 and continue paying and receiving the same adequate protection payments provided for in the Interim Order, it is

*IT IS STIPULATED BY AND BETWEEN* the the Debtor, Rewards Network, Philip Lajaunie and Le Boucherie Inc. as follows, (a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Docket. No. 36] (the "Interim Order"), for the use of cash collateral and grant of liens by the above Debtor in the above case is extended from January 17, 2017 to February 15, 2017 and the parties shall continue to perform their respective obligations stated thereunder, (b) the return date of the Motion of Rewards Network Establishment Services Inc. ("Rewards Network") to Appoint a Chapter 11 Trustee (Docket No. 17) is adjourned from January 17, 2017 to February 15, 2017 at 10:00 a.m., (c) in the Illinois Action all acts, filings or deadlines to be undertaken on or before February 15, 2017 are deemed to have been taken on November 11, 2016 and that the statements within this Stipulation and Order do not constitute an appearance in, or consent to, the Illinois Action by the Defendants in the Illinois Action.

| | |
|---|---|
| *15 JOHN CORP.,*<br>*a/k/a LES HALLES,*<br>*a/k/a FIRST ADMIN INC.*<br>Debtor-In-Possession | *REWARDS NETWORK*<br>*ESTABLISHMENT SERVICES INC.* |
| By: */s/ Leo Fox*<br>LEO FOX, ESQ. (LF-1947)<br>Attorney for Debtor<br>630 Third Avenue<br>New York, New York 10017<br>(212) 867-959 | By: */s/ Isaac M. Gabriel*<br>Isaac M. Gabriel, Esq.<br>Quarles & Brady LLP<br>One Renaissance Square<br>Two North Central Avenue<br>Phoenix, Arizona 85004-2391<br>(602) 230-4622 |
| Dated: January 13, 2017 | Dated: January 13, 2017 |

*PHILIP LAJAUNIE*                    *LE BOUCHERIE, INC.*

By:    _/s/ Philip Lajaunie_              By:    _/s/ Philip Lajaunie_____
                                                  President

Dated: January 13, 2017                   Dated:  January 13, 2017


SO ORDERED:


Dated: January 13, 2017                   **s/Michael E. Wiles**
                                          HONORABLE MICHAEL E. WILES
                                          UNITED STATES BANKRUPTCY JUDGE

LEO FOX, ESQ. (LF-1947)
630 THIRD AVENUE, 18TH FLOOR
NEW YORK, NEW YORK 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

IN RE:                                              Case No.: 16-12453 (MEW)
                                                    Chapter 11 Reorganization


        15 JOHN CORP.,
        a/k/a LES HALLES,
        a/k/a FIRST ADMIN INC.,

                            Debtor.
-------------------------------------------------------------X

## STIPULATION AND ORDER EXTENDING
## USE OF CASH COLLATERAL,
## ADJOURNING THE CHAPTER 11 TRUSTEE MOTION
## TO AND TOLLING THE ILLINOIS ACTION  TO MARCH 8, 2017


**WHEREAS** pursuant to Stipulation and Order dated December 16 2016 (Docket No. 49),

(a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Dkt. No. 36]

(the "Interim Order"), for the use of cash collateral by the above Debtor in the above case was

extended from November 16, 2016 to January 17, 2017, (b) the return date of the Motion of

Rewards Network Establishment Services Inc. ("Rewards Network") to Appoint a Chapter 11

Trustee (Docket No. 17) was adjourned from November 16, 2016 to January 17, 2017, (c) in the

action commenced on October 24, 2016 in the United States District Court for the Northern

District of Illinois entitled *Rewards Network vs. Philip Lajaunie and La Boucherie Inc.* under

Index No. 16-CV-09552 (the "Illinois Action"), the parties agreed to a stand-still therein until no

earlier than January 16, 2017,

        **WHEREAS** pursuant to Stipulation and Order for use of cash collateral dated January 13,

2017, the deadline dates were extended to February 15, 2017,

C:\15 John Corp.\Stipulation and Order Re: Cash Collateral and Tolling\2-7-17

*WHEREAS* the parties wish to extend the deadline dates of February 15, 2017 to March 8, 2017 and continue paying and receiving the same adequate protection payments provided for in the Interim Order, it is

*IT IS STIPULATED BY AND BETWEEN* the Debtor, Rewards Network, Philip Lajaunie and Le Boucherie Inc., and American Express Bank, FSB as follows, (a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Docket. No. 36] (the "Interim Order"), for the use of cash collateral and grant of liens by the above Debtor in the above case is extended from February 15, 2017 to March 8, 2017 and the parties shall continue to perform their respective obligations stated thereunder, (b) the return date of the Motion of Rewards Network Establishment Services Inc. ("Rewards Network") to Appoint a Chapter 11 Trustee (Docket No. 17) is adjourned from  February 15, 2017 to March 8, 2017 at 10:00 a.m., (c) in the Illinois Action all acts, filings or deadlines to be undertaken on or before March 8, 2017 are deemed to have been taken on November 11, 2016 and that the statements within this Stipulation and Order do not constitute an appearance in, or consent to, the Illinois Action by the Defendants in the Illinois Action.

*15 JOHN CORP.,*
*a/k/a LES HALLES,*
*a/k/a FIRST ADMIN INC.*
Debtor-In-Possession

By:    /s/ Leo Fox
LEO FOX, ESQ.  (LF-1947)
Attorney for Debtor
630 Third Avenue
New York, New York 10017
(212) 867-959

Dated: February 14, 2017

*REWARDS NETWORK*
*ESTABLISHMENT SERVICES INC.*

By:    /s/ Issac M. Gabriel
Isaac M. Gabriel, Esq.
Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
(602) 230-4622

Dated: February  14, 2017

*AMERICAN EXPRESS BANK, FSB as to*
*extension of the use of cash collateral and*
*protections thereunder*

By: _____
Crystal Jones Oswald, Esq.
Becket & Lee LLP
Agents/Attorneys for American
Express Bank, FSB
16 General Warren Boulevard
P.O. Box 3001
Malvern, Pennsylvania 19355
Licensed in Pennsylvania
(610) 644-7800

Dated: February 14, 2017

*PHILIP LAJAUNIE*                    *LE BOUCHERIE, INC.*

By: _____          By: _____
                                    President

Dated: February    , 2017           Dated:  February    , 2017

SO ORDERED:

Dated: February    , 2017           _____
                                    HONORABLE MICHAEL E. WILES
                                    UNITED STATES BANKRUPTCY JUDGE

3

*AMERICAN EXPRESS BANK, FSB as to extension of the use of cash collateral and protections thereunder*

By: _____
        Crystal Jones Oswald, Esq.
        Becket & Lee LLP
        Agents/Attorneys for American
        Express Bank, FSB
        16 General Warren Boulevard
        P.O. Box 3001
        Malvern, Pennsylvania 19355
        Licensed in Pennsylvania
        (610) 644-7800

Dated: February   , 2017

*PHILIP LAJAUNIE*

By:   */s/ Philip Lajaunie*

Dated: February  14, 2017

*LE BOUCHERIE, INC.*

By:   */s/ Philip Lajaunie*
       President

Dated: February  14, 2017

SO ORDERED:

Dated: February 14 2017

  s/Michael E. Wiles
_____
HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

LEO FOX, ESQ. (LF-1947)
630 THIRD AVENUE, 18TH FLOOR
NEW YORK, NEW YORK 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
IN RE:                                              Case No.: 16-12453 (MEW)
                                                    Chapter 11 Reorganization

        15 JOHN CORP.,
        a/k/a LES HALLES,
        a/k/a FIRST ADMIN INC.,

                          Debtor.
-------------------------------------------------------------X

**STIPULATION AND ORDER EXTENDING
USE OF CASH COLLATERAL,
TO AND TOLLING THE ILLINOIS ACTION  TO APRIL 5, 2017**


        ***WHEREAS*** pursuant to Stipulation and Order dated December 16 2016 (Docket No. 49),

(a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Dkt. No. 36]

(the "Interim Order"), for the use of cash collateral by the above Debtor in the above case was

extended from November 16, 2016 to January 17, 2017, (b) the return date of the Motion of

Rewards Network Establishment Services Inc. ("Rewards Network") to Appoint a Chapter 11

Trustee (Docket No. 17) was adjourned from November 16, 2016 to January 17, 2017, (c) in the

action commenced on October 24, 2016 in the United States District Court for the Northern

District of Illinois entitled *Rewards Network vs. Philip Lajaunie and La Boucherie Inc.* under

Index No. 16-CV-09552 (the "Illinois Action"), the parties agreed to a stand-still therein until no

earlier than January 16, 2017,

        ***WHEREAS*** pursuant to Stipulation and Order for use of cash collateral dated February

15, 2017, the deadline dates were extended to March 8, 2017,

*WHEREAS* the parties wish to extend the deadline dates of March 8, 2017 to April 5, 2017 and continue paying and receiving the same adequate protection payments provided for in the Interim Order, it is

*IT IS STIPULATED BY AND BETWEEN* the Debtor, Rewards Network, Philip Lajaunie and Le Boucherie Inc., and American Express Bank, FSB as follows, (a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Docket. No. 36] (the "Interim Order"), for the use of cash collateral and grant of liens by the above Debtor in the above case is extended from March 8, 2017 to April 5, 2017 and the parties shall continue to perform their respective obligations stated thereunder, (b) the Motion of Rewards Network Establishment Services Inc. ("Rewards Network") to Appoint a Chapter 11 Trustee (Docket No. 17) is withdrawn without prejudice as reflected on the attached e-mail and (c) in the Illinois Action all acts, filings or deadlines to be undertaken on or before April 5, 2017 are deemed to have been taken on November 11, 2016 and that the statements within this Stipulation and Order do not constitute an appearance in, or consent to, the Illinois Action by the Defendants in the Illinois Action.

**15 JOHN CORP.,**
**a/k/a LES HALLES,**
**a/k/a FIRST ADMIN INC.**
Debtor-In-Possession

By:    /s/ *Leo Fox*
Leo Fox, Esq.  (LF-1947)
Attorney for Debtor
630 Third Avenue
New York, New York 10017
(212) 867-959


Dated: March 7, 2017

**REWARDS NETWORK**
**ESTABLISHMENT SERVICES INC.**


By:    /s/ *Isaac M. Gabriel*
Isaac M. Gabriel, Esq.
Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
(602) 230-4622

Dated: March 7, 2017

*AMERICAN EXPRESS BANK, FSB as to
extension of the use of cash collateral and
protections thereunder*

By:    */s/ Crystal Jones Oswald*
         Crystal Jones Oswald, Esq.
         Becket & Lee LLP
         Agents/Attorneys for American
         Express Bank, FSB
         16 General Warren Boulevard
         P.O. Box 3001
         Malvern, Pennsylvania 19355
         Licensed in Pennsylvania
         (610) 644-7800

Dated: March 7, 2017

*PHILLIP LAJAUNIE*                    *LE BOUCHERIE, INC.*

By:    */s/ Phillip Lajaunie*          By:    */s/ Phillip Lajaunie*
                                                     President

Dated: March 7, 2017                  Dated: March 7, 2017

SO ORDERED:

Dated: March 8 , 2017              s/Michael E. Wiles
                                           _____
                                           HONORABLE MICHAEL E. WILES
                                           UNITED STATES BANKRUPTCY JUDGE

3

LEO FOX, ESQ. (LF-1947)
630 THIRD AVENUE, 18TH FLOOR
NEW YORK, NEW YORK 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE:                                                                Case No.: 16-12453 (MEW)
                                                                      Chapter 11 Reorganization

       15 JOHN CORP.,
       a/k/a LES HALLES,
       a/k/a FIRST ADMIN INC.,

               Debtor.
-----------------------------------------------------------X

### STIPULATION AND ORDER EXTENDING
### USE OF CASH COLLATERAL,
### TO AND TOLLING THE ILLINOIS ACTION  TO MAY 9, 2017

      **WHEREAS** pursuant to Stipulation and Order dated December 16 2016 (Docket No. 49),

(a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Dkt. No. 36]

(the "Interim Order"), for the use of cash collateral by the above Debtor in the above case was

extended from November 16, 2016 to January 17, 2017, (b) the return date of the Motion of

Rewards Network Establishment Services Inc. ("Rewards Network") to Appoint a Chapter 11

Trustee (Docket No. 17) was adjourned from November 16, 2016 to January 17, 2017, (c) in the

action commenced on October 24, 2016 in the United States District Court for the Northern

District of Illinois entitled _Rewards Network vs. Philip Lajaunie and La Boucherie Inc._ under

Index No. 16-CV-09552 (the "Illinois Action"), the parties agreed to a stand-still therein until no

earlier than January 16, 2017,

      **WHEREAS** pursuant to Stipulation and Order for use of cash collateral dated January 13,

2017 the deadline dates were extended from extended from January 16, 2017 to February 15,

2017,

Case 1:16-cv-09958-Document #: 99-1 Filed: 10/19/18 Page 52 of 174 PageID #:957

*WHEREAS* pursuant to Stipulation and Order for use of cash collateral dated February 15, 2017, the deadline dates were extended from February 15, 2017 to March 8, 2017,

*WHEREAS* pursuant to Stipulation and Order for use of cash collateral dated March 8, 2017, the deadline date was extended from March 8, 2017 to April 5, 2017,

*WHEREAS* the Motion of Rewards Network to appoint a Chapter 11 Trustee was withdrawn without prejudice on March 8, 2017,

*WHEREAS* the parties wish to extend the deadline dates of April 5, 2017 to May 9, 2017 and continue paying and receiving the same adequate protection payments provided for in the Interim Order, it is

*IT IS STIPULATED BY AND BETWEEN* the Debtor, Rewards Network, Philip Lajaunie and Le Boucherie Inc., and American Express Bank, FSB as follows, (a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Docket. No. 36] (the "Interim Order"), for the use of cash collateral and grant of liens by the above Debtor in the above case is extended from April 5, 2017 to May 9, 2017 and the parties shall continue to perform their respective obligations stated thereunder and (b) in the Illinois Action all acts, filings or deadlines to be undertaken on or before May 9, 2017 are deemed to have been taken on

Case 1:16-cv-09958 Document #: 49-1 Filed: 10/19/18 Page 52 of 174 PageID #:958

November 11, 2016 and that the statements within this Stipulation and Order do not constitute an

appearance in, or consent to, the Illinois Action by the Defendants in the Illinois Action.

| | |
|---|---|
| **15 JOHN CORP.,**<br>**a/k/a LES HALLES,**<br>**a/k/a FIRST ADMIN INC.**<br>Debtor-In-Possession | **REWARDS NETWORK**<br>**ESTABLISHMENT SERVICES INC.** |

By:     _/s/ Leo Fox_                                   By:     _/s/ Isaac M. Gabriel_
Leo Fox, Esq.  (LF-1947)                            Isaac M. Gabriel, Esq.
Attorney for Debtor                                  Quarles & Brady LLP
630 Third Avenue                                     One Renaissance Square
New York, New York 10017                             Two North Central Avenue
(212) 867-959                                        Phoenix, Arizona 85004-2391
                                                     (602) 230-4622

Dated: April 4, 2017                                 Dated: April 4, 2017


**AMERICAN EXPRESS BANK, FSB as to**
**extension of the use of cash collateral and**
**protections thereunder**

By:     _/s/ Crystal Jones Oswald_
Crystal Jones Oswald, Esq.
Becket & Lee LLP
Agents/Attorneys for American
Express Bank, FSB
16 General Warren Boulevard
P.O. Box 3001
Malvern, Pennsylvania 19355
Licensed in Pennsylvania
(610) 644-7800

Dated: April 4, 2017

***PHILLIP LAJAUNIE***                    ***LE BOUCHERIE, INC.***

By:    ___*/s/ Phillip Lajaunie*___        By:    ___*/s/ Phillip Lajaunie*___
                                                  Phillip Lajaunie
                                                  President

Dated: April 4, 2017                      Dated:  April 4, 2017


SO ORDERED:



Dated: April 4, 2017                      **s/Michael E. Wiles**
                                          HONORABLE MICHAEL E. WILES
                                          UNITED STATES BANKRUPTCY JUDGE

LEO FOX, ESQ. (LF-1947)
630 THIRD AVENUE, 18TH FLOOR
NEW YORK, NEW YORK 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

IN RE:                                              Case No.: 16-12453 (MEW)
                                                    Chapter 11 Reorganization

15 JOHN CORP.,
a/k/a LES HALLES,
a/k/a FIRST ADMIN INC.,

                            Debtor.
-----------------------------------------------------------X

## STIPULATION AND ORDER EXTENDING
## USE OF CASH COLLATERAL,
## TO AND TOLLING THE ILLINOIS ACTION  TO ON OR BEFORE JUNE 15, 2017

**WHEREAS** pursuant to Stipulation and Order dated December 16 2016 (Docket No. 49),

(a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Dkt. No. 36]

(the "Interim Order"), for the use of cash collateral by the above Debtor in the above case was

extended from November 16, 2016 to January 17, 2017, (b) the return date of the Motion of

Rewards Network Establishment Services Inc. ("Rewards Network") to Appoint a Chapter 11

Trustee (Docket No. 17) was adjourned from November 16, 2016 to January 17, 2017, (c) in the

action commenced on October 24, 2016 in the United States District Court for the Northern District

of Illinois entitled _Rewards Network vs. Philip Lajaunie and La Boucherie Inc._ under Index No.

16-CV-09552 (the "Illinois Action"), the parties agreed to a stand-still therein until no earlier than

January 16, 2017,

**WHEREAS** pursuant to Stipulation and Order for use of cash collateral dated January 13,

2017 the deadline dates were extended from extended from January 16, 2017 to February 15, 2017,

C:\15 John Corp.\Stipulation and Order Re: Cash Collateral and Tolling\5-8-17

Case 1:16-cv-09953 Document #: 97-1 Filed: 10/18/18 Page 56 of 174 PageID #:961

2

**WHEREAS** pursuant to Stipulation and Order for use of cash collateral dated February 15, 2017, the deadline dates were extended from February 15, 2017 to March 8, 2017,

**WHEREAS** pursuant to Stipulation and Order for use of cash collateral dated March 8, 2017, the deadline date was extended from March 8, 2017 to April 5, 2017,

**WHEREAS** pursuant to Stipulation and Order for use of cash collateral dated April 4, 2017, the deadline date was extended from April 5, 2017 to May 9, 2017,

**WHEREAS** the Motion of Rewards Network to appoint a Chapter 11 Trustee was withdrawn without prejudice on March 8, 2017,

**WHEREAS** the parties wish to extend the deadline dates of May 9, 2017 to on or before June 15, 2017 and continue paying and receiving the same adequate protection payments provided for in the Interim Order, it is

***IT IS STIPULATED BY AND BETWEEN*** the Debtor, Rewards Network, Philip Lajaunie and Le Boucherie Inc., and American Express Bank, FSB as follows, (a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Docket. No. 36] (the "Interim Order"), for the use of cash collateral and grant of liens by the above Debtor in the above case is extended from May 9, 2017 to on or before June 15, 2017 and the parties shall continue to perform their respective obligations stated thereunder and (b) in the Illinois Action all acts, filings or deadlines to be undertaken on or before June 15, 2017 are deemed to have been

3

taken on November 11, 2016 and that the statements within this Stipulation and Order do not

constitute an appearance in, or consent to, the Illinois Action by the Defendants in the Illinois

Action.

**15 JOHN CORP.,**
**a/k/a LES HALLES,**
**a/k/a FIRST ADMIN INC.**
Debtor-In-Possession

By:      /s/ Leo Fox, Esq.
Leo Fox, Esq.  (LF-1947)
Attorney for Debtor
630 Third Avenue
New York, New York 10017
(212) 867-959

Dated: May 8, 2017

**REWARDS NETWORK**
**ESTABLISHMENT SERVICES INC.**

By:      /s/ Isaac M. Gabriel, Esq.
Isaac M. Gabriel, Esq.
Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
(602) 230-4622

Dated: May 8, 2017

**AMERICAN EXPRESS BANK, FSB as to**
**extension of the use of cash collateral and**
**protections thereunder**

By:      /s/ Crystal Jones Oswald, Esq.
Crystal Jones Oswald, Esq.
Becket & Lee LLP
Agents/Attorneys for American
Express Bank, FSB
16 General Warren Boulevard
P.O. Box 3001
Malvern, Pennsylvania 19355
Licensed in Pennsylvania
(610) 644-7800

Dated: May 8, 2017

**PHILLIP LAJAUNIE**

By:      /s/ Phillip Lajaunie

**LE BOUCHERIE, INC.**

By:      /s/ Phillip Lajaunie
Phillip Lajaunie
President

Case 1:16-cv-09953 Document #: 99-1 Filed: 10/18/18 Page 58 of 174 PageID #:963

4

Dated: May 8, 2017                                      Dated:  May 8, 2017


SO ORDERED:
Dated: May 10, 2017                    /s/ **Michael E. Wiles**
                                       HONORABLE MICHAEL E. WILES
                                       UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

IN RE:                                                                                                Case No.: 16-12453 (MEW)
                                                                                                          Chapter 11 Reorganization

15 JOHN CORP.,
a/k/a LES HALLES,
a/k/a FIRST ADMIN INC.,

                                                       Debtor.
-------------------------------------------------------------X

## STIPULATION AND ORDER EXTENDING
## USE OF CASH COLLATERAL,
## TO AND TOLLING THE ILLINOIS ACTION  TO ON OR BEFORE JUNE 15, 2017

*WHEREAS* pursuant to Stipulation and Order dated December 16 2016 (Docket No. 49),
(a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Dkt. No. 36]
(the "Interim Order"), for the use of cash collateral by the above Debtor in the above case was
extended from November 16, 2016 to January 17, 2017, (b) the return date of the Motion of
Rewards Network Establishment Services Inc. ("Rewards Network") to Appoint a Chapter 11
Trustee (Docket No. 17) was adjourned from November 16, 2016 to January 17, 2017, (c) in the
action commenced on October 24, 2016 in the United States District Court for the Northern District
of Illinois entitled *Rewards Network vs. Philip Lajaunie and La Boucherie Inc.* under Index No.
16-CV-09552 (the "Illinois Action"), the parties agreed to a stand-still therein until no earlier than
January 16, 2017,

*WHEREAS* pursuant to Stipulation and Order for use of cash collateral dated January 13,
2017 the deadline dates were extended from extended from January 16, 2017 to February 15, 2017,

*WHEREAS* pursuant to Stipulation and Order for use of cash collateral dated February 15,
2017, the deadline dates were extended from February 15, 2017 to March 8, 2017,

2

**WHEREAS** pursuant to Stipulation and Order for use of cash collateral dated March 8, 2017, the deadline date was extended from March 8, 2017 to April 5, 2017,

**WHEREAS** pursuant to Stipulation and Order for use of cash collateral dated April 4, 2017, the deadline date was extended from April 5, 2017 to May 9, 2017,

**WHEREAS** pursuant to Stipulation and Order for use of cash collateral dated May 8, 2017, the deadline dates was extended from May 9, 2017 to June 15, 2017,

**WHEREAS** the Motion of Rewards Network to appoint a Chapter 11 Trustee was withdrawn without prejudice on March 8, 2017,

**WHEREAS** the parties wish to extend the deadline dates of June 15, 2017 to on or before June 21, 2017 and continue paying and receiving the same adequate protection payments provided for in the Interim Order, it is

***IT IS STIPULATED BY AND BETWEEN*** the Debtor, Rewards Network, Philip Lajaunie and Le Boucherie Inc., and American Express Bank, FSB as follows, (a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Docket. No. 36] (the "Interim Order"), for the use of cash collateral and grant of liens by the above Debtor in the above case is extended from June 15, 2017 to on or before June 21, 2017 and the parties shall continue to perform their respective obligations stated thereunder and (b) in the Illinois Action all acts, filings or deadlines to be undertaken on or before June 21, 2017 are deemed to have been taken on November 11, 2016 and that the statements within this Stipulation and Order do not constitute an appearance in, or consent to, the Illinois Action by the Defendants in the Illinois Action.

3

**15 JOHN CORP.,**
**a/k/a LES HALLES,**
**a/k/a FIRST ADMIN INC.**
Debtor-In-Possession

By:      */s/ Leo Fox*
Leo Fox, Esq.  (LF-1947)
Attorney for Debtor
630 Third Avenue
New York, New York 10017
(212) 867-959

Dated: June 15, 2017

**REWARDS NETWORK**
**ESTABLISHMENT SERVICES INC.**

By:      */s/ Isaac M. Gabriel*
Isaac M. Gabriel, Esq.
Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
(602) 230-4622

Dated: June 15, 2017

**AMERICAN EXPRESS BANK, FSB as to**
**extension of the use of cash collateral and**
**protections thereunder**

By:      */s/ Crystal Jones Oswald*
Crystal Jones Oswald, Esq.
Becket & Lee LLP
Agents/Attorneys for American
Express Bank, FSB
16 General Warren Boulevard
P.O. Box 3001
Malvern, Pennsylvania 19355
Licensed in Pennsylvania
(610) 644-7800

Dated: June 15, 2017

**PHILIPPE LAJAUNIE**

By:      */s/ Philippe Lajaunie*

Dated: June 15, 2017

**LE BOUCHERIE, INC.**

By:      */s/ Philippe Lajaunie*
Philippe Lajaunie
President

Dated:  June 15, 2017

4

SO ORDERED:

Dated: June 16, 2017                    **s/Michael E. Wiles**
                                        HONORABLE MICHAEL E. WILES
                                        UNITED STATES BANKRUPTCY JUDGE

Case 1:16-cv-09852    Document #: 89-7    Filed: 10/18/17    Page 63 of 174    PageID #:968

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|   |   |   |
|---|---|---|
| | : | |
| IN RE: | : | Chapter 11 |
| | : | |
| 15 JOHN CORP, | : | Case No.: 16-12453 (MEW) |
| | : | |
| Debtor. | : | |
| | : | |

_____

**ORDER GRANTING STIPULATION EXTENDING USE OF CASH COLLATERAL TO
AND TOLLING THE ILLINOIS ACTION TO ON OR BEFORE SEPTEMBER 6, 2017**

      Debtor 15 John Corp. presented a Stipulation And Order Extending Use Of Cash

Collateral To And Tolling The Illinois Action To On Or Before September 6, 2017 (the

"**Stipulation**") to this Court on July 26, 2017; however, such Stipulation was never filed on the

Court's electronic docket.  The Court had expressed its willingness to so-order the Stipulation,

but the Court had asked counsel to address certain typographical errors.  The Court never

received an edited version of the Stipulation.  In light of the foregoing, the Stipulation attached

hereto as Exhibit A is **SO ORDERED**, subject to modification of the title of the Stipulation to

read: "Stipulation And Order Extending Use Of Cash Collateral To and Tolling The Illinois

Action To On Or Before September 6, 2017."

Dated: August 8, 2017
     New York, NY

                          **s/Michael E. Wiles**
                          Honorable Michael E. Wiles
                          United States Bankruptcy Judge

Case 1:16-cv-09052 Document #: 89-17 Filed: 10/16/18 Page 64 of 174 PageID #:969

## Exhibit A

LEO FOX, ESQ. (LF-1947)
630 THIRD AVENUE, 18TH FLOOR
NEW YORK, NEW YORK 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IN RE:                                    Case No.: 16-12453 (MEW)
                                          Chapter 11 Reorganization
15 JOHN CORP.,
a/k/a LES HALLES,
a/k/a FIRST ADMIN INC.,

                          Debtor.
------------------------------------------------------------X

## STIPULATION AND ORDER EXTENDING
## USE OF CASH COLLATERAL,
## TO AND TOLLING THE ILLINOIS ACTION TO ON OR BEFORE JUNE 15, 2017

   **WHEREAS** pursuant to Stipulation and Order dated December 16 2016 (Docket No. 49),

(a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Dkt. No. 36]

(the "Interim Order"), for the use of cash collateral by the above Debtor in the above case was

extended from November 16, 2016 to January 17, 2017, (b) the return date of the Motion of

Rewards Network Establishment Services Inc. ("Rewards Network") to Appoint a Chapter 11

Trustee (Docket No. 17) was adjourned from November 16, 2016 to January 17, 2017, (c) in the

action commenced on October 24, 2016 in the United States District Court for the Northern

District of Illinois entitled *Rewards Network vs. Philip Lajaunie and La Boucherie Inc.* under

Index No. 16-CV-09552 (the "Illinois Action"), the parties agreed to a stand-still therein until no

earlier than January 16, 2017,

   **WHEREAS** pursuant to Stipulation and Order for use of cash collateral dated January 13,

2017 the deadline dates were extended from extended from January 16, 2017 to February 15,

2017,

*WHEREAS* pursuant to Stipulation and Order for use of cash collateral dated February 15, 2017, the deadline dates were extended from February 15, 2017 to March 8, 2017,

*WHEREAS* pursuant to Stipulation and Order for use of cash collateral dated March 8, 2017, the deadline date was extended from March 8, 2017 to April 5, 2017,

*WHEREAS* pursuant to Stipulation and Order for use of cash collateral dated April 4, 2017, the deadline date was extended from April 5, 2017 to May 9, 2017,

*WHEREAS* pursuant to Stipulation and Order for use of cash collateral dated May 8, 2017, the deadline dates was extended from May 9, 2017 to June 15, 2017, and thereafter to July 18,2017 and then to July 25,2017

*WHEREAS* the Motion of Rewards Network to appoint a Chapter 11 Trustee was withdrawn without prejudice on March 8, 2017,

*WHEREAS* the parties wish to extend the deadline dates of June 15, 2017 to on or before June 21, 2017 and continue paying and receiving the same adequate protection payments provided for in the Interim Order,

*WHEREAS* the parties wish to extend the deadline dates of July 26, 2017 to on or before September 6, 2017 and continue paying and receiving the same adequate protection payments provided for in the Interim Order, it is

*IT IS STIPULATED BY AND BETWEEN* the Debtor, Rewards Network, Philip Lajaunie and Le Boucherie Inc., and American Express Bank, FSB as follows, (a) the Order Granting Interim Use of Cash Collateral entered on October 18, 2016 [Docket. No. 36] (the "Interim Order"), for the use of cash collateral and grant of liens by the above Debtor in the above case is extended from July 26, 2017 to on or before September 6, 2017 and the parties shall continue to perform their respective obligations stated thereunder and (b) in the Illinois

Action all acts, filings or deadlines to be undertaken on or before September 6, 2017 are deemed to have been taken on November 11, 2016 and that the statements within this Stipulation and Order do not constitute an appearance in, or consent to, the Illinois Action by the Defendants in the Illinois Action.

**_15 JOHN CORP.,_**
**_a/k/a LES HALLES,_**
**_a/k/a FIRST ADMIN INC._**
Debtor-In-Possession

By: _____
      Leo Fox, Esq.  (LF-1947)
      Attorney for Debtor
      630 Third Avenue
      New York, New York 10017
      (212) 867-959

Dated: July   , 2017

**_REWARDS NETWORK_**
**_ESTABLISHMENT SERVICES INC._**

By: _____
      Isaac M. Gabriel, Esq.
      Quarles & Brady LLP
      One Renaissance Square
      Two North Central Avenue
      Phoenix, Arizona 85004-2391
      (602) 230-4622

Dated: July   , 2017

**_AMERICAN EXPRESS BANK, FSB as to_**
**_extension of the use of cash collateral and_**
**_protections thereunder_**

By: _____
      Crystal Jones Oswald, Esq.
      Becket & Lee LLP
      Agents/Attorneys for American
      Express Bank, FSB
      16 General Warren Boulevard
      P.O. Box 3001
      Malvern, Pennsylvania 19355
      Licensed in Pennsylvania
      (610) 644-7800

Dated: July 25 2017

**_PHILIPPE LAJAUNIE_**

By: _____

**_LE BOUCHERIE, INC._**

By: _____
      Philippe Lajaunie
      President

Dated: July    , 2017                         Dated:  July    , 2017


SO ORDERED:


Dated: July    , 2017

                                               _____
                                               HONORABLE MICHAEL E. WILES
                                               UNITED STATES BANKRUPTCY JUDGE

**Affidavit of Patricia Bunkley**

**Exhibit F**

<table>
<tr><td colspan="2"><b>Fill in this information to identify the case:</b></td></tr>
<tr><td>Debtor 1</td><td><b>15 JOHN CORP. A/K/A LES HALLES A/K/A FIRST ADMIN. INC.</b></td></tr>
<tr><td>Debtor 2<br/>(Spouse, if filing)</td><td></td></tr>
<tr><td colspan="2">United States Bankruptcy Court for the: <b>Southern District of New York</b> (State)</td></tr>
<tr><td colspan="2">Case number <b>16-12453 (MEW)</b></td></tr>
</table>

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| **Part 1:** | **Identify the Claim** |
| --- | --- |

**1. Who is the current creditor?**

REWARDS NETWORK ESTABLISHMENT SERVICES INC.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

■ No
❑ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Isaac M. Gabriel, Esq.<br/>Name | <br/>Name |
| Quarles & Brady LLP, 2 North Central Avenue<br/>Number        Street | <br/>Number        Street |
| Phoenix          AZ          85004-2391<br/>City          State          ZIP Code | <br/>City          State          ZIP Code |
| Contact phone   602-230-4622 | Contact phone _____ |
| Contact email   isaac.gabriel@quarles.com | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

■ No
❑ Yes. Claim number on court claims registry (if known) _____   Filed on _____
                                                                                       MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

■ No
❑ Yes. Who made the earlier filing? _____

QB\43780890.1

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

| 6. **Do you have any number you use to identify the debtor?** | ■ No<br>☐ Yes.  Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |
|---|---|

| 7. **How much is the claim?** | <u>$664,180.14 plus accruing costs, attorneys' fees, and other amounts pursuant to the terms of the RN Documents and applicable law. See attachment.</u><br><br>**Does this amount include interest or other charges?**<br><br>☐ No<br>■ Yes.  Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|

| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br><u>Receivables Purchase and Marketing Agreement.  See attachment.</u> |
|---|---|

| 9. **Is all or part of the claim secured?** | ☐ No<br>■ Yes.  The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐  Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐  Motor vehicle<br>■  Other. Describe:        <u>All personal property assets of the Debtor.  See attachment.</u><br><br>**Basis for perfection:**        <u>UCC-1 Financing Statement</u><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**                <u>Unknown</u><br><br>    **Amount of the claim that is secured:**        <u>At least $664,180.14, plus accruing costs, attorneys' fees, and other amounts pursuant to the terms of the RN Documents and applicable law.</u><br><br>**Amount of the claim that is unsecured:**    $ <u>Unknown, but to the extent any of the above amount is not secured, such balance would constitute an unsecured claim</u> (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**        $<u>11,336.34</u><br><br>**Annual Interest Rate** (when case was filed) ____%<br>☐  Fixed<br>☐  Variable |
|---|---|

| 10. **Is this claim based on a lease?** | ■ No<br><br>☐ Yes.  **Amount necessary to cure any default as of the date of the petition.**        $_____ |
|---|---|

| 11. **Is this claim subject to a right of setoff?** | ■ No<br><br>☐ Yes.  Identify the property: _____ |
|---|---|

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ■ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

■ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  2 / 13 / 2017
                 MM / DD / YYYY

*Signature*

Print the name of the person who is completing and signing this claim:

| Name | Patricia | | Bunkley |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Director, Retention & Recovery | | |
| Company | Rewards Network Establishment Services Inc. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 2 N. Riverside Plaza, Suite 200 | | |
| | Number          Street | | |
| | Chicago | Illinois | 60606 |
| | City | State | Zip Code |
| Contact phone | (312) 521-6772 | Email | pbunkley@rewardsnetwork.com |

---

## ATTACHMENT TO PROOF OF CLAIM OF REWARDS NETWORK ESTABLISHMENT SERVICES INC.

### 15 JOHN CORP. A/K/A LES HALLES A/K/A FIRST ADMIN. INC. (the "Debtor")
### Case No. 16-12453-(MEW)

On August 25, 2016 (the "**Petition Date**"), the Debtor filed its Bankruptcy Case, thereby initiating the above-captioned proceedings. The Debtor is in the business of owning, managing and operating a restaurant named Les Halles (the "**Restaurant**"). Rewards Network Establishment Services Inc. ("**Rewards Network**") is a company that provides its members with incentives and rewards through loyalty programs it operates when its members dine at participating restaurants. Rewards Network provides marketing and advertising of its participating restaurants to its member base in order to encourage members to dine at the participating restaurants. Rewards Network also contracts with participating restaurants and purchases future accounts receivables generated by Rewards Network's members as well as other customers.

Prior to the Petition Date, on March 10, 2016, the Debtor and Rewards Network entered into the *Rewards Network Receivables Purchase And Marketing Agreement* (as amended from time to time, the "**Agreement**"), whereby Rewards Network paid $600,000 (the "**Purchase Price**") to purchase certain future credit card receivables (the "**Receivables**") and agreed to provide marketing and other services to the Debtor. A true and correct copy of the Agreement (together will all amendments thereto) is attached hereto as **Exhibit "A"**. The Agreement was also entered into by the Debtor's affiliate, La Boucherie, Inc. ("**La Boucherie**"). However, pursuant to several provisions of the Agreement, the Debtor is liable for the entire "Amount Sold" of the Card Receivables. *See, e.g.,* Agreement at p.2 (stating, "If the Merchant consists of more than one legal entity or location, then you agree that each of those entities … will continue to remit to [Rewards Network] the Specified Percentage of Card Receivables from that entity … until we have received the entire Amount Sold."). As such, the Debtor is liable for the full amount of the Indebtedness (defined below).

Pursuant to the terms of the Agreement, upon receipt of the Purchase Price, Rewards Network became the owner of the Receivables, and the Debtor agreed it would have no ownership rights in the Receivables. Agreement at p.2, ¶1 (stating, "Upon your receipt of the Purchase Price, [Rewards Network] will own all right, title and interest in the Card Receivables we bought. You will no longer have any rights in those Card Receivables."). Accordingly, Rewards Network is the rightful owner of the Receivables and the Receivables are not property of the Debtor's bankruptcy estate under Bankruptcy Code § 541.

Pursuant to the Agreement, the Debtor also agreed that Rewards Network would take delivery of the Receivables as they are generated in the ordinary course of the Debtor's business. *Id.* Under the Agreement, the Receivables are tracked by Rewards Network using information provided by Debtor's credit card processor, and then delivered to Rewards Network via an automated clearing house ("**ACH**") debit from the Debtor's designated bank account. *Id.* at ¶¶ 6, 8. The Debtor continues to generate Receivables owned by Rewards Network through the ordinary course, postpetition operations of the Debtor's Restaurant.

To secure the obligations owing under the Agreement, the Debtor granted Rewards Network a blanket lien and security interest in all of the Debtor's personal property, tangible and intangible (collectively, the "**Collateral**"), including:

> all equipment, furniture, artwork, inventory, instruments, investment property, documents, general intangible, deposits, contract rights, filenames, trademarks, patents, supporting obligations, payment intangibles, chattel paper, commercial tort claims, licenses, vendor licenses, permits, franchise agreements, payments due from creditor card and bank card companies or processors, accounts receivable, accounts, leases, deposits accounts, refunds or bonds…

QB\43780890.1

*See* Agreement, p. 6.  Rewards Network lien became effective upon the occurrence of an Event of Non-Performance under the Agreement. Agreement, p. 6, ¶18.

To provide notice of its purchase of the Receivables and to perfect its lien in the Debtor's assets, on March 15, 2016, Rewards Network filed a UCC Financing Statement with the New York Department of State at File No. 201603155303679 (the "**UCC Financing Statement**"). A true and correct copy of the UCC Financing Statement is attached hereto as **Exhibit "B"**.  The Agreement, the UCC Financing Statement, and any and all amendments or modifications to any of the foregoing may be referred to collectively hereinafter as the "**RN Documents.**"

Pursuant to the Agreement, upon an Event of Non-Performance, the Debtor is liable to Rewards Network for the full undelivered Receivables balance.  The Debtor committed multiple Events of Non-Performance prepetition, as set forth in *Rewards Network Establishment Services Inc.'s Motion To Appoint Chapter 11 Trustee* filed on September 19, 2016 [Dkt. 17].  Therefore, as of the Petition Date, Rewards Network held a liquidated secured claim against the Debtor of at least $664,180.14, representing the then outstanding balance of the Receivables plus receivables that were generated but not remitted to Rewards Network, by the Debtor.  Rewards Network also asserts all of its attorney's fees and costs allowable under Bankruptcy Code § 506(b) (collectively, all amounts owed to Rewards Network shall be referred to as the "**Indebtedness**").

Based on the Agreement and the Event(s) of Non-Performance, Rewards Network holds a valid and perfected lien and security interest in all of the Collateral, including all assets and proceeds which are "cash collateral" within the meaning of Bankruptcy Code § 363(a).

On November 2, 2016, the Court entered its *Order Granting Interim Use of Cash Collateral* [Dkt. No. 35] (the "**CC Interim Order**").  Under the CC Interim Order, the Debtor was ordered to continue to turnover the Receivables owned by Rewards Network on a going forward basis by paying 4% of all Master Card and Visa credit card receivables to Rewards Network.  In accordance with the CC Interim Order, upon information and belief, the Debtor has continued to turnover 4% of the Master Card and Visa credit card receivables to Rewards Network, which has reduced the amount of the Indebtedness.  As such, prior to the entry of an order approving a plan of reorganization, Rewards Network will file an amended proof of claim that accounts for any such credit card receivables payments.

The value of the Collateral securing the obligations has not yet been determined.  To the extent the value of the Debtor's interest in the Collateral is less than the total amount of the obligations as determined pursuant to the Agreement and applicable law, Rewards Network asserts an unsecured claim for the remaining amounts. Rewards Network hereby gives notice that it hereby asserts and intends to pursue any unsecured claim against all lawful obligors as an unsecured claim to the full extent allowed by applicable law and to the extent that the value of its Collateral under the Agreement is insufficient to satisfy Rewards Network's claim against the Debtor under the Agreement and which may also be owing to Rewards Network pursuant to applicable law.

Rewards Network reserves any and all rights of setoff or recoupment under the Bankruptcy Code or other applicable law.  Rewards Network does not waive, and hereby expressly reserves its right to assert additional accrued and accruing attorneys' fees, and all other charges that may be allowable under 11 U.S.C. § 506(b). Additionally, Rewards Network does not waive, and hereby expressly reserves, its right to file claims for other or additional amounts, including but not limited to administrative claims that Rewards Network has incurred or will later incur.

# Exhibit "A"



Date of Agreement: 3/10/16

## REWARDS NETWORK RECEIVABLES PURCHASE AND MARKETING AGREEMENT

This Rewards Network Receivables Purchase and Marketing Agreement (the "Agreement") is between Rewards Network Establishment Services Inc., a Delaware corporation ("Rewards Network," "We" and/or "Us"), and each of the legal entities set forth below (collectively, "Merchant" and/or "You").

| La Boucherie Inc. | NY | $300,000 | 384,000 |
|---|---|---|---|
| Legal Name of Merchant | State of Formation | Allocation of Purchase Price (if any) | Allocation of Amount Sold (if any) |

| Les Halles | | 411 Park Avenue South | New York, NY 10016 |
|---|---|---|---|
| DBA (Location Name) | | Location Address (Number, Street) | (City, State, Zip) |

| 15 John Corp | NY | $300,000 | $384,000 |
|---|---|---|---|
| Legal Name of Merchant | State of Formation | Allocation of Purchase Price (if any) | Allocation of Amount Sold (if any) |

| Les Halles Downtown | | 15 John St | New York, NY 10038 |
|---|---|---|---|
| DBA (Location Name) | | Location Address (Number, Street) | (City, State, Zip) |

### Primary Terms

In this Agreement, you are selling to us a percentage of the payments your customers make with credit, debit, and other types of payment cards ("Card Receivables"). You are selling Card Receivables from (check one):

**Premier Restaurant Funding:**

[✓] All of your customers

**Dining Credits:**

[ ] Rewards Network Members only

We agree to buy from you (and you agree to sell to us) the amount of future Card Receivables shown below (the "Amount Sold") in exchange for the "Purchase Price" shown below. In order to deliver to us the Amount Sold, you assign to us the share of your Receivables ("Specified Percentage") shown below, for the customers indicated above, every day from the date we deliver the Purchase Price until we have received the entire Amount Sold.

Purchase Price:  $600,000

Amount Sold:  $768,000

Specified Percentage:  7%

11/15                    Page 1 of 11



We are buying Card Receivables from you, not loaning you money. One advantage to you of selling Card Receivables instead of borrowing money is that there are no minimum payments, payment schedules, or due dates. If your business is slow, you will not have to worry about having to make a loan payment by a due date, since this is not a loan.

We take some risks in this deal, like the possibility of not getting the Card Receivables we bought as quickly as we thought we would, or not getting them at all if you go out of business. However, you are not allowed to engage in "bad acts" that unfairly prevent us from receiving what we paid for. For example, you are not allowed to stop taking payment cards as a form of payment, change your payment card processor without our approval, or close your business and start up another similar business right away. The details on this are below.

We also will provide you with marketing services as part of this Agreement. Rewards Network currently has millions of diners who participate in our dining rewards programs ("Members"). When Members dine at participating restaurants, we provide them with rewards such as cash back or frequent flyer miles. This gives our Members an incentive to dine at participating restaurants, including yours. We promote participating restaurants through various media, including social media, digital advertising, and targeted emails to our Members. In addition to marketing, we also will provide you with Member data, and access to our Comment Management System, allowing you to read and respond to Member reviews. Every review we publish is verified as written by an actual diner at your establishment. The marketing services we provide will continue throughout your program participation and can be terminated upon 30 days' written notice after the Card Receivables we purchased have been reduced to zero.

<u>Detailed Terms and Conditions</u>

## PURCHASE OF RECEIVABLES AND SERVICES

**1. Assignment of Receivables.** Upon your receipt of the Purchase Price, we will own all right, title and interest in the Card Receivables we bought. You will no longer have any rights in those Card Receivables. As long as there is no Event of Non-Performance as set out in Section 12 below, we will take delivery of the Card Receivables as they are generated in the ordinary course of your business, regardless of how long it may take for the Card Receivables to be generated and delivered. We expressly assume the risk that your restaurant(s) may not generate the entire Amount Sold, in which case we will not receive some or all of the Card Receivables we bought.

**2. Multiple Merchants/Locations.** If the Merchant consists of more than one legal entity or location, then you agree that each of those entities and/or locations will continue to remit to us the Specified Percentage of Card Receivables from that entity or location each day until we have received the entire Amount Sold. You will do this regardless of how you chose to allocate the Purchase Price among the entities or locations, and regardless of whether any of the entities or locations went out of business. However, when an entity or location goes out of business, that entity or location will have no obligation to continue to remit Card Receivables or make payments to us unless it breached this Agreement by committing any of the "bad acts" set forth below before going out of business. You acknowledge and agree that: (i) there is a direct and tangible benefit to each entity and location from entering into this Agreement, including from the marketing services described above; (ii) you are entering into this Agreement collectively in order to sell a larger amount of Card Receivables to us than we would buy from the entities or locations separately; (iii) each entity or location will benefit from our payment of the Purchase Price, regardless of how it is allocated (or not allocated) among you; and (iv) the fair saleable value of each of your assets exceeds its liabilities, and each of you is meeting your current liabilities as they mature. If the Merchant has allocated the Purchase Price and Amount Sold among multiple entities or locations comprising the Merchant on page 1 of this Agreement, Merchant is hereby requesting that Rewards Network provide separate account statements to each entity or location comprising the Merchant based on this allocation. Each entity or location comprising the Merchant acknowledges and agrees that (a) Rewards Network is providing separate account statements; and (b) notwithstanding our provision of such account statements or the fact that the Merchant has made an allocation for administrative convenience, each entity or location comprising the Merchant is obligated to continue to remit to us the Specified Percentage of Card Receivables from that entity or location each day until we have received the entire Amount Sold set forth at the bottom of page 1 of this Agreement.

11/15



**REWARDS**
NETWORK.

**3. Payment.** We will pay the Purchase Price to you after we have accepted this Agreement. If the Merchant consists of more than one legal entity or location, we may deliver the Purchase Price to you by delivering the Purchase Price to the first legal entity listed on page 1 of this Agreement (the "Merchant Representative"). Upon our delivery of the Purchase Price to the Merchant Representative, the Merchant shall be deemed to have received the Purchase Price regardless of how the Merchant Representative distributes (or does not distribute) these funds among the entities or locations constituting the Merchant.

**4. Marketing and Other Services.** During your program participation, we will market each of your locations to Members who are enrolled in rewards programs operated by us or managed by us for "Partners" who offer our program to members of their own rewards programs. The marketing that we provide may include email, websites, or other marketing as determined by us. We will provide a reward to Members who have a Qualified Transaction (defined in the next sentence) at your locations identified above (each, a "Participating Location"). A "Qualified Transaction" is any transaction in which a Member uses a credit, debit or other payment card ("Payment Card") registered with us to purchase goods and services at a Participating Location and which meets our requirements to qualify for a Member reward. We will also provide you with operational insight and customer feedback services relating to the Qualified Transaction(s), as we determine, based on information that we receive or gather from your program participation. (All Member marketing provided hereunder, along with all operational insight and customer feedback services, is referred to as the "Marketing Services".)

## MERCHANT PAYMENT PROCESS

**5. Merchant Payment Amount.** After we pay you the Purchase Price, and beginning on a date determined in our sole discretion, you will deliver to us the Specified Percentage of Card Receivables generated by all of your Participating Locations (the "Merchant Payment") each day until you have delivered to us the Amount Sold. On days when banks are not open, the Specified Percentage will be delivered to us on the next banking day. If you have more than one Participating Location, you understand that some Participating Locations may remit more Card Receivables to us than others. If the amounts that result from the Specified Percentage include fractional cents, you authorize us to round the amounts up or down to the nearest penny.

**6. Authorized Processors; Disclosures to American Express; Processor Changes.**

(a) Use of Authorized Processors. You agree to accept Payment Cards for business transactions at all Participating Locations, to use only Payment Card processors authorized by us ("Authorized Processor(s)") to process all of your Payment Card transactions, and to provide us with information for all Payment Card transactions at such locations through the Authorized Processors. You authorize the Authorized Processor(s) and any other entity that provides Payment Card-related services and has access to information on Payment Card transactions at such locations (including a payment card network), to provide us any information we request concerning your Payment Card transactions, including, but not limited to, aggregate Payment Card transactions and transaction amounts, so that we can monitor your compliance with this Agreement and identify Qualified Transactions for the purpose of providing rewards to our Members. During the term of this Agreement, you agree not to use Payment Card processors that are not Authorized Processors, either in addition to or in lieu of Authorized Processors.

(b) American Express Authorization. During the term of this Agreement, you specifically authorize American Express to provide to us, on a daily basis, the following information at your American Express-designated SE number level: (i) % Payment Card spend by Members of the aggregate Payment Card spend at all Participating Locations; and (ii) % of Payment Card transactions by Members of the aggregate number of Payment Card transactions at all Participating Locations. We will treat the foregoing information in accordance with our Merchant Privacy Policy, available at www.rewardsnetwork.com/privacy. You may withdraw the foregoing authorization by exercising your rights as provided in Section 17.

(c) Processor Changes; Effect of Missed Transaction Data on Merchant Payments. You recognize that, if a change from an Authorized Processor is carried out without any advance notice to us, we will lose our ability to collect the Card Receivables through Merchant Payments and reward our Members for Qualified Transactions at your Participating Locations. For this reason, if you change to another Payment Card processor during your program participation, you must give us 15 days advance written notice of any such change. The notice must be directed to clientservices@rewardsnetwork.com. **If you do not give us the required notice, you must pay us a $500 administrative processor change fee.**

**7. Authorization to Initiate Electronic Debits to Bank Account ("Authorization").** You irrevocably authorize us (which includes for the purposes of this authorization, our agents, service providers, successors and assigns) to initiate electronic debit entries via the Automated Clearing House ("ACH") network or similar network to one or more bank accounts owned by you and designated by you or any substitute bank accounts you later specify (individually and collectively, "Bank Account") for any amounts due to us, including Merchant Payments and Substitute Merchant Payments (defined in Section 13(b) below), on or after the dates such amounts are created or come due. If you deliver on a daily basis, you authorize us to initiate a single debit for the combined amounts of different



days' Merchant Payments (e.g., initiate a single debit on Monday for Merchant Payments that were created on Friday, Saturday and Sunday) or to initiate individual debits for such Merchant Payments. You will not allow a Bank Account to be closed or replaced unless you provide us at least 10 days advance written notice and sufficient information and documentation for us to update our records relating to a replacement Bank Account. The notice must be directed to clientservices@rewardsnetwork.com. **If we are unable to withdraw amounts from a Bank Account for any reason, you agree to pay us a $25 returned transaction fee for each such occurrence in addition to all other remedies available to us.** You authorize us to initiate a separate debit to the Bank Account for this fee or to add this fee to a debit for a subsequent Merchant Payment. In the event that any debit is not successful, you authorize us to reinitiate the debit up to two additional times. In the event we make an error in initiating a debit or credit, you authorize us to initiate a credit or debit to correct the error. To the extent that we initiate debits over the ACH network, you agree to be bound by the rules governing the ACH network. You agree that you will not cancel this Authorization or instruct any depository holding Card Receivables we have purchased to reject our debits.

**8. Method of Payment to RN.** You will receive full payment for all Payment Card transactions from your Authorized Processor(s), but an amount equal to the Merchant Payment will be held by you in trust on our behalf and you will remit that amount to us. We may debit the amount of Merchant Payments or Substitute Merchant Payments, as defined below, from the Bank Account at any time.

**9. Collection of Card Receivables through Program Participation.** We will take delivery of Merchant Payments and Substitute Merchant Payments (if applicable) until we receive an amount equal to the Amount Sold. We will transmit statements to you indicating the amount of Merchant Payments due to us for the collection of Card Receivables during the statement period and the balance of undelivered Card Receivables at the end of the statement period after the application of the Merchant Payments. You agree to review each statement promptly after we send it to you and notify us if there is any discrepancy or error. If you do not notify us within thirty (30) days, you agree that the information in our statement is accurate. You agree to respond to reasonable inquiries regarding the current status of your business, and to notify us in writing if you cease operating your business.

**10. Continued Marketing Services and Program Fees Following Collection of Card Receivables.** When the Amount Sold has been fully delivered and the balance of Card Receivables we purchased has been reduced to zero, we will continue to provide our Marketing Services to you until this Agreement is terminated under Section 15. During that period, you agree to perform your obligations and to pay us a "**Program Fee**" for our Marketing Services in the amount of 20.0% ("**Program Fee Percentage**") of each Qualified Transaction.

## REPRESENTATIONS

**11. Representations.** You represent to us that: (a) you are the sole and lawful owner of the Card Receivables and you own the Card Receivables free and clear of any liens, encumbrances, and adverse claims of any other person or entity ("Person"); (b) you have the full right to sell to us the Card Receivables free and clear of any liens encumbrances, and adverse claims of any other Person; (c) you have not entered into any agreements or made any offers to any person or entity to (i) sell, transfer or otherwise encumber the Card Receivables or (ii) sell, transfer or otherwise encumber all, or substantially all, of your assets; (d) the fair market value of your assets exceeds your liabilities; (e) you are meeting your current liabilities as they mature; (f) execution of this Agreement and your participation in our Program does not constitute a breach of your obligations to another Person; (g) you have no reason to believe that your business will cease operations within the next year, and you have not considered or discussed with anyone the possibility of filing a bankruptcy petition; (h) your legal name(s), DBA name(s), location address(es) and state of incorporation or formation are accurately set forth above; (i) all of the information provided on your Application for participation in our Program is true and correct; (j) each Bank Account is used for business purposes and not for personal, family or household purposes and you are an authorized signor on each Bank Account, and (k) you will use the Purchase Price solely for business or commercial purposes, and not for personal/consumer, family, or household purposes. You agree that, in the event that your Participating Location goes out of business or is the subject of a voluntary or involuntary filing for protection under the United States Bankruptcy Code within forty-five (45) days of us delivering the Purchase Price to you, there shall be a rebuttable presumption that your representations in Sections 11(d), (e), (g) and (i) were materially untrue when they were made to us.

## NON-PERFORMANCE

**12. Events of Non-Performance.** You agree not to commit any of the following "bad acts," each of which is an event of non-performance under this Agreement ("Event of Non-Performance"), during the term of this Agreement: (a) you sell, transfer, or grant a security interest in Card Receivables to anyone other than us; (b) you allow any lien or other encumbrance to attach to our interest (or that of our transferee) in your Card Receivables; (c) you sell your business, any of the locations used by your business, or all or substantially all of your assets used by your business or any Participating Location to a third party before delivering to us all of the Card Receivables we purchased under this Agreement; (d) you materially change the operation of your business at any Participating Location (e.g., changes in concept, size, etc.); (e) you stop taking Payment Cards as an accepted method of payment for transactions,



or discourage the use of Payment Cards, at any Participating Location; (f) you change your legal name or jurisdiction of formation without giving us advance notice of the change; (g) we are unable to debit the Bank Account for the full amount of any Merchant Payment or Substitute Merchant Payment, as defined below; (h) you change Payment Card processors without giving us advance notice as provided in Section 6(c); (i) we revoke the authorization of an Authorized Processor and you do not obtain a replacement Authorized Processor within fifteen (15) days after receiving notice from us; (j) you utilize one or more Payment Card processors that is not an Authorized Processor to process any of your Payment Card transactions; and (k) any representation set forth in your Application, in Section 11 above and/or in Section 19 below shall be false or misleading in any material respect; provided, however, that none of the foregoing (except for subpart 12(k)) shall constitute an Event of Non-Performance if it occurred because a Participating Location went out of business in the ordinary course. These Events of Non-Performance are intended only to prevent you from interfering with our bargained-for right to collect the Card Receivables we purchased as they are created in the ordinary course of your business. They do not create any obligation for you to deliver Card Receivables to us if they are simply not generated by your business.

### 13. Obligations Upon an Event of Non-Performance.

(a) Upon any Event of Non-Performance, and except as provided in subpart 13(b) below, we may exercise any and all rights and remedies available to us under applicable law, including without limitation all rights and remedies under this Agreement and the Uniform Commercial Code (UCC). You agree that each Event of Non-Performance has the effect of preventing us from obtaining the Card Receivables we purchased from you, and that the full undelivered Card Receivables balance therefore constitutes a reasonable amount of liquidated damages to which we shall be entitled if any Event of Non-Performance occurs. You further agree that we shall be entitled to recover all unpaid fees and other amounts due to us under this Agreement. All of these amounts are immediately due and payable if an Event of Non-Performance occurs, and you agree that we are authorized to withdraw these amounts from the Bank Account without further notice to you. In the event that a legal proceeding is brought to enforce or obtain a declaration of our rights under this Agreement, you agree to pay all reasonable attorneys' fees, costs, and expenses we incur in any and all such proceedings. All rights and remedies available to us are cumulative and not exclusive of any other remedies available to us in law or equity, or under other sections of this Agreement.

(b) If an Event of Non-Performance under Section 12(h) occurs, and a Participating Location remains open for business, we may elect, at our sole discretion, and without waiving our right to pursue the remedies set forth in subpart 13(a) above, to pursue the remedy set forth in this subpart 13(b). If we do not receive Payment Card transaction information for three (3) or more consecutive days due to a change in Payment Card Processors without giving us advance notice, you authorize us, at our sole discretion, to initiate daily debits from your Bank Account equal to the average amount of the prior successful ten (10) Merchant Payment debits from your Bank Account until such time as we begin receiving Payment Card transaction data from an Authorized Processor or until we elect to proceed with our remedies under subpart 13(a) above. If the number of successful Merchant Payment debits from your Bank Account prior to our first missed Payment Card transaction fee resulting from your change of processors is less than ten, then the daily debits that you authorize us to initiate shall be equal to the average of all such prior successful Merchant Payments. Any debits successfully completed in accordance with the previous sentences will be treated as Merchant Payments and referred to as "Substitute Merchant Payments" under this Agreement. During the period that Substitute Merchant Payments are being made, we will stop our Marketing Services. If we are able to resume Merchant Payments using Payment Card transaction information from an Authorized Processor that you have selected, we will reinstate your program participation, at which time you will resume making Merchant Payments to us and we will resume our Marketing Services as if the Event of Non-Performance had not occurred.

**14. Discontinuation of Marketing Services.** Upon the occurrence of any Event of Non-Performance, we may discontinue providing any Marketing Services to you or on your behalf.

### TERMINATION OF AGREEMENT

**15. Termination.** When the Amount Sold has been fully delivered and the balance of Card Receivables we purchased has been reduced to zero, you may terminate our Marketing Services by sending a written request via electronic mail to clientservices@rewardsnetwork.com. This Agreement will terminate and Rewards Network will have no further obligation to you at the close of your business on the 30th day after the written notice is received.

**16. Survival after Termination.** Notwithstanding the termination of this Agreement, Sections 20, 23, 24, 25 and 26 will survive termination and remain in full force and effect.

### REPURCHASE OF CARD RECEIVABLES

**17. Repurchase of Card Receivables.** If there are Card Receivables sold to us but undelivered, and no Event of Non-Performance under Section 12 has occurred, you have the option to repurchase the undelivered Card Receivables ("Repurchase Option"). You can



repurchase the undelivered Card Receivables by paying to us an amount ("Repurchase Amount") equal to (i) the full undelivered Card Receivables balance, plus (ii) any other fees and other amounts due to us under this Agreement. You must provide at least seven (7) days' prior written notice to us of your intent to exercise your Repurchase Option ("Repurchase Notice") by sending a written request via electronic mail to clientservices@rewardsnetwork.com.

## SECURITY INTEREST PLEDGED IN COLLATERAL

**18. Security Interest and Collateral Pledged.** The security interest granted in this Section 18 will not become effective unless and until you commit a "bad act" as described in Section 12. If you commit a "bad act," the security interest will become effective immediately, without any notice to you and without any further action required. As security for, the prompt, full and timely performance and observance of the obligations and agreements set out in Sections 12 and 13 of this Agreement (the "Obligations"), you hereby grant to us a continuing security interest (the "Security Interest"), which, once it becomes effective, will remain in full force and effect until all of the Obligations have been paid, performed and observed, in the following: All of your personal property and fixtures, tangible and intangible, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (the "Collateral"), including without limitation: all equipment, furniture, artwork, inventory, instruments, investment property, documents, general intangibles, deposits, contract rights, tradenames, trademarks, patents, supporting obligations, payment intangibles, chattel paper, commercial tort claims, licenses, liquor licenses, permits, franchise agreements, payments due from credit card and bank card companies or processors, accounts receivable, accounts, leases, deposit accounts, refunds of bonds, monies due or to become due from the State Liquor Authority and/or State Division of Alcoholic Beverage Control and, to the extent not listed above as original collateral, all products and proceeds of all of the Collateral in whatever form, including, without limitation, all payments under insurance, whether or not we are the loss payee thereof, all proceeds of any governmental taking, and any indemnity, warranty, letter of credit (including the right to draw on such letter of credit), or guaranty payable by reason of any default under, loss of, damage to or otherwise with respect to, any of the foregoing. The Security Interest that you grant us is being given solely for the purpose of ensuring that you do not act to deprive us of our bargained-for ability to collect the Card Receivables as they are generated in the ordinary course of your business, as your business was described to us when we considered your Application to participate in our Program. The Security Interest does not secure repayment of a debt obligation and we have no right to demand payment of the balance of the Amount Sold in the absence of an Event of Non-Performance under Section 12.

**19. Financing Statements, Covenants and Remedies.** You authorize us (or any designee, nominee, transferee or servicer) to file UCC-1 or comparable statements as we deem necessary or appropriate to: (a) provide notice of our purchase of the Card Receivables under this Agreement, noting that the transaction is intended as a sale and not an assignment for security; and (b) perfect the security interest granted by you to us under this Agreement. You agree to promptly furnish upon our request written statements and schedules identifying and describing the Collateral in such detail as we may require. All of the Collateral is and will continue to be located at your place of business for so long as there remain outstanding Obligations unless we consent in writing prior to any removal. You represent/warrant that you are the legal and beneficial owner of the Collateral and have the sole right to grant a security interest therein or other encumbrance; and you will not permit anything to be done that may impair or lessen the value of any of the Collateral or the Security Interest granted herein. You will, at your own expense, maintain insurance covering the Collateral in an amount not less than the full replacement value of such Collateral and against such risks, in such form and with such insurers, as will be satisfactory to us. Upon the occurrence of an Event of Non-Performance, we may pursue any and all rights and remedies we may have under the law including, without limitation, the rights of a secured party under the Uniform Commercial Code. Upon demand, you will pay all costs and expenses and reimburse us for all costs and expenditures, including without limitation attorneys' fees and legal expenses. In connection with enforcing our rights under this Agreement, all our costs and expenses incurred will be fully secured hereby; and you will indemnify and hold us harmless from any and all such costs and expenses. After deducting all reasonable costs and expenses and all other charges (including attorneys' fees) due against the Collateral, any residue of the proceeds of any sale or other disposition will be applied to payment of the Obligations, except as otherwise provided by law or directed by any court of competent jurisdiction thereof. You will be liable for any deficiency in payment of the Obligations, including all reasonable costs and expenses and all other charges (including attorneys' fees) due against the Collateral.



## OTHER TERMS AND CONDITIONS

**20. Indemnification.** You agree to indemnify, defend and hold us and our affiliates harmless from and against all losses and expenses incurred by us or our affiliates in connection with (a) any Event of Non-Performance under the Agreement, and (b) any claim initiated by any third party in connection with any alleged act or failure to act by you.

**21. Intellectual Property and Data Rights.** We grant you no right to use, and you agree not to use, any intellectual property of ours or any third party (including, without limitation, any Partner). You grant permission to us, including our employees, agents, contractors and affiliates, to create ourselves or copy and modify from your or your franchisor's Website visual images, photographs, digital images, drawings, renderings, accompanying written descriptions, or any other materials that capture your, your property, signage, menus, and personnel and any intellectual property embodied therein. You represent and warrant that you have all rights to grant, and hereby grant to us, our Partners, our affiliates, and our third-party service providers and independent contractors a limited, non-exclusive, royalty-free license to publicly use (including but not limited to reproduce, display and distribute) all intellectual property embodied by materials that you provide or that we create or obtain or modify from your or your franchisor's Website (pursuant to the immediately preceding sentence) in connection with our marketing services, including but not limited to all of franchisor's materials, marks and trade dress if you are a franchisee. You grant us the right, subject to all applicable laws, to use and distribute in any manner the information that is created or collected through our program.

**22. Billing Disputes.** You will be responsible for all billing disputes relating to Payment Card transactions.

**23. Limitation on Liability.** We will not be liable for any loss of profits or special, consequential, incidental or punitive damages arising out of or relating to this Agreement to the maximum extent permitted under Illinois law.

**24. Governing Law.** This Agreement is governed by, and any dispute, claim or controversy arising out of or relating to this Agreement shall be resolved in accordance with the laws of the State of Illinois (to the exclusion of its conflict of laws rules).

**25. Arbitration Agreement.** Unless prohibited by federal law, you and we each shall have the option to require any claim or dispute relating in any way to this Agreement or the parties' dealings with one another ("Claim"), except for a Claim concerning the validity, scope or enforceability of this Arbitration Agreement, to be resolved through BINDING INDIVIDUAL ARBITRATION. This Arbitration Agreement involves interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), and not by state law.

In any claim or dispute to be resolved by arbitration, neither you nor we will be able to have a court or jury trial or participate in a class action or class arbitration. Other rights that you and we would have if you or we went to court will not be available or will be more limited in arbitration, including the right to appeal. You and we each understand and agree that by agreeing that either of us can require a claim or dispute to be resolved by individual arbitration, WE ARE EACH WAIVING THE RIGHT TO A COURT OR JURY TRIAL. ANY DISPUTE ONE OF US CHOOSES TO RESOLVE THROUGH ARBITRATION SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS, AND NOT AS A CLASS ACTION, REPRESENTATIVE ACTION, CLASS ARBITRATION OR ANY SIMILAR PROCEEDING. The arbitrator(s) may not consolidate the claims of multiple parties.

Arbitrations shall be administered by JAMS in accordance with its Streamlined Arbitration Rules and Procedures or comparable JAMS rules in effect at the time the arbitration is initiated. You may obtain information about arbitration, arbitration procedures and fees from JAMS by calling (800) 352-5267 or visiting www.jamsadr.com. If JAMS is unable or unwilling to arbitrate a dispute, then the dispute may be referred to any other arbitration organization or arbitrator you and we agree upon in writing or that is appointed pursuant to section 5 of the FAA. The arbitration shall take place in the federal judicial district where you are located. The arbitrator shall be authorized to award any relief that would have been available in court, provided that the arbitrator's authority is limited to you and us alone, except as otherwise specifically stated herein. No arbitration decision will have any preclusive effect as to non-parties. The arbitrator's decision shall be final and binding. The parties agree that this Arbitration Agreement extends to any other parties involved in any Claims, including but not limited to your and our employees, affiliated companies and vendors. This Arbitration Agreement shall take precedence over the rules of the arbitration organization or arbitrator in the event of any conflict.

We will be responsible for paying all arbitration fees other than the amount of filing fees you would have incurred in a state or federal court where you are located, whichever is less. Notwithstanding any other provision herein, you and we may not require arbitration of a Claim filed in a small claims court for Claims within its jurisdiction. In addition, notwithstanding an election to require arbitration of a Claim, you and we each may exercise any lawful rights to seek provisional remedies or self-help, without waiving the right to arbitrate by doing so. Notwithstanding any other provision of this Agreement, if the foregoing class action waiver and prohibition against class arbitration is determined to be invalid or unenforceable, then this



entire Arbitration Agreement shall be void. If any portion of this Arbitration Agreement other than the class action waiver and prohibition against class arbitration is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Arbitration Agreement. This Arbitration Agreement will survive the termination of this Agreement and/or your or our bankruptcy or insolvency (to the extent permitted by applicable law).

YOU HAVE THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT, BUT YOU MUST EXERCISE THIS RIGHT PROMPTLY. If you do not wish to be bound by this arbitration agreement, you must notify us in writing within thirty (30) days after the date you sign this Agreement. You must send your request to: accountservices@rewardsnetwork.com. The request must include your full name, address, account number, and the statement "I reject the Arbitration Agreement contained in my Rewards Network Receivables Purchase and Marketing Agreement." If you exercise the right to reject arbitration, the other terms of this Agreement shall remain in full force and effect as if you had not rejected arbitration.

26. **Contacting You.** You authorize us and our affiliates, agents, representatives, assigns and service providers (collectively, the "Messaging Parties") to contact you using automatic telephone dialing systems, artificial or prerecorded voice message systems, text messaging systems and automated email systems in order to provide you with information about this Agreement and your program participation, including without limitation information about Merchant Payments. You authorize the Messaging Parties to make such contacts using any telephone numbers (including wireless, landline and VOIP numbers) or email addresses you supply to the Messaging Parties in connection with this Agreement, your program participation or any other matter. You understand that anyone with access to your telephone or email account may listen to or read the messages the Messaging Parties leave or send you, and you agree that the Messaging Parties will have no liability for anyone accessing such messages. You further understand that, when you receive a telephone call, text message or email, you may incur a charge from the company that provides you with telecommunications, wireless and/or Internet services, and you agree that the Messaging Parties will have no liability for such charges. You expressly authorize the Messaging Parties to monitor and record your calls with the Messaging Parties. You understand that, at any time, you may withdraw your consent to receive text messages and calls to your cell phone or to receive artificial or prerecorded voice message system calls by calling (800) 422-5155, emailing us at clientservices@rewardsnetwork.com, or writing to us at: Rewards Network, attn: Account Services, 2 N. Riverside Plaza, Suite 200, Chicago, IL 60606. To stop text messages, you can also simply reply "STOP" to any text message the Messaging Parties send you. To stop emails, you can follow the opt-out instructions included at the bottom of the Messaging Parties' emails.

### MISCELLANEOUS

27. **Transfer of Rights and Assignment of Agreement.** We may sell, pledge, assign or otherwise transfer (a) any or all of the Card Receivables, (b) the right to receive Merchant Payments or Substitute Merchant Payments, (c) this Agreement, and/or (d) any other rights under this Agreement to any person (each, a "Transferee") without your consent. Any Transferee will be entitled to exercise any and all of our rights and receive all benefits afforded us hereunder, including the collection of the Merchant Payments or Substitute Merchant Payments, the collection of Card Receivables and the collection of any amounts due under Section 13 arising from an Event of Non-Performance. We may delegate any of our duties and engage any service providers to perform any of our obligations or exercise any of our rights under this Agreement. This Agreement and your obligations under this Agreement are not assignable or transferable by you without our express written consent. This Agreement will be binding upon and inure to the benefit of the parties and their respective successors and assigns.

28. **Authority; Further Assurances; Operation of Business.** Each Party represents that it has the full power and authority to enter into this Agreement and to perform its obligations under this Agreement. You and each person whose signature appears on this Agreement represents and warrants that he or she is fully authorized to execute this Agreement on your behalf and that this Agreement has been duly executed and delivered by you and is your legal, valid and binding obligation enforceable against you in accordance with its terms. You will operate your business (i) in accordance with all applicable federal, state and local laws, including without limitation all laws relating to the collection and remittance of taxes to applicable taxing authorities, and all labor and employment laws, including those relating to withholding of taxes and payment of gratuities, and (ii) in a manner that is not reasonably likely to adversely impact our relationship with our Members and Partners.

29. **Privacy Policy.** You agree to our merchant privacy policy, which is available at www.rewardsnetwork.com/privacy, as updated by us from time to time.

30. **Notices.** All notices will be in writing and will be deemed given (i) to you when sent to your address, email address or fax number shown in our records, and (ii) to us when sent via electronic mail to: clientservices@rewardsnetwork.com.

31. **Entire Agreement; Amendments.** This Agreement contains the entire understanding between the parties and supersedes all prior agreements in any form between the parties; however, any of your outstanding obligations owing under any prior agreement and/or any



grant by you of any security interest to us under any prior agreement are not extinguished by this Agreement. The terms of this Agreement will not be modified except as agreed to in writing by both parties. You acknowledge and agree that you have executed this Agreement without any reliance on any or statement, warranty or representation by us or our agents or representatives for the consideration expressed herein.

**32. Partial Invalidity and Waiver.** If any provision herein other than the arbitration provision is held to be unenforceable, such provision will be ineffective only to the extent of such unenforceability without invalidating the remainder of the Agreement. Our failure to enforce at any time any part of this Agreement is not a waiver of rights nor in any way affects the validity of this Agreement.

**33. Third-Party Beneficiary; No Agent.** Except as otherwise specifically stated herein, nothing in this Agreement will operate to confer benefits on entities other than you, us, or our respective successors or assigns; except that American Express is the intended third party beneficiary with respect to the "Authorized Processors; Disclosures to American Express; Processor Changes" section of this Agreement and reserves all rights to assert any and all claims in connection with such section, as if it were a party to this Agreement. The parties hereby expressly agree that we are not your fiduciary or partner.

**34. Non-Disclosure Obligations.** You agree that you will not disclose the terms of this Agreement regarding the ratio of the Purchase Price to the Card Receivables, the Specified Percentage, and the Program Fee, except as may be required by applicable law.

**35. Counterparts and Facsimile Signature.** This Agreement need not be signed by us, and the delivery of the Purchase Price to you will constitute our agreement to the Agreement in the State of Illinois. A facsimile or electronic copy of this Agreement signed by you will be considered an original document.

This Agreement will be binding on the parties hereto as of the date we approve this Agreement and make the Payment.

**BY SIGNING THIS AGREEMENT IN THE SPACE PROVIDED BELOW, YOU AGREE TO THE TERMS OF THE AGREEMENT AS OUTLINED ABOVE, INCLUDING THE ARBITRATION CLAUSE IN SECTION 25 AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE AGREEMENT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS AGREEMENT, WE GAVE IT TO YOU AND YOU WERE FREE TO REVIEW IT.**

La Boucherie Inc.
Legal Name of Merchant

By: X _____  Philip Lajaunie  President
Authorized Signature  Print Name  Title

15 John Corp
Legal Name of Merchant

By: X _____  Philip Lajaunie  President
Authorized Signature  Print Name  Title

 **REWARDS**

### PERSONAL LIABILITY AGREEMENT & CONSUMER REPORT AUTHORIZATION

In order to induce Rewards Network Establishment Services Inc. ("Rewards Network") to enter into the foregoing Rewards Network Receivables Purchase and Marketing Agreement (the "Agreement"), each person, whose name and signature appear below (individually, a "Signatory"), states that he/she has read the Agreement identified and dated below and personally agrees to be immediately liable to Rewards Network for any and all sums due by the Merchant under Section 13 of the Agreement occasioned by an Event of Non-Performance under Section 12 of the Agreement. Rewards Network is not required to first seek to collect any sums due from the Merchant(s) selling the Card Receivables. This responsibility is continuing, irrevocable, unconditional and joint and several among each person identified below. Sections 20, 23, 24, 25 (**which is an arbitration provision with a class action waiver**), 26 and 29 of the Agreement are specifically incorporated into this Personal Liability Agreement.

By signing below, each Signatory expressly authorizes Rewards Network (which includes, for the purpose of this paragraph, Rewards Network's successors, assigns, agents and service providers) to obtain consumer reports about the Signatory in connection with the Agreement and any dealings between Rewards Network and Signatory. Any such reports may contain personal information about the Signatory, including, but not limited to, public record information and information about Signatory's credit-worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living, criminal history, citizenship status or fraudulent activity. If adverse action is taken, based in whole or in part on the information contained in the consumer report, Signatory will be provided with the name, address, and telephone number of the consumer reporting agency as well as a summary of Signatory's rights under the Fair Credit Reporting Act. Signatory voluntarily and knowingly authorizes and requests any consumer reporting agency engaged by Rewards Network to furnish the above mentioned information to Rewards Network. Signatory understands that the above-mentioned information may be obtained from a variety of sources, including, but not limited to, public records, vendors credit bureaus and financial institutions. Signatory further authorizes Rewards Network to obtain the above-mentioned reports at any time during which the Agreement is in effect or Card Receivables remain undelivered.

In the event that we hold any Signatory personally liable, Signatory understands that Rewards Network may report information about Signatory's personal liability to consumer reporting agencies and such information may have a negative impact on Signatory's personal credit.

Rewards Network Receivables Purchase and Marketing Agreement dated   3/10/16

Phillip Lajaunie
Printed Name of Signatory                          Printed Name of Signatory


Signature of Signatory                              Signature of Signatory


03/10/16
Date                                               Date



**ADDITIONAL MERCHANT INFORMATION**

LES HAILES

15 JOHN St. NEW YORK, NY 10058
Mailing Address (Number, City, State, Zip)

YOKO IIZUKA
Day-to-Day Contact Name

Alternate Phone/Cell Phone (Not Restaurant Phone)

Email Address



## AMENDMENT TO AGREEMENT

Vendor Payee Amendment

Date of Amendment: Mar. 11, 20 16

Rewards Network Establishment Services Inc. ("We" and/or "Us"), a Delaware corporation, has entered into a Rewards Network Receivables Purchase And Marketing Agreement (each an "Agreement"), as may be applicable, with the legal entity set forth below ("Merchant"), dated as of the date set forth below:

La Boucherie Inc.                                          dba  Les Halles                                ("You")
(Legal Name of Merchant)                                         (Public Name of Merchant)

3/18/16
Effective Date of Agreement

You and we agree, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, to modify and amend the Agreement as follows:

1.  All capitalized terms used but not otherwise defined herein have the meanings given to them in the Agreement.

2.  You desire to purchase goods and/or services ("Products") from and/or pay existing obligations ("Vendor Obligations") to the vendors on Exhibit A attached hereto (each a "Vendor"). You will provide the information on Exhibit A and we have no obligation to verify it.

3.  Payment to Vendor. You hereby irrevocably direct that all or a part of the Purchase Price, in the amount(s) set forth on Exhibit A, be made payable to each Vendor, as your designated payee (each a "Vendor Payment"). We agree to issue the Vendor Payment payable in accordance with Exhibit A and to deliver each Vendor Payment directly to you. We will be deemed to have fully performed our obligation to make any Vendor Payment immediately upon delivery of the Vendor Payment to you. You assume all risk of non-receipt by Vendor and we have no obligation to verify Vendor's receipt of any Vendor Payment. You release us from any and all claims arising from or relating to any alleged delay in delivering or failure to deliver any Vendor Payment.

4.  Third-Party Vendor. You acknowledge that Vendor is an independent third party with no authority to act for or on behalf of us, or bind us in any manner whatsoever.

5.  No Third Party Beneficiary. Payment to a Vendor by us is done strictly as an accommodation to you and does not create or constitute an intent or agreement to create any rights or benefits for Vendor, whether as third party beneficiary or otherwise.

6.  Taxes. You acknowledge that we will not under any circumstances be responsible for payment of any taxes due as a result of any Vendor Payment.

7.  DISCLAIMER OF WARRANTIES. YOU ACKNOWLEDGE THAT WE DID NOT PARTICIPATE IN THE SELECTION, MANUFACTURE OR SUPPLY OF THE PRODUCTS. YOU HAVE SELECTED THE PRODUCTS, AND THE SUPPLIER THEREOF, BASED ON YOUR OWN JUDGMENT. WE MAKE NO REPRESENTATIONS AND DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, CONCERNING THE PRODUCTS, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR FOR MERCHANTABILITY. YOUR SOLE REMEDY FOR BREACH OF ANY WARRANTY OR SERVICE AGREEMENT RELATING TO SUCH PRODUCTS WILL BE AGAINST SUCH VENDOR, THE MANUFACTURER, OR SERVICE PROVIDER, OF SUCH PRODUCTS, AND NOT AGAINST US, AND SUCH BREACH SHALL HAVE NO EFFECT WHATSOEVER ON THE RIGHTS AND OBLIGATIONS OF YOU AND US UNDER THE AGREEMENT OR HEREIN.

8.  WAIVER AND RELEASE. YOU EXPRESSLY AGREE THAT ANY CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES ARISING FROM OR RELATED TO THE PRODUCTS, INCLUDING BUT NOT LIMITED TO, FAILURE TO DELIVER, FAILURE TO PERFORM, FAILURE OF WARRANTY, DELIVERY OF NON-COMPLYING PRODUCTS, DELIVERY OF DEFECTIVE PRODUCTS, OR ANY OTHER CLAIMS OR DEFENSES RELATING TO THE PRODUCTS, WILL BE LIMITED TO AND ASSERTED AGAINST VENDOR ONLY, AND WILL NOT BE ASSERTED AGAINST US. TO THE EXTENT THAT ANY SUCH CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES WOULD CONSTITUTE A DEFENSE TO ANY OBLIGATIONS OWED TO US UNDER THE AGREEMENT, YOU EXPRESSLY WAIVE ALL SUCH DEFENSES, AND RELEASE US FROM ALL LIABILITY FOR ANY SUCH CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES.

9.  Except as specifically amended by the terms of this Amendment, and any other amendments agreed to in writing between the parties, all other terms, conditions, and provisions of the Agreement(s) will remain in full force and effect.

10. The Agreement(s), this Amendment, and any other amendments agreed to in writing between the parties, together constitute the entire agreement between us and you as relates to the contents therein and no further changes, revisions, and modifications may be made unless in writing and duly authorized by us and you.



11. This Amendment will be governed by and construed in accordance with the internal laws (as opposed to the conflict of law principles) of the State of Illinois.

12. You represent and warrant that on the date of this Amendment you are duly organized, validly existing and in good standing under the laws of your state of organization and that you have the requisite power and authority to execute and agree to this Amendment.

13. The signature of any party by electronic copy or facsimile will be considered as an original signature.

14. This Amendment need not be signed by us and will be deemed accepted by us unless we notify you in writing that it is not.

| Authorized Signature | Philip Lajaunie | President |
|---|---|---|
| | Print Name | Title |



EXHIBIT A TO VENDOR
PAYEE AMENDMENT

Legal Name of Merchant:  La Boucherie Inc.

GIBRALTAR                                    $ 00.00 (ZERO PAYDENT)    N/A
Vendor Name                                  Amount Paid to Vendor      Account # / Invoice #

N/A                                          N/A
Vendor Address                               City, State & Zip Code

                                             $
Vendor Name                                  Amount Paid to Vendor      Account # / Invoice #

Vendor Address                               City, State & Zip Code

                                             $
Vendor Name                                  Amount Paid to Vendor      Account # / Invoice #

Vendor Address                               City, State & Zip Code

You represent and affirm that the Vendor information above is provided by you to us, is complete and accurate, and we are under no
obligation to verify this information.

Authorized Signature        Philip Lajaunie          President
                            Print Name                Title

11/15                                 3 of 3



**AMENDMENT TO AGREEMENT**                                    Vendor Payee Amendment

Date of Amendment   Mar. 11  , 20 16

Rewards Network Establishment Services Inc. ("We" and/or "Us"), a Delaware corporation, has entered into a Rewards Network Receivables Purchase And Marketing Agreement (each an "Agreement"), as may be applicable, with the legal entity set forth below ("Merchant"), dated as of the date set forth below:

| 15 John Corp. | dba Les Halles Downtown | ("You") |
|---|---|---|
| (Legal Name of Merchant) | (Public Name of Merchant) | |

3/10/16
**Effective Date of Agreement**

You and we agree, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, to modify and amend the Agreement as follows:

1.  All capitalized terms used but not otherwise defined herein have the meanings given to them in the Agreement.

2.  You desire to purchase goods and/or services ("Products") from and/or pay existing obligations ("Vendor Obligations") to the vendors on Exhibit A attached hereto (each a "Vendor"). You will provide the information on Exhibit A and we have no obligation to verify it.

3.  Payment to Vendor. You hereby irrevocably direct that all or a part of the Purchase Price, in the amount(s) set forth on Exhibit A, be made payable to each Vendor, as your designated payee (each a "Vendor Payment"). We agree to issue the Vendor Payment payable in accordance with Exhibit A and to deliver each Vendor Payment directly to you. We will be deemed to have fully performed our obligation to make any Vendor Payment immediately upon delivery of the Vendor Payment to you. You assume all risk of non-receipt by Vendor and we have no obligation to verify Vendor's receipt of any Vendor Payment. You release us from any and all claims arising from or relating to any alleged delay in delivering or failure to deliver any Vendor Payment.

4.  Third-Party Vendor. You acknowledge that Vendor is an independent third party with no authority to act for or on behalf of us, or bind us in any manner whatsoever.

5.  No Third Party Beneficiary. Payment to a Vendor by us is done strictly as an accommodation to you and does not create or constitute an intent or agreement to create any rights or benefits for Vendor, whether as third party beneficiary or otherwise.

6.  Taxes. You acknowledge that we will not under any circumstances be responsible for payment of any taxes due as a result of any Vendor Payment.

7.  DISCLAIMER OF WARRANTIES. YOU ACKNOWLEDGE THAT WE DID NOT PARTICIPATE IN THE SELECTION, MANUFACTURE OR SUPPLY OF THE PRODUCTS. YOU HAVE SELECTED THE PRODUCTS, AND THE SUPPLIER THEREOF, BASED ON YOUR OWN JUDGMENT. WE MAKE NO REPRESENTATIONS AND DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, CONCERNING THE PRODUCTS, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR FOR MERCHANTABILITY. YOUR SOLE REMEDY FOR BREACH OF ANY WARRANTY OR SERVICE AGREEMENT RELATING TO SUCH PRODUCTS WILL BE AGAINST VENDOR, THE MANUFACTURER, OR SERVICE PROVIDER, OF SUCH PRODUCTS, AND NOT AGAINST US, AND SUCH BREACH SHALL HAVE NO EFFECT WHATSOEVER ON THE RIGHTS AND OBLIGATIONS OF YOU AND US UNDER THE AGREEMENT OR HEREIN.

8.  WAIVER AND RELEASE. YOU EXPRESSLY AGREE THAT ANY CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES ARISING FROM OR RELATED TO THE PRODUCTS, INCLUDING BUT NOT LIMITED TO, FAILURE TO DELIVER, FAILURE TO PERFORM, FAILURE OF WARRANTY, DELIVERY OF NON-COMPLYING PRODUCTS, DELIVERY OF DEFECTIVE PRODUCTS, OR ANY OTHER CLAIMS OR DEFENSES RELATING TO THE PRODUCTS, WILL BE LIMITED TO AND ASSERTED AGAINST VENDOR ONLY, AND WILL NOT BE ASSERTED AGAINST US. TO THE EXTENT THAT ANY SUCH CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES WOULD CONSTITUTE A DEFENSE TO ANY OBLIGATIONS OWED TO US UNDER THE AGREEMENT, YOU EXPRESSLY WAIVE ALL SUCH DEFENSES, AND RELEASE US FROM ALL LIABILITY FOR ANY SUCH CLAIMS, RIGHTS, SETOFFS, DEMANDS, OR DISPUTES.

9.  Except as specifically amended by the terms of this Amendment, and any other amendments agreed to in writing between the parties, all other terms, conditions, and provisions of the Agreement(s) will remain in full force and effect.

10. The Agreement(s), this Amendment, and any other amendments agreed to in writing between the parties, together constitute the entire agreement between us and you as relates to the contents therein and no further changes, revisions, and modifications may be made unless in writing and duly authorized by us and you.

11/15                                    1 of 3


REWARDS
NETWORK.

11. This Amendment will be governed by and construed in accordance with the internal laws (as opposed to the conflict of law principles) of the State of Illinois.

12. You represent and warrant that on the date of this Amendment you are duly organized, validly existing and in good standing under the laws of your state of organization and that you have the requisite power and authority to execute and agree to this Amendment.

13. The signature of any party by electronic copy or facsimile will be considered as an original signature.

14. This Amendment need not be signed by us and will be deemed accepted by us unless we notify you in writing that it is not.

| | | |
|---|---|---|
| Authorized Signature | Philip Lajaunie | President |
| | Print Name | Title |


**REWARDS**
NETWORK.

EXHIBIT A TO VENDOR
PAYEE AMENDMENT

Legal Name of Merchant: 15 John Corp.

$72,779.00    ACCT#    WIRE ACCT.

GIBRALTAR CAPITAL ADVANCE LLC    $~~161,383~~    ABA#

| GIBRALTAR CAPITAL ADVANCE LLC | $~~161,383~~ | ABA# |
|---|---|---|
| Vendor Name | Amount Paid to Vendor | Account # / Invoice # |

400 SKOKIE BLVD. #375    NORTHBROOK, IL. 60062

| 400 SKOKIE BLVD. #375 | NORTHBROOK, IL. 60062 | |
|---|---|---|
| Vendor Address | City, State & Zip Code | |

GIBRALTAR CAPITAL ADVANCE    $ 88,604.00

| GIBRALTAR CAPITAL ADVANCE | $ 88,604.00 | |
|---|---|---|
| Vendor Name | Amount Paid to Vendor | Account # / Invoice # |

400 SKOKIE BLVD #375    NORTHBROOK IL 60062

| 400 SKOKIE BLVD #375 | NORTHBROOK IL 60062 | |
|---|---|---|
| Vendor Address | City, State & Zip Code | |

| | $ | |
|---|---|---|
| Vendor Name | Amount Paid to Vendor | Account # / Invoice # |

| | | |
|---|---|---|
| Vendor Address | City, State & Zip Code | |

You represent and affirm that the Vendor information above is provided by you to us, is complete and accurate, and we are under no
obligation to verify this information.

| Authorized Signature | Philip Lajaunie | President |
|---|---|---|
| | Print Name | Title |

# Exhibit "B"

730458        2016 Mar 15 PM05:24

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
CSC 800-858-5294

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
CSC
801 Adlai Stevenson Dr
Springfield, IL 62703, USA
NYfilings@cscinfo.com
(Fax)800-345-6059
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME 15 JOHN CORP. | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 15 JOHN ST | CITY NEW YORK | | STATE NY / POSTAL CODE 10038 | COUNTRY USA |
| 1d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any 2420825 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE / POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS P.O. BOX. 2576 uccsprep@cscinfo.com | CITY Springfield | | STATE IL / POSTAL CODE 62708 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
**See Collateral Attachment**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA 113238579

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Filing Number-201603155303679

**COLLATERAL ATTACHMENT**

1. Sale of Accounts by Debtor/Purchase of Rights to Payments by Secured Party: Secured Party has purchased all accounts, general intangibles, and rights to payment, or a portion/percentage thereof, generated by Debtor on account of credit, debit, and all other card transactions relating to the operation of Debtor's business and sold by Debtor to Secured Party pursuant to any agreements between Debtor and Secured Party (as any of them may be amended, restated, renewed, replaced, or otherwise modified from time to time). The portion of any transaction between Debtor and Secured Party relating to the foregoing is intended as a sale and not as an assignment for security.

2. Collateral Securing Obligations to Secured Party: In order to secure Debtor's performance of its covenants relating the purchase(s) and sale(s) covered by this filing, Debtor has given Secured party an interest in the following, collectively referred to as the "Collateral": All of Debtor's personal property and fixtures, tangible and intangible, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof, including without limitation: all equipment, furniture, artwork, inventory, instruments, investment property, documents, general intangibles, deposits, contract rights, tradenames, trademarks, patents, supporting obligations, payment intangibles, chattel paper, commercial tort claims, licenses, liquor licenses, permits, franchise agreements, payments due from credit card and bank card companies or processors, accounts receivable, accounts, leases, deposit accounts, refunds of bonds, monies due or to become due from the State Liquor Authority and/or State Division of Alcoholic Beverage Control and, to the extent not listed above as original collateral, all products and proceeds of the foregoing collateral in whatever form, including, without limitation, all payments under insurance, whether or not Secured Party is the loss payee thereof, all proceeds of any governmental taking, and any indemnity, warranty, letter of credit (including the right to draw on such letter of credit), or guaranty payable by reason of any default under, loss of, damage to or otherwise with respect to, any of the foregoing.

**Affidavit of Patricia Bunkley**

**Exhibit G**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
IN RE:                                                          Case No. 16-12453 (MEW)
                                                                Chapter 11 Reorganization

15 JOHN CORP.,
a/k/a LES HALLES,
a/k/a FIRST ADMIN INC.,

                                        Debtor.
-------------------------------------------------------------X

### ORDER CONVERTING CHAPTER 11 CASE
### TO A CASE UNDER CHAPTER 7

Upon the Order of this Court dated August 8, 2017 scheduling a Status Conference for

August 16, 2017 (ECF No. 127) and directing the Debtor to show cause why this Chapter 11 case

should not be converted to a case under Chapter 7 of the Bankruptcy Code and upon hearings

before this Court attended by the Debtor, by its attorney, Leo Fox, Esq., and Phillipe Lajaunie, the

Debtor's President, on August 29, 2017, October 10, 2017 and November 6, 2017, for the reasons

stated on the record at the November 6, 2017 hearing (the "Hearing") it is

**ORDERED,** that this case commenced under Chapter 11 of the Bankruptcy Code be and

hereby is converted to a case under Chapter 7 pursuant to 11 U.S.C. § 1112(b)(4); and it is further

**ORDERED**, that the Debtor shall cooperate with the Chapter 7 trustee to assist the trustee

in learning the Debtor's current financial condition and shall, pursuant to Rule 1019(5) of the

Federal Rules of Bankruptcy Procedure, file (i) a schedule of unpaid debts incurred after the

commencement of the Chapter 11 case within 14 days of the date of this Order and (ii) a final

report within 30 days of the date of this Order.

Dated:   New York, New York
         November 6, 2017


                              **s/Michael E. Wiles**
                              Honorable Michael E. Wiles
                              United States Bankruptcy Judge

**Affidavit of Patricia Bunkley**

**Exhibit H**

Case 1:16-cv-09852 Document #: 89-1 Filed: 10/19/18 Page 100 of 174 PageID #:1005
16−12453−mew    Doc 100    Filed 01/19/18    Entered 01/19/18 14:40:06    Order of Final
Decree    Pg 1 of 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**One Bowling Green**
**New York, NY 10004−1408**

---

IN RE: 15 John Corp.                     CASE NO.: 16−12453−mew

  aka   Les Halles
  aka   First Admin. Inc.

Social Security/Taxpayer ID/Employer ID/Other Nos.:     CHAPTER:  7
13−4082234

---

# ORDER OF FINAL DECREE

The estate of the above named debtor has been fully administered.

IT IS ORDERED THAT:

Albert Togut is discharged as trustee of the estate and the chapter 7 case of the above named debtor(s) is closed.

Dated: January 19, 2018

                        Michael E. Wiles, Bankruptcy Judge

Case 1:16-cv-09953 Document #: 89-1 Filed: 10/19/18 Page 101 of 174 PageID #:1006
# Notice Recipients

District/Off: 0208−1                    User: mariarod                    Date Created: 1/19/2018

Case: 16−12453−mew                    Form ID: 149                    Total: 5

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | United States Trustee | USTPRegion02.NYECF@USDOJ.GOV |
| tr | Albert Togut | alcourt@teamtogut.com |
| aty | Leo Fox | leofox1947@aol.com |
| aty | Neil Matthew Berger | neilberger@teamtogut.com |

TOTAL: 4

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | |
|---|---|---|---|
| db | 15 John Corp. | 15 John Street | New York, NY 10038 |

TOTAL: 1

**Affidavit of Patricia Bunkley**

**Exhibit I**

Case: 1:16-cv-09957 Document #: 33-142 Filed: 10/19/18 Page 103 of 174 PageID #:1688    CONTROL PAGE    1

Rewards Network Establishment Services Inc
2 North Riverside Plaza, Suite 200
Chicago, IL 60606


W/O LES HALLES                        YOUR ACCOUNT#  :    129627
                                      STATEMENT DATE : 11/06/2016
15 JOHN ST                            ACCT. EXECUTIVE:
NEW YORK,NY 10038-4007                Craig Thompson
                                      E-mail:
                                      thompsonc@rewardsnetwork.com

**PREMIER RESTAURANT FUNDING**

--------------------------------------------------------------------
Total Purchased Receivables        03/15/16                    $768,000.00
--------------------------------------------------------------------

Purchased Receivables Balance as of 11/01/16        [+]    $648,791.85
Purchased Receivables Redeemed                      [-]          $.00
Purchased Receivables Balance as of 11/06/16        [=]    $648,791.85

Case: 1:16-cv-09957 Document #: 33-14 Filed: 10/19/18 Page 104 of 174 PageID #:689   CONTROL PAGE   2

Rewards Network Establishment Services Inc
2 North Riverside Plaza, Suite 200
Chicago, IL 60606

W/O LES HALLES                          YOUR ACCOUNT#   :    129628
                                        STATEMENT DATE : 11/06/2016
15 JOHN ST                              ACCT. EXECUTIVE:
NEW YORK,NY 10038-4007                  Craig Thompson
                                        E-mail:
                                        thompsonc@rewardsnetwork.com

Total amount past due is: $13,082.84
Your bank has rejected our attempt to collect funds.
Please call us at 800-422-5155 to resolve this issue.


All Customer Credit & Debit Card Transactions:

| Dine Date | Credit&Debit Card Transactions | RN Purchased Receivables |
|---|---|---|
| 10/31 | 3,016.96 | .00 |
| 11/01 | 5,769.28 | .00 |
| 11/02 | 7,597.63 | .00 |
| 11/03 | 6,054.96 | .00 |
| TOTALS | $22,438.83 | $.00 |


If you have any questions about your statements or balance, please phone
Rewards Network Client Services: 1-800-422-5155
or E-MAIL: clientservices@rewardsnetwork.com

Rewards Network Establishment Services Inc
2 North Riverside Plaza, Suite 200
Chicago, IL 60606


W/O LES HALLES                          YOUR ACCOUNT# :    129627

15 JOHN ST                              ACCT. EXECUTIVE: Craig Thompson
NEW YORK,NY 10038-4007                  E-mail:
                                        thompsonc@rewardsnetwork.com


**Balance as of 03/18/16**                              [+]           .00
**Merchant RTR Activity:**
    03/15 Purchase of Credits                           [+]    768,000.00

| STMNT | Merchant        | DDA#       | BANKED FAX#      | BILLED   |     |          |
|-------|-----------------|------------|------------------|----------|-----|----------|
| 03/22 | 129627 LES HAL  | *****4069  | 03/24 000-0000   | 1,629.01 | [-] | 1,629.01 |
| 03/23 | 129627 LES HAL  | *****4069  | 03/25 000-0000   | 941.71   | [-] | 941.71   |
| 03/24 | 129627 LES HAL  | *****4069  | 03/28 000-0000   | 946.24   | [-] | 946.24   |
| 03/25 | 129627 LES HAL  | *****4069  | 03/29 000-0000   | 1,116.57 | [-] | 1,116.57 |
| 03/27 | 129627 LES HAL  | *****4069  | 03/29 000-0000   | 9.10     | [-] | 9.10     |
| 03/25 | 129628 LES HAL  | ******1860 | 03/29 000-0000   | 887.11   | [-] | 887.11   |
| 03/27 | 129628 LES HAL  | ******1860 | 03/29 000-0000   | 2,239.36 | [-] | 2,239.36 |
| 03/29 | 129628 LES HAL  | ******1860 | 03/31 000-0000   | 2,210.97 | [-] | 2,210.97 |
| 03/30 | 129628 LES HAL  | ******1860 | 04/01 000-0000   | 851.65   | [-] | 851.65   |
| 03/31 | 129628 LES HAL  | ******1860 | 04/04 000-0000   | 772.04   | [-] | 772.04   |
| 04/01 | 129628 LES HAL  | ******1860 | 04/05 000-0000   | 1,077.25 | [-] | 1,077.25 |
| 04/03 | 129628 LES HAL  | ******1860 | 04/05 000-0000   | 2,333.09 | [-] | 2,333.09 |
| 04/05 | 129628 LES HAL  | ******1860 | 04/07 000-0000   | 506.53   | [-] | 506.53   |
| 04/06 | 129628 LES HAL  | ******1860 | 04/08 000-0000   | 1,909.63 | [-] | 1,909.63 |
| 04/07 | 129628 LES HAL  | ******1860 | 04/11 000-0000   | 888.18   | [-] | 888.18   |
| 04/08 | 129628 LES HAL  | ******1860 | 04/12 000-0000   | 887.29   | [-] | 887.29   |
| 04/17 | 129628 LES HAL  | ******2466 | 04/19 000-0000   | 819.22   | [-] | 819.22   |
| 04/18 | 129628 LES HAL  | ******2466 | 04/20 000-0000   | 464.80   | [-] | 464.80   |
| 04/19 | 129628 LES HAL  | ******2466 | 04/21 000-0000   | 2,146.85 | [-] | 2,146.85 |
| 04/20 | 129628 LES HAL  | ******2466 | 04/22 000-0000   | 759.33   | [-] | 759.33   |
| 04/21 | 129628 LES HAL  | ******2466 | 04/25 000-0000   | 811.07   | [-] | 811.07   |
| 04/22 | 129628 LES HAL  | ******2466 | 04/26 000-0000   | 1,085.00 | [-] | 1,085.00 |
| 04/24 | 129628 LES HAL  | ******2466 | 04/26 000-0000   | 2,202.88 | [-] | 2,202.88 |
| 04/26 | 129628 LES HAL  | ******2466 | 04/28 000-0000   | 2,089.91 | [-] | 2,089.91 |
| 04/27 | 129628 LES HAL  | ******2466 | 04/29 000-0000   | 870.13   | [-] | 870.13   |
| 04/28 | 129628 LES HAL  | ******2466 | 05/02 000-0000   | 935.93   | [-] | 935.93   |
| 04/29 | 129628 LES HAL  | ******2466 | 05/03 000-0000   | 1,097.17 | [-] | 1,097.17 |
| 05/01 | 129628 LES HAL  | ******2466 | 05/03 000-0000   | 2,190.37 | [-] | 2,190.37 |
| 05/02 | 129628 LES HAL  | ******2466 | 05/04 000-0000   | 1,094.15 | [-] | 1,094.15 |
| 05/04 | 129628 LES HAL  | ******2466 | 05/06 000-0000   | 1,854.75 | [-] | 1,854.75 |
| 05/05 | 129628 LES HAL  | ******2466 | 05/09 000-0000   | 770.80   | [-] | 770.80   |
| 05/06 | 129628 LES HAL  | ******2466 | 05/10 000-0000   | 1,105.64 | [-] | 1,105.64 |
| 05/08 | 129628 LES HAL  | ******2466 | 05/10 000-0000   | 2,824.82 | [-] | 2,824.82 |
| 05/10 | 129628 LES HAL  | ******2466 | 05/12 000-0000   | 2,602.12 | [-] | 2,602.12 |
| 05/11 | 129628 LES HAL  | ******2466 | 05/13 000-0000   | 1,300.15 | [-] | 1,300.15 |
| 05/12 | 129628 LES HAL  | ******2466 | 05/16 000-0000   | 857.91   | [-] | 857.91   |
| 05/13 | 129628 LES HAL  | ******2466 | 05/17 000-0000   | 1,156.96 | [-] | 1,156.96 |
| 05/15 | 129628 LES HAL  | ******2466 | 05/17 000-0000   | 2,044.48 | [-] | 2,044.48 |

*- CONTINUED -*

```
05/17 129628 LES HAL ******2466  05/19 000-0000   2,226.61 [-]    2,226.61
05/18 129628 LES HAL ******2466  05/20 000-0000     646.69 [-]      646.69
05/19 129628 LES HAL ******2466  05/23 000-0000     900.13 [-]      900.13
05/20 129628 LES HAL ******2466  05/24 000-0000   1,225.26 [-]    1,225.26
05/22 129628 LES HAL ******2466  05/24 000-0000   2,377.32 [-]    2,377.32
05/24 129628 LES HAL ******2466  05/26 000-0000   2,153.31 [-]    2,153.31
05/25 129628 LES HAL ******2466  05/27 000-0000     594.25 [-]      594.25
05/26 129628 LES HAL ******2466  05/30 000-0000     713.77 [-]      713.77
05/27 129628 LES HAL ******2466  05/31 000-0000     883.32 [-]      883.32
05/29 129628 LES HAL ******2466  05/31 000-0000   2,004.53 [-]    2,004.53
05/31 129628 LES HAL ******2466  06/02 000-0000   1,795.10 [-]    1,795.10
06/01 129628 LES HAL ******2466  06/03 000-0000     543.31 [-]      543.31
06/02 129628 LES HAL ******2466  06/06 000-0000     460.06 [-]      460.06
06/03 129628 LES HAL ******2466  06/07 000-0000     555.20 [-]      555.20
06/05 129628 LES HAL ******2466  06/07 000-0000   1,791.97 [-]    1,791.97
06/07 129628 LES HAL ******2466  06/09 000-0000   1,810.84 [-]    1,785.84
06/08 129628 LES HAL ******2466  06/10 000-0000     701.41 [-]      701.41
06/09 129628 LES HAL ******2466  06/13 000-0000     868.69 [-]      868.69
06/10 129628 LES HAL ******2466  06/14 000-0000   1,034.42 [-]    1,034.42
06/12 129628 LES HAL ******2466  06/14 000-0000   2,217.06 [-]    2,217.06
06/14 129628 LES HAL ******2466  06/16 000-0000   1,726.39 [-]    1,726.39
06/15 129628 LES HAL ******2466  06/17 000-0000     525.12 [-]      500.12
06/16 129628 LES HAL ******2466  06/20 000-0000     831.42 [-]      831.42
06/17 129628 LES HAL ******2466  06/21 000-0000   1,026.42 [-]    1,026.42
06/19 129628 LES HAL ******2466  06/21 000-0000   2,119.45 [-]    2,119.45
06/21 129628 LES HAL ******2466  06/23 000-0000   1,449.38 [-]    1,424.38
06/22 129628 LES HAL ******2466  06/24 000-0000     655.08 [-]      630.08
06/23 129628 LES HAL ******2466  06/27 000-0000     945.44 [-]      945.44
06/24 129628 LES HAL ******2466  06/28 000-0000     647.57 [-]      647.57
06/26 129628 LES HAL ******2466  06/28 000-0000   1,776.95 [-]    1,776.95
06/28 129628 LES HAL ******2466  06/30 000-0000   1,456.91 [-]    1,456.91
06/29 129628 LES HAL ******2466  07/01 000-0000     997.27 [-]      972.27
06/30 129628 LES HAL ******2466  07/04 000-0000     872.97 [-]      872.97
07/15 129628 LES HAL ******0922  07/19 000-0000       7.78 [-]        7.78
07/17 129628 LES HAL ******0922  07/19 000-0000   1,492.59 [-]    1,492.59
07/19 129628 LES HAL ******0922  07/21 000-0000   1,269.50 [-]    1,269.50
07/20 129628 LES HAL ******0922  07/22 000-0000     537.26 [-]      537.26
07/21 129628 LES HAL ******0922  07/25 000-0000     586.10 [-]      586.10
07/22 129628 LES HAL ******0922  07/26 000-0000     592.02 [-]      567.02
07/24 129628 LES HAL ******0922  07/26 000-0000   2,069.70 [-]    2,069.70
07/26 129628 LES HAL ******0922  07/28 000-0000   1,440.55 [-]    1,415.55
07/27 129628 LES HAL ******0922  07/29 000-0000     524.81 [-]      524.81
07/28 129628 LES HAL ******0922  08/01 000-0000     657.80 [-]      657.80
07/29 129628 LES HAL ******0922  08/02 000-0000     880.68 [-]      830.68
07/31 129628 LES HAL ******0922  08/02 000-0000     873.64 [-]      873.64
08/05 129628 LES HAL ******0922  08/09 000-0000     815.04 [-]      815.04
08/07 129628 LES HAL ******0922  08/09 000-0000   1,781.72 [-]    1,781.72
08/09 129628 LES HAL ******0922  08/11 000-0000     819.62 [-]      819.62
08/10 129628 LES HAL ******0922  08/12 000-0000   1,228.14 [-]    1,228.14
08/11 129628 LES HAL ******0922  08/15 000-0000     656.92 [-]      656.92
08/12 129628 LES HAL ******0922  08/16 000-0000     953.08 [-]      928.08
08/14 129628 LES HAL ******0922  08/16 000-0000   2,175.33 [-]    2,175.33
08/16 129628 LES HAL ******0922  08/18 000-0000   1,687.29 [-]    1,662.29
08/17 129628 LES HAL ******0922  08/19 000-0000     416.39 [-]      366.39
                        *- CONTINUED -*
```

YOUR ACCOUNT 16129628 N/Docuaen BALES Filed: 18/19/18 Page 107 of 174 PageID #:1082 PAGE:    3

```
08/18 129628 LES HAL ******0922  08/22 000-0000       650.37 [-]          650.37
08/19 129628 LES HAL ******0922  08/23 000-0000       803.58 [-]          803.58
08/21 129628 LES HAL ******0922  08/23 000-0000     1,787.50 [-]        1,737.50
08/23 129628 LES HAL ******0922  08/25 000-0000     1,412.12 [-]        1,412.12
08/24 129628 LES HAL ******0922  08/26 000-0000       334.38 [-]          334.38
10/27 129628 LES HAL ******0849  10/31 000-0000       382.60 [-]          382.60
10/28 129628 LES HAL ******0849  11/01 000-0000       466.01 [-]          466.01
10/30 129628 LES HAL ******0849  11/01 000-0000       842.63 [-]          842.63
11/01 129628 LES HAL ******0849  11/03 000-0000       614.21 [-]          614.21

----------------------------------------------------------------------
                                 Total:     119,583.15           119,208.15


Ending Balance as of 11/06/16                        [=]        648,791.85
```

Case: 1:16-cv-09952 Document #: 89-14 Filed: 01/01/68 Page 108 of 174 PageID #:1813   CONTROL PAGE   4

| Dined Day | Card | Check Amount$$ | Take Rate% | New/ Rep Take$$ | Net To Merchant$$ | Member City St | Zip |
|-----------|------|---------------|-----------|----------------|-------------------|----------------|-----|
| STATEMENT DATE:03/22/2016 | | | | | | | |
| **Dining Activity** | | | | | | | |
| 03/19 Sat | | 22,726.35 | 7.0 | 1,590.84 | 21,135.51 | TOTAL,CC | SALES |
| 03/20 Sun | | 545.25 | 7.0 | 38.17 | 507.08 | TOTAL,CC | SALES |
| **Totals** | | 23,271.60 | | 1,629.01* | 21,642.59 | | |
| STATEMENT DATE:03/23/2016 | | | | | | | |
| **Dining Activity** | | | | | | | |
| 03/20 Sun | | 13,453.03 | 7.0 | 941.71 | 12,511.32 | TOTAL,CC | SALES |
| **Totals** | | 13,453.03 | | 941.71* | 12,511.32 | | |
| STATEMENT DATE:03/24/2016 | | | | | | | |
| **Dining Activity** | | | | | | | |
| 03/21 Mon | | 13,517.71 | 7.0 | 946.24 | 12,571.47 | TOTAL,CC | SALES |
| **Totals** | | 13,517.71 | | 946.24* | 12,571.47 | | |
| STATEMENT DATE:03/25/2016 | | | | | | | |
| **Dining Activity** | | | | | | | |
| 03/22 Tue | | 15,951.05 | 7.0 | 1,116.57 | 14,834.48 | TOTAL,CC | SALES |
| **Totals** | | 15,951.05 | | 1,116.57* | 14,834.48 | | |
| STATEMENT DATE:03/27/2016 | | | | | | | |
| **Dining Activity** | | | | | | | |
| 03/23 Wed | | 130.00 | 7.0 | 9.10 | 120.90 | TOTAL,CC | SALES |
| **Totals** | | 130.00 | | 9.10* | 120.90 | | |

Case: 1:16-cv-09951 Document #: 39-14 Filed: 01/01/08 Page 109 of 174 PageID #:1684    CONTROL PAGE    5

```
------------------------------
Merchant    129628 W/O LES HALLES
------------------------------

                   Check  Take  New/                Net To  Member
Dined Day     Card Amount$$ Rate% Rep Take$$   Merchant$$ City St      Zip
STATEMENT DATE:03/25/2016

Dining Activity
03/22 Tue          12,672.99  7.0        887.11   11,785.88 TOTAL,CC      SALES

Totals             12,672.99             887.11*  11,785.88


STATEMENT DATE:03/27/2016

Dining Activity
03/23 Wed          15,788.47  7.0      1,105.19   14,683.28 TOTAL,CC      SALES
03/24 Thu             214.58  7.0         15.02      199.56 TOTAL,CC      SALES
03/24 Thu          15,987.80  7.0      1,119.15   14,868.65 TOTAL,CC      SALES

Totals             31,990.85           2,239.36*  29,751.49


STATEMENT DATE:03/29/2016

Dining Activity
03/25 Fri          17,910.04  7.0      1,253.70   16,656.34 TOTAL,CC      SALES
03/26 Sat          13,367.70  7.0        935.74   12,431.96 TOTAL,CC      SALES
03/27 Sun             307.55  7.0         21.53      286.02 TOTAL,CC      SALES

Totals             31,585.29           2,210.97*  29,374.32


STATEMENT DATE:03/30/2016

Dining Activity
03/27 Sun          12,157.09  7.0        851.00   11,306.09 TOTAL,CC      SALES
03/28 Mon               9.25  7.0           .65        8.60 TOTAL,CC      SALES

Totals             12,166.34             851.65*  11,314.69


                      *- CONTINUED -*
```

STATEMENT DATE:03/31/2016

**Dining Activity**
```
03/28 Mon      10,769.81   7.0     753.89    10,015.92 TOTAL,CC        SALES
03/29 Tue         259.22   7.0      18.15       241.07 TOTAL,CC        SALES

Totals         11,029.03             772.04*   10,256.99
```

STATEMENT DATE:04/01/2016

**Dining Activity**
```
03/29 Tue      15,389.22   7.0   1,077.25    14,311.97 TOTAL,CC        SALES

Totals         15,389.22           1,077.25*  14,311.97
```

STATEMENT DATE:04/03/2016

**Dining Activity**
```
03/30 Wed      18,488.60   7.0   1,294.20    17,194.40 TOTAL,CC        SALES
03/31 Thu          34.30   7.0       2.40        31.90 TOTAL,CC        SALES
03/31 Thu      14,558.49   7.0   1,019.09    13,539.40 TOTAL,CC        SALES
04/01 Fri         248.57   7.0      17.40       231.17 TOTAL,CC        SALES

Totals         33,329.96           2,333.09*  30,996.87
```

STATEMENT DATE:04/05/2016

**Dining Activity**
```
04/01 Fri       4,859.97   7.0     340.20     4,519.77 TOTAL,CC        SALES
04/02 Sat       2,376.13   7.0     166.33     2,209.80 TOTAL,CC        SALES

Totals          7,236.10             506.53*   6,729.57
```

STATEMENT DATE:04/06/2016

**Dining Activity**
```
04/01 Fri      10,603.27   7.0     742.23     9,861.04 TOTAL,CC        SALES
04/02 Sat       8,089.40   7.0     566.26     7,523.14 TOTAL,CC        SALES
04/03 Sun       8,587.70   7.0     601.14     7,986.56 TOTAL,CC        SALES

Totals         27,280.37           1,909.63*  25,370.74
```

                        *- CONTINUED -*

STATEMENT DATE:04/07/2016

**Dining Activity**
| 04/04 Mon | 12,688.25 | 7.0 | 888.18 | 11,800.07 | TOTAL,CC | SALES |
|---|---|---|---|---|---|---|
| Totals | 12,688.25 | | 888.18* | 11,800.07 | | |


STATEMENT DATE:04/08/2016

**Dining Activity**
| 04/05 Tue | 12,675.61 | 7.0 | 887.29 | 11,788.32 | TOTAL,CC | SALES |
|---|---|---|---|---|---|---|
| Totals | 12,675.61 | | 887.29* | 11,788.32 | | |


STATEMENT DATE:04/17/2016

**Dining Activity**
| 04/14 Thu | 498.51 | 7.0 | 34.90 | 463.61 | TOTAL,CC | SALES |
|---|---|---|---|---|---|---|
| 04/14 Thu | 10,760.18 | 7.0 | 753.21 | 10,006.97 | TOTAL,CC | SALES |
| 04/15 Fri | 444.45 | 7.0 | 31.11 | 413.34 | TOTAL,CC | SALES |
| Totals | 11,703.14 | | 819.22* | 10,883.92 | | |


STATEMENT DATE:04/18/2016

**Dining Activity**
| 04/14 Thu | 6,640.07 | 7.0 | 464.80 | 6,175.27 | TOTAL,CC | SALES |
|---|---|---|---|---|---|---|
| Totals | 6,640.07 | | 464.80* | 6,175.27 | | |


STATEMENT DATE:04/19/2016

**Dining Activity**
| 04/15 Fri | 18,280.94 | 7.0 | 1,279.67 | 17,001.27 | TOTAL,CC | SALES |
|---|---|---|---|---|---|---|
| 04/16 Sat | 12,229.46 | 7.0 | 856.06 | 11,373.40 | TOTAL,CC | SALES |
| 04/17 Sun | 158.92 | 7.0 | 11.12 | 147.80 | TOTAL,CC | SALES |

*- CONTINUED -*

Case 16-12948   Doc 1833-1   Filed 19/04/18   Page 112 of 174   Control ID #407

```
Totals              30,669.32          2,146.85*    28,522.47


STATEMENT DATE:04/20/2016

Dining Activity
04/17 Sun           10,441.53    7.0      730.91     9,710.62 TOTAL,CC        SALES
04/18 Mon              405.96    7.0       28.42       377.54 TOTAL,CC        SALES
Totals              10,847.49            759.33*    10,088.16


STATEMENT DATE:04/21/2016

Dining Activity
04/18 Mon           11,380.66    7.0      796.65    10,584.01 TOTAL,CC        SALES
04/19 Tue              205.94    7.0       14.42       191.52 TOTAL,CC        SALES
Totals              11,586.60            811.07*    10,775.53


STATEMENT DATE:04/22/2016

Dining Activity
04/19 Tue           15,500.01    7.0    1,085.00    14,415.01 TOTAL,CC        SALES
Totals              15,500.01          1,085.00*    14,415.01


STATEMENT DATE:04/24/2016

Dining Activity
04/20 Wed           18,567.48    7.0    1,299.72    17,267.76 TOTAL,CC        SALES
04/21 Thu           12,902.27    7.0      903.16    11,999.11 TOTAL,CC        SALES
Totals              31,469.75          2,202.88*    29,266.87


STATEMENT DATE:04/26/2016

Dining Activity
04/22 Fri           18,500.61    7.0    1,295.04    17,205.57 TOTAL,CC        SALES
04/23 Sat           11,355.33    7.0      794.87    10,560.46 TOTAL,CC        SALES
                              *- CONTINUED -*
```

YOUR ACCOUNT NUMBER Document Page Filed: 1840948 Page 118 of 174 PageID #:4098  PAGE:    9

```
Totals                29,855.94          2,089.91*   27,766.03


    STATEMENT DATE:04/27/2016

    Dining Activity
    04/24 Sun        12,320.39    7.0       862.43    11,457.96 TOTAL,CC        SALES
    04/25 Mon           110.06    7.0         7.70       102.36 TOTAL,CC        SALES
    Totals           12,430.45            870.13*   11,560.32


    STATEMENT DATE:04/28/2016

    Dining Activity
    04/25 Mon        13,370.44    7.0       935.93    12,434.51 TOTAL,CC        SALES
    Totals           13,370.44            935.93*   12,434.51


    STATEMENT DATE:04/29/2016

    Dining Activity
    04/26 Tue        15,673.92    7.0     1,097.17    14,576.75 TOTAL,CC        SALES
    Totals           15,673.92          1,097.17*   14,576.75


    STATEMENT DATE:05/01/2016

    Dining Activity
    04/27 Wed        16,227.90    7.0     1,135.95    15,091.95 TOTAL,CC        SALES
    04/28 Thu            74.24    7.0         5.20        69.04 TOTAL,CC        SALES
    04/28 Thu        14,932.95    7.0     1,045.31    13,887.64 TOTAL,CC        SALES
    04/29 Fri           55.90    7.0         3.91        51.99 TOTAL,CC        SALES
    Totals           31,290.99          2,190.37*   29,100.62


    STATEMENT DATE:05/02/2016

    Dining Activity
                            *- CONTINUED -*
```

YOUR ACCOUNT #1296952 Case 16-10292 Doc 1135-4 Filed: 10/01/18 Page 114 of 174 CONTROL ID #4099 PAGE:  10

| 04/29 Fri | 15,630.76 | 7.0 | 1,094.15 | 14,536.61 TOTAL,CC | SALES |
|-----------|-----------|-----|----------|--------------------|-------|
| Totals | 15,630.76 | | 1,094.15* | 14,536.61 | |

STATEMENT DATE:05/04/2016

**Dining Activity**

| 04/30 Sat | 14,579.43 | 7.0 | 1,020.56 | 13,558.87 TOTAL,CC | SALES |
|-----------|-----------|-----|----------|--------------------|-------|
| 05/01 Sun | 11,917.06 | 7.0 | 834.19 | 11,082.87 TOTAL,CC | SALES |
| Totals | 26,496.49 | | 1,854.75* | 24,641.74 | |

STATEMENT DATE:05/05/2016

**Dining Activity**

| 05/02 Mon | 11,011.48 | 7.0 | 770.80 | 10,240.68 TOTAL,CC | SALES |
|-----------|-----------|-----|--------|--------------------|-------|
| Totals | 11,011.48 | | 770.80* | 10,240.68 | |

STATEMENT DATE:05/06/2016

**Dining Activity**

| 05/03 Tue | 15,451.19 | 7.0 | 1,081.58 | 14,369.61 TOTAL,CC | SALES |
|-----------|-----------|-----|----------|--------------------|-------|
| 05/04 Wed | 343.77 | 7.0 | 24.06 | 319.71 TOTAL,CC | SALES |
| Totals | 15,794.96 | | 1,105.64* | 14,689.32 | |

STATEMENT DATE:05/08/2016

**Dining Activity**

| 05/04 Wed | 21,405.19 | 7.0 | 1,498.36 | 19,906.83 TOTAL,CC | SALES |
|-----------|-----------|-----|----------|--------------------|-------|
| 05/05 Thu | 18,865.42 | 7.0 | 1,320.58 | 17,544.84 TOTAL,CC | SALES |
| 05/06 Fri | 83.96 | 7.0 | 5.88 | 78.08 TOTAL,CC | SALES |
| Totals | 40,354.57 | | 2,824.82* | 37,529.75 | |

STATEMENT DATE:05/10/2016

**Dining Activity**

*- CONTINUED -*

YOUR ACCOUNT 461296995 w/Document RALES Filed: 19/19/18 Page 115 of CONTROL ID #4098 PAGE:   11

```
05/06 Fri       22,598.32    7.0    1,581.88    21,016.44 TOTAL,CC      SALES
05/07 Sat       14,395.10    7.0    1,007.66    13,387.44 TOTAL,CC      SALES
05/08 Sun          179.70    7.0       12.58       167.12 TOTAL,CC      SALES

Totals          37,173.12           2,602.12*   34,571.00
```

STATEMENT DATE:05/11/2016

```
Dining Activity
05/08 Sun       18,573.64    7.0    1,300.15    17,273.49 TOTAL,CC      SALES

Totals          18,573.64           1,300.15*   17,273.49
```

STATEMENT DATE:05/12/2016

```
Dining Activity
05/09 Mon       12,255.87    7.0      857.91    11,397.96 TOTAL,CC      SALES

Totals          12,255.87             857.91*   11,397.96
```

STATEMENT DATE:05/13/2016

```
Dining Activity
05/10 Tue       16,165.78    7.0    1,131.60    15,034.18 TOTAL,CC      SALES
05/11 Wed          362.30    7.0       25.36       336.94 TOTAL,CC      SALES

Totals          16,528.08           1,156.96*   15,371.12
```

STATEMENT DATE:05/15/2016

```
Dining Activity
05/11 Wed       14,833.04    7.0    1,038.31    13,794.73 TOTAL,CC      SALES
05/12 Thu            9.80    7.0         .69         9.11 TOTAL,CC      SALES
05/12 Thu       14,270.86    7.0      998.96    13,271.90 TOTAL,CC      SALES
05/13 Fri           93.11    7.0        6.52        86.59 TOTAL,CC      SALES

Totals          29,206.81           2,044.48*   27,162.33
```

*- CONTINUED -*

STATEMENT DATE:05/17/2016

**Dining Activity**
| 05/13 Fri | 17,878.96 | 7.0 | 1,251.53 | 16,627.43 TOTAL,CC | SALES |
| 05/14 Sat | 13,929.72 | 7.0 | 975.08 | 12,954.64 TOTAL,CC | SALES |
| **Totals** | **31,808.68** | | **2,226.61*** | **29,582.07** | |

STATEMENT DATE:05/18/2016

**Dining Activity**
| 05/15 Sun | 9,238.43 | 7.0 | 646.69 | 8,591.74 TOTAL,CC | SALES |
| **Totals** | **9,238.43** | | **646.69*** | **8,591.74** | |

STATEMENT DATE:05/19/2016

**Dining Activity**
| 05/16 Mon | 12,859.00 | 7.0 | 900.13 | 11,958.87 TOTAL,CC | SALES |
| **Totals** | **12,859.00** | | **900.13*** | **11,958.87** | |

STATEMENT DATE:05/20/2016

**Dining Activity**
| 05/17 Tue | 17,353.53 | 7.0 | 1,214.75 | 16,138.78 TOTAL,CC | SALES |
| 05/18 Wed | 150.21 | 7.0 | 10.51 | 139.70 TOTAL,CC | SALES |
| **Totals** | **17,503.74** | | **1,225.26*** | **16,278.48** | |

STATEMENT DATE:05/22/2016

**Dining Activity**
| 05/18 Wed | 17,490.00 | 7.0 | 1,224.30 | 16,265.70 TOTAL,CC | SALES |
| 05/19 Thu | 16,471.68 | 7.0 | 1,153.02 | 15,318.66 TOTAL,CC | SALES |
| **Totals** | **33,961.68** | | **2,377.32*** | **31,584.36** | |

*- CONTINUED -*

STATEMENT DATE:05/24/2016

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/20 Fri | 18,448.55 | 7.0 | 1,291.40 | 17,157.15 | TOTAL,CC | SALES |
| 05/21 Sat | 12,312.98 | 7.0 | 861.91 | 11,451.07 | TOTAL,CC | SALES |
| **Totals** | 30,761.53 | | 2,153.31* | 28,608.22 | | |

STATEMENT DATE:05/25/2016

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/22 Sun | 8,304.08 | 7.0 | 581.29 | 7,722.79 | TOTAL,CC | SALES |
| 05/23 Mon | 185.15 | 7.0 | 12.96 | 172.19 | TOTAL,CC | SALES |
| **Totals** | 8,489.23 | | 594.25* | 7,894.98 | | |

STATEMENT DATE:05/26/2016

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/23 Mon | 10,196.77 | 7.0 | 713.77 | 9,483.00 | TOTAL,CC | SALES |
| **Totals** | 10,196.77 | | 713.77* | 9,483.00 | | |

STATEMENT DATE:05/27/2016

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/24 Tue | 12,618.92 | 7.0 | 883.32 | 11,735.60 | TOTAL,CC | SALES |
| **Totals** | 12,618.92 | | 883.32* | 11,735.60 | | |

STATEMENT DATE:05/29/2016

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/25 Wed | 14,713.90 | 7.0 | 1,029.97 | 13,683.93 | TOTAL,CC | SALES |
| 05/26 Thu | 13,743.19 | 7.0 | 962.02 | 12,781.17 | TOTAL,CC | SALES |
| 05/27 Fri | 179.16 | 7.0 | 12.54 | 166.62 | TOTAL,CC | SALES |
| **Totals** | 28,636.25 | | 2,004.53* | 26,631.72 | | |

*- CONTINUED -*

YOUR ACCOUNT NUMBER: Case 16-12963 Doc 485-1 Filed 10/04/18 Page 118 of 174 CONTROL ID #1082 PAGE:   14

STATEMENT DATE:05/31/2016

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/27 Fri | 13,625.52 | 7.0 | 953.79 | 12,671.73 | TOTAL,CC | SALES |
| 05/28 Sat | 12,018.68 | 7.0 | 841.31 | 11,177.37 | TOTAL,CC | SALES |
| **Totals** | 25,644.20 | | 1,795.10* | 23,849.10 | | |

STATEMENT DATE:06/01/2016

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/29 Sun | 7,674.37 | 7.0 | 537.21 | 7,137.16 | TOTAL,CC | SALES |
| 05/30 Mon | 87.15 | 7.0 | 6.10 | 81.05 | TOTAL,CC | SALES |
| **Totals** | 7,761.52 | | 543.31* | 7,218.21 | | |

STATEMENT DATE:06/02/2016

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/30 Mon | 6,572.27 | 7.0 | 460.06 | 6,112.21 | TOTAL,CC | SALES |
| **Totals** | 6,572.27 | | 460.06* | 6,112.21 | | |

STATEMENT DATE:06/03/2016

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/31 Tue | 7,931.45 | 7.0 | 555.20 | 7,376.25 | TOTAL,CC | SALES |
| **Totals** | 7,931.45 | | 555.20* | 7,376.25 | | |

STATEMENT DATE:06/05/2016

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/01 Wed | 11,505.68 | 7.0 | 805.40 | 10,700.28 | TOTAL,CC | SALES |
| 06/02 Thu | 14,093.82 | 7.0 | 986.57 | 13,107.25 | TOTAL,CC | SALES |
| **Totals** | 25,599.50 | | 1,791.97* | 23,807.53 | | |

*- CONTINUED -*

YOUR ACCOUNT461296985070008644 Filed: 08/08/18 Page 119 of 174 Page ID #4084 Case 16-09952 Doc 643-1 SALES 15/08/18 CONTROL 40 PAGE: 15

**STATEMENT DATE:06/07/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/03 Fri | 15,506.77 | 7.0 | 1,085.47 | 14,421.30 | TOTAL,CC | SALES |
| 06/04 Sat | 10,005.35 | 7.0 | 700.37 | 9,304.98 | TOTAL,CC | SALES |
| **Totals** | **25,512.12** | | **1,785.84\*** | **23,726.28** | | |

**STATEMENT DATE:06/08/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/05 Sun | 9,960.32 | 7.0 | 697.22 | 9,263.10 | TOTAL,CC | SALES |
| 06/06 Mon | 59.81 | 7.0 | 4.19 | 55.62 | TOTAL,CC | SALES |
| **Totals** | **10,020.13** | | **701.41\*** | **9,318.72** | | |

**STATEMENT DATE:06/09/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/06 Mon | 12,409.90 | 7.0 | 868.69 | 11,541.21 | TOTAL,CC | SALES |
| **Totals** | **12,409.90** | | **868.69\*** | **11,541.21** | | |

**STATEMENT DATE:06/10/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/07 Tue | 14,777.46 | 7.0 | 1,034.42 | 13,743.04 | TOTAL,CC | SALES |
| **Totals** | **14,777.46** | | **1,034.42\*** | **13,743.04** | | |

**STATEMENT DATE:06/12/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/08 Wed | 15,413.39 | 7.0 | 1,078.94 | 14,334.45 | TOTAL,CC | SALES |
| 06/09 Thu | 16,098.01 | 7.0 | 1,126.86 | 14,971.15 | TOTAL,CC | SALES |
| 06/10 Fri | 160.81 | 7.0 | 11.26 | 149.55 | TOTAL,CC | SALES |
| **Totals** | **31,672.21** | | **2,217.06\*** | **29,455.15** | | |

*- CONTINUED -*

Case 16-12953 Document 113-1 Filed 19/19/18 Page 120 of 174 Rec ID #4085

**STATEMENT DATE:06/14/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/10 Fri | 13,372.00 | 7.0 | 936.04 | 12,435.96 | TOTAL,CC | SALES |
| 06/11 Sat | 10,994.64 | 7.0 | 769.62 | 10,225.02 | TOTAL,CC | SALES |
| 06/12 Sun | 296.11 | 7.0 | 20.73 | 275.38 | TOTAL,CC | SALES |
| **Totals** | **24,662.75** | | **1,726.39*** | **22,936.36** | | |

**STATEMENT DATE:06/15/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/12 Sun | 7,144.54 | 7.0 | 500.12 | 6,644.42 | TOTAL,CC | SALES |
| **Totals** | **7,144.54** | | **500.12*** | **6,644.42** | | |

**STATEMENT DATE:06/16/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/13 Mon | 11,877.44 | 7.0 | 831.42 | 11,046.02 | TOTAL,CC | SALES |
| **Totals** | **11,877.44** | | **831.42*** | **11,046.02** | | |

**STATEMENT DATE:06/17/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/14 Tue | 14,663.20 | 7.0 | 1,026.42 | 13,636.78 | TOTAL,CC | SALES |
| **Totals** | **14,663.20** | | **1,026.42*** | **13,636.78** | | |

**STATEMENT DATE:06/19/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/15 Wed | 17,182.25 | 7.0 | 1,202.76 | 15,979.49 | TOTAL,CC | SALES |
| 06/16 Thu | 13,095.50 | 7.0 | 916.69 | 12,178.81 | TOTAL,CC | SALES |
| **Totals** | **30,277.75** | | **2,119.45*** | **28,158.30** | | |

**\*- CONTINUED -\***

YOUR ACCOUNT: CONTROL#  Document 18-1  Filed: 10/04/18  Page 121 of 174  PAGE:    17

**STATEMENT DATE:06/21/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/17 Fri | 10,660.17 | 7.0 | 746.21 | 9,913.96 | TOTAL,CC | SALES |
| 06/18 Sat | 9,520.69 | 7.0 | 666.45 | 8,854.24 | TOTAL,CC | SALES |
| 06/19 Sun | 167.40 | 7.0 | 11.72 | 155.68 | TOTAL,CC | SALES |
| **Totals** | **20,348.26** | | **1,424.38*** | **18,923.88** | | |

**STATEMENT DATE:06/22/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/19 Sun | 9,001.19 | 7.0 | 630.08 | 8,371.11 | TOTAL,CC | SALES |
| **Totals** | **9,001.19** | | **630.08*** | **8,371.11** | | |

**STATEMENT DATE:06/23/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/20 Mon | 8,091.08 | 7.0 | 566.38 | 7,524.70 | TOTAL,CC | SALES |
| 06/21 Tue | 5,415.15 | 7.0 | 379.06 | 5,036.09 | TOTAL,CC | SALES |
| **Totals** | **13,506.23** | | **945.44*** | **12,560.79** | | |

**STATEMENT DATE:06/24/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/21 Tue | 9,218.76 | 7.0 | 645.31 | 8,573.45 | TOTAL,CC | SALES |
| 06/22 Wed | 32.22 | 7.0 | 2.26 | 29.96 | TOTAL,CC | SALES |
| **Totals** | **9,250.98** | | **647.57*** | **8,603.41** | | |

**STATEMENT DATE:06/26/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/22 Wed | 12,734.96 | 7.0 | 891.45 | 11,843.51 | TOTAL,CC | SALES |
| 06/23 Thu | 11,581.36 | 7.0 | 810.70 | 10,770.66 | TOTAL,CC | SALES |
| 06/24 Fri | 1,068.51 | 7.0 | 74.80 | 993.71 | TOTAL,CC | SALES |

*- CONTINUED -*

YOUR ACCOUNT Case 16-2962-N Document 11-21 Filed: 18-07-18 Page 122 of 174 Page ID #4087

| Totals | 25,384.83 | | 1,776.95* | 23,607.88 | | |

**STATEMENT DATE:06/28/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/24 Fri | 10,987.99 | 7.0 | 769.16 | 10,218.83 TOTAL,CC | | SALES |
| 06/25 Sat | 9,825.04 | 7.0 | 687.75 | 9,137.29 TOTAL,CC | | SALES |
| Totals | 20,813.03 | | 1,456.91* | 19,356.12 | | |

**STATEMENT DATE:06/29/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/24 Fri | 2,420.32 | 7.0 | 169.42 | 2,250.90 TOTAL,CC | | SALES |
| 06/26 Sun | 8,091.89 | 7.0 | 566.43 | 7,525.46 TOTAL,CC | | SALES |
| 06/27 Mon | 3,377.49 | 7.0 | 236.42 | 3,141.07 TOTAL,CC | | SALES |
| Totals | 13,889.70 | | 972.27* | 12,917.43 | | |

**STATEMENT DATE:06/30/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 06/27 Mon | 12,471.01 | 7.0 | 872.97 | 11,598.04 TOTAL,CC | | SALES |
| Totals | 12,471.01 | | 872.97* | 11,598.04 | | |

**STATEMENT DATE:07/15/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 07/13 Wed | 111.17 | 7.0 | 7.78 | 103.39 TOTAL,CC | | SALES |
| Totals | 111.17 | | 7.78* | 103.39 | | |

**STATEMENT DATE:07/17/2016**

**Dining Activity**

| | | | | | | |
|---|---|---|---|---|---|---|
| 07/13 Wed | 12,008.46 | 7.0 | 840.59 | 11,167.87 TOTAL,CC | | SALES |
| 07/14 Thu | 9,314.33 | 7.0 | 652.00 | 8,662.33 TOTAL,CC | | SALES |

*- CONTINUED -*

YOUR ACCOUNT#: 12969852  DOCUMENT#: SALES    Filed: 19/07/18 Page 123 of 174 Page ID #: 4089

```
Totals              21,322.79              1,492.59*   19,830.20


STATEMENT DATE:07/19/2016

Dining Activity
07/15 Fri        10,269.29     7.0      718.85     9,550.44 TOTAL,CC      SALES
07/16 Sat         7,737.10     7.0      541.60     7,195.50 TOTAL,CC      SALES
07/17 Sun           129.32     7.0        9.05       120.27 TOTAL,CC      SALES
Totals           18,135.71            1,269.50*   16,866.21


STATEMENT DATE:07/20/2016

Dining Activity
07/17 Sun         7,587.97     7.0      531.16     7,056.81 TOTAL,CC      SALES
07/18 Mon            87.10     7.0        6.10        81.00 TOTAL,CC      SALES
Totals            7,675.07              537.26*    7,137.81


STATEMENT DATE:07/21/2016

Dining Activity
07/18 Mon         8,372.85     7.0      586.10     7,786.75 TOTAL,CC      SALES
Totals            8,372.85              586.10*    7,786.75


STATEMENT DATE:07/22/2016

Dining Activity
07/19 Tue         8,100.27     7.0      567.02     7,533.25 TOTAL,CC      SALES
Totals            8,100.27              567.02*    7,533.25


STATEMENT DATE:07/24/2016

Dining Activity
```

*- CONTINUED -*

```
07/20 Wed         16,611.54      7.0      1,162.81      15,448.73 TOTAL,CC      SALES
07/21 Thu         12,742.48      7.0        891.97      11,850.51 TOTAL,CC      SALES
07/22 Fri            213.14      7.0         14.92         198.22 TOTAL,CC      SALES

Totals            29,567.16               2,069.70*     27,497.46
```

STATEMENT DATE:07/26/2016

Dining Activity
```
07/22 Fri         11,978.49      7.0        838.49      11,140.00 TOTAL,CC      SALES
07/23 Sat          8,243.65      7.0        577.06       7,666.59 TOTAL,CC      SALES

Totals            20,222.14               1,415.55*     18,806.59
```

STATEMENT DATE:07/27/2016

Dining Activity
```
07/24 Sun          7,497.22      7.0        524.81       6,972.41 TOTAL,CC      SALES

Totals             7,497.22                 524.81*      6,972.41
```

STATEMENT DATE:07/28/2016

Dining Activity
```
07/25 Mon          9,397.21      7.0        657.80       8,739.41 TOTAL,CC      SALES

Totals             9,397.21                 657.80*      8,739.41
```

STATEMENT DATE:07/29/2016

Dining Activity
```
07/26 Tue         11,866.88      7.0        830.68      11,036.20 TOTAL,CC      SALES

Totals            11,866.88                 830.68*     11,036.20
```

STATEMENT DATE:07/31/2016

Dining Activity
```
07/27 Wed         12,480.60      7.0        873.64      11,606.96 TOTAL,CC      SALES
                                  *- CONTINUED -*
```

| Totals | 12,480.60 | | 873.64* | 11,606.96 | | |

**STATEMENT DATE: 08/05/2016**

**Dining Activity**

| 08/02 Tue | 11,643.44 | 7.0 | 815.04 | 10,828.40 | TOTAL,CC | SALES |
| Totals | 11,643.44 | | 815.04* | 10,828.40 | | |

**STATEMENT DATE: 08/07/2016**

**Dining Activity**

| 08/03 Wed | 12,485.65 | 7.0 | 874.00 | 11,611.65 | TOTAL,CC | SALES |
| 08/04 Thu | 12,967.39 | 7.0 | 907.72 | 12,059.67 | TOTAL,CC | SALES |
| Totals | 25,453.04 | | 1,781.72* | 23,671.32 | | |

**STATEMENT DATE: 08/09/2016**

**Dining Activity**

| 08/05 Fri | 11,708.85 | 7.0 | 819.62 | 10,889.23 | TOTAL,CC | SALES |
| Totals | 11,708.85 | | 819.62* | 10,889.23 | | |

**STATEMENT DATE: 08/10/2016**

**Dining Activity**

| 08/06 Sat | 9,712.60 | 7.0 | 679.88 | 9,032.72 | TOTAL,CC | SALES |
| 08/07 Sun | 7,832.28 | 7.0 | 548.26 | 7,284.02 | TOTAL,CC | SALES |
| Totals | 17,544.88 | | 1,228.14* | 16,316.74 | | |

**STATEMENT DATE: 08/11/2016**

**Dining Activity**

| 08/08 Mon | 9,384.64 | 7.0 | 656.92 | 8,727.72 | TOTAL,CC | SALES |

*- CONTINUED -*

YOUR ACCOUNT: Case 16-12963-NAME SALES Filed: 10/04/18 Page 126 of 174 PAGE ID #: 4081 PAGE:   22

```
Totals                9,384.64              656.92*    8,727.72


STATEMENT DATE:08/12/2016

Dining Activity
08/09 Tue            13,258.35    7.0        928.08    12,330.27 TOTAL,CC        SALES
Totals               13,258.35              928.08*    12,330.27


STATEMENT DATE:08/14/2016

Dining Activity
08/10 Wed            16,924.76    7.0      1,184.73    15,740.03 TOTAL,CC        SALES
08/11 Thu            14,151.49    7.0        990.60    13,160.89 TOTAL,CC        SALES
Totals               31,076.25            2,175.33*    28,900.92


STATEMENT DATE:08/16/2016

Dining Activity
08/12 Fri            12,690.23    7.0        888.32    11,801.91 TOTAL,CC        SALES
08/13 Sat            11,056.72    7.0        773.97    10,282.75 TOTAL,CC        SALES
Totals               23,746.95            1,662.29*    22,084.66


STATEMENT DATE:08/17/2016

Dining Activity
08/14 Sun             5,234.12    7.0        366.39     4,867.73 TOTAL,CC        SALES
Totals                5,234.12              366.39*     4,867.73


STATEMENT DATE:08/18/2016

Dining Activity
08/15 Mon             9,291.02    7.0        650.37     8,640.65 TOTAL,CC        SALES
Totals                9,291.02              650.37*     8,640.65
                                   *- CONTINUED -*
```

YOUR ACCOUNT Case 16-20952 Document 861-1 Filed: 19-04-18 Page 127 of 174 CONTROL ID #4082 PAGE:   23

STATEMENT DATE:08/19/2016

Dining Activity
08/16 Tue         11,479.65    7.0      803.58     10,676.07 TOTAL,CC        SALES

Totals            11,479.65             803.58*    10,676.07


STATEMENT DATE:08/21/2016

Dining Activity
08/17 Wed         12,502.67    7.0      875.19     11,627.48 TOTAL,CC        SALES
08/18 Thu         12,318.67    7.0      862.31     11,456.36 TOTAL,CC        SALES

Totals            24,821.34           1,737.50*    23,083.84


STATEMENT DATE:08/23/2016

Dining Activity
08/19 Fri         11,363.35    7.0      795.43     10,567.92 TOTAL,CC        SALES
08/20 Sat          8,809.89    7.0      616.69      8,193.20 TOTAL,CC        SALES

Totals            20,173.24           1,412.12*    18,761.12


STATEMENT DATE:08/24/2016

Dining Activity
08/21 Sun          4,776.81    7.0      334.38      4,442.43 TOTAL,CC        SALES

Totals             4,776.81             334.38*     4,442.43


STATEMENT DATE:10/27/2016

Dining Activity
10/24 Mon          5,465.72    7.0      382.60      5,083.12 TOTAL,CC        SALES

Totals             5,465.72             382.60*     5,083.12
                            *- CONTINUED -*

Case 16-12985 Doc 1885 Filed 19/49/18 Page 128 of 174 RoueID #4088

STATEMENT DATE:10/28/2016

**Dining Activity**
| | | | | | | |
|---|---|---|---|---|---|---|
| 10/25 Tue | 6,657.25 | 7.0 | 466.01 | 6,191.24 | TOTAL,CC | SALES |
| **Totals** | **6,657.25** | | **466.01*** | **6,191.24** | | |


STATEMENT DATE:10/30/2016

**Dining Activity**
| | | | | | | |
|---|---|---|---|---|---|---|
| 10/26 Wed | 6,720.58 | 7.0 | 470.44 | 6,250.14 | TOTAL,CC | SALES |
| 10/27 Thu | 5,316.98 | 7.0 | 372.19 | 4,944.79 | TOTAL,CC | SALES |
| **Totals** | **12,037.56** | | **842.63*** | **11,194.93** | | |


STATEMENT DATE:11/01/2016

**Dining Activity**
| | | | | | | |
|---|---|---|---|---|---|---|
| 10/28 Fri | 8,774.39 | 7.0 | 614.21 | 8,160.18 | TOTAL,CC | SALES |
| **Totals** | **8,774.39** | | **614.21*** | **8,160.18** | | |

**Affidavit of Patricia Bunkley**

**Exhibit J**

# Quarles & Brady LLP

One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
Tel. 602.229.5200
Fax 602.229.5690
www.quarles.com

Attorneys at law in:
Chicago, Illinois
Indianapolis, Indiana
Madison and Milwaukee, Wisconsin
ampa, Florida
ttsdale and Tucson, Arizona
DC

## INVOICE SUMMARY

Invoice Number:
Invoice Date:                    1, 2016

Rewards Network              ment Services, Inc.
c/o Alice Geene, Ge          unsel
Rewards Network, Inc.
2 North Riverside Plaza
Suite 200
Chicago, IL 60606

For Professi        Servic s Rendered Through September 30, 2016
Re: 15 John                    oucherie Inc. Secured
Creditor Re
Q & B Matte

| | | |
|---|---|---|
| Current Fees: | $ | 8,267.31 |
| Credit for No Charge Entries: | | (193.03) |
| Current Disbursements: | | 1,996.44 |
| Current Total Due: | $ | 10,070.72 |
| **TOTAL AMOUNT DUE:** | **$** | **10,070.72** |

**INVOICE IS PAYABLE UPON RECEIPT**



One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
Tel. 602.229.5200
Fax 602.229.5690
www.quarles.com

Attorneys at Law in:
Chicago, Illinois
Indianapolis, Indiana
Madison and Milwaukee, Wisconsin
ampa, Florida
ttsdale and Tucson, Arizona
DC

## INVOICE SUMMARY

Invoice Number:
Invoice Date:                    r 17, 2016

Rewards Network            ent Services, Inc.
c/o Alice Geene, Ge        nsel
Rewards Network, Inc.
2 North Riverside Plaza
Suite 200
Chicago, IL 60606

For Professi           hrough October 31, 2016
Re: 15 John             oucherie Inc. Secured
Creditor Re
Q & B Matte

| | | |
|---|---|---|
| Current Fees: | $ | 5,760.87 |
| Credit for No Charge Entries: | | (469.97) |
| Current Disbursements: | | 129.53 |
| Current Total Due: | $ | 5,420.43 |
| **TOTAL AMOUNT DUE:** | **$** | **5,420.43** |

**INVOICE IS PAYABLE UPON RECEIPT**



One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
Tel. 602.229.5200
Fax 602.229.5690
www.quarles.com

Attorneys at law in:
Chicago, Illinois
Indianapolis, Indiana
Madison and Milwaukee, Wisconsin
ampa, Florida
ttsdale and Tucson, Arizona
DC

## INVOICE SUMMARY

Invoice Number:
Invoice Date: _____ r 20, 2016

Rewards Network _____ ent Services, Inc.
c/o Alice Geene, Ge _____ nsel
Rewards Network, Inc.
2 North Riverside Plaza
Suite 200
Chicago, IL 60606

For Professional _____ hrough November 30, 2016
Re: 15 John Corp _____ oucherie Inc. Secured
Creditor Represe _____
Q & B Matter Nu _____

| | | |
|---|---|---|
| Current Fees: | $ | 1,197.48 |
| Current Disbursements: | | 37.00 |
| Current Total Due: | $ | 1,234.48 |
| Prior Balance Outstanding: | | 5,420.43 |
| **TOTAL AMOUNT DUE:** | **$** | **6,654.91** |

**INVOICE IS PAYABLE UPON RECEIPT**

**Quarles & Brady** LLP

One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
Tel. 602.229.5200
Fax 602.229.5690
www.quarles.com

Attorneys at Law in:
Chicago, Illinois
Indianapolis, Indiana
Madison and Milwaukee, Wisconsin
ampa, Florida
ttsdale and Tucson, Arizona
DC

## INVOICE SUMMARY

Invoice Number:
Invoice Date:                9, 2017

Rewards Network          ment Services, Inc.
c/o Alice Geene, Gene          unsel
Rewards Network, Inc.
2 North Riverside Plaza
Suite 200
Chicago, IL 60606

For Professional                 hrough December 31, 2016
Re: 15 John Corp                oucherie Inc. Secured
Creditor Represe
Q & B Matter Nu

| | | |
|---|---|---|
| Current Fees: | $ | 322.05 |
| Current Total Due: | $ | 322.05 |
| **TOTAL AMOUNT DUE:** | **$** | **322.05** |

**INVOICE IS PAYABLE UPON RECEIPT**

# Quarles & Brady LLP

One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
Tel. 602.229.5200
Fax 602.229.5690
www.quarles.com

Attorneys at Law in:
Chicago, Illinois
Indianapolis, Indiana
Madison and Milwaukee, Wisconsin
Tampa, Florida
Scottsdale and Tucson, Arizona
DC

## INVOICE SUMMARY

Invoice Number:
Invoice Date: 23, 2017

Rewards Network _____ ent Services, Inc.
c/o Alice Geene, Ge _____ nsel
Rewards Network, Inc.
2 North Riverside Plaza
Suite 200
Chicago, IL 60606

For Professi ___ Servic s Rendered Through January 31, 2017
Re: 15 John ___ oucherie Inc. Secured
Creditor Re
Q & B Matte

| | | |
|---|---|---|
| Current Fees: | $ | 1,474.42 |
| Current Total Due: | $ | 1,474.42 |
| **TOTAL AMOUNT DUE:** | **$** | **1,474.42** |

**INVOICE IS PAYABLE UPON RECEIPT**

**Quarles & Brady** LLP

One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
Tel. 602.229.5200
Fax 602.229.5690
www.quarles.com

Attorneys at Law in:
Chicago, Illinois
Indianapolis, Indiana
Madison and Milwaukee, Wisconsin
Naples and Tampa, Florida
Phoenix, Scottsdale and Tucson, Arizona
Washington, DC

## INVOICE SUMMARY

Invoice Number:
Invoice Date:                              2017

                              Services, Inc.

Suite 200
Chicago, IL 60606

For Professional Services Rendered Through February 28, 2017
Re: 15 John                    Boucherie Inc. Secured
Creditor Re
Q & B Matter                              5

| | | |
|---|---|---|
| Current Fees: | $ | 2,528.34 |
| Credit for No Charge Entries: | | (110.58) |
| Current Total Due: | $ | 2,417.76 |
| **TOTAL AMOUNT DUE:** | **$** | **2,417.76** |

**INVOICE IS PAYABLE UPON RECEIPT**



One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
Tel. 602.229.5200
Fax 602.229.5690
www.quarles.com

Attorneys at Law in:
Chicago, Illinois
Indianapolis, Indiana
Madison and Milwaukee, Wisconsin
Naples and Tampa, Florida
Phoenix, Scottsdale and Tucson, Arizona
Washington, DC

## INVOICE SUMMARY

**Invoice Number:** ███████

**Invoice Date:** April 21, 2017

Rewards Network Establishment Services, Inc.
c/o Alice Geene, General Counsel
Rewards Network, Inc.
2 North Riverside Plaza
Suite 200
Chicago, IL 60606

For Professional Services Rendered Through March 31, 2017
Re: 15 John Corp dba Les Halles/La Boucherie Inc. Secured
Creditor Representation
Q & B Matter Number: ███████

| | | |
|---|---|---|
| Current Fees: | $ | 1,334.73 |
| Current Disbursements: | | 30.00 |
| Current Total Due: | $ | 1,364.73 |
| **TOTAL AMOUNT DUE:** | **$** | **1,364.73** |

**INVOICE IS PAYABLE UPON RECEIPT**



One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
Tel. 602.229.5200
Fax 602.229.5690
www.quarles.com

Attorneys at Law in:
Chicago, Illinois
Indianapolis, Indiana
Madison and Milwaukee, Wisconsin
Naples and Tampa, Florida
Phoenix, Scottsdale and Tucson, Arizona
Washington DC

## INVOICE SUMMARY

Invoice Number:
Invoice Date: 017

Rewards Network _____ ment Services, Inc.
c/o Alice Geene, Ge _____ l Counsel
Rewards Network, Inc.
2 North Riverside Plaza
Suite 200
Chicago, IL 60606

For Professi_____ hrough April 30, 2017
Re: 15 John _____ oucherie Inc. Secured
Creditor Re
Q & B Matte

| | | |
|---|---|---|
| Current Fees: | $ | 782.80 |
| Current Disbursements: | | 30.00 |
| Current Total Due: | $ | 812.80 |
| Prior Balance Outstanding: | | 1,364.73 |
| **TOTAL AMOUNT DUE:** | **$** | **2,177.53** |

**INVOICE IS PAYABLE UPON RECEIPT**



One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
Tel. 602.229.5200
Fax 602.229.5690
www.quarles.com

Attorneys at Law in:
Chicago, Illinois
Indianapolis, Indiana
Madison and Milwaukee, Wisconsin
Naples and Tampa, Florida
Phoenix, Scottsdale and Tucson, Arizona
Washington, DC

## INVOICE SUMMARY

Invoice Number:
Invoice Date:                    017

Rewards Network            ment Services, Inc.
c/o Alice Geene, Ge          l Counsel
Rewards Network, Inc.
2 North Riverside Plaza
Suite 200
Chicago, IL 60606

For Professional          hrough May 31, 2017
Re: 15 John Corp            oucherie Inc. Secured
Creditor Represe
Q & B Matter Nu

| | | |
|---|---|---|
| Current Fees: | $ | 3,288.34 |
| Credit for No Charge Entry: | | (497.61) |
| Current Total Due: | $ | 2,790.73 |
| **TOTAL AMOUNT DUE:** | **$** | **2,790.73** |

**INVOICE IS PAYABLE UPON RECEIPT**



One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004-2391
Tel. 602.229.5200
Fax 602.229.5690
www.quarles.com

Attorneys at Law in:
Chicago, Illinois
Indianapolis, Indiana
Madison and Milwaukee, Wisconsin
Naples and Tampa, Florida
Phoenix, Scottsdale and Tucson, Arizona
Washington, DC

### INVOICE SUMMARY

Invoice Number:
Invoice Date:                017

Rewards Network ███████ment Services, Inc.
c/o Alice Geene, Gen██l Counsel
Rewards Network, Inc.
2 North Riverside Plaza
Suite 200
Chicago, IL 60606

For Professional ██████████rough June 30, 2017
Re: 15 John Corp ████████ucherie Inc. Secured
Creditor Represe████████
Q & B Matter Nu███████

| | | |
|---|---|---|
| Current Fees: | $ | 1,335.22 |
| Current Disbursements: | | 60.00 |
| Current Total Due: | $ | 1,395.22 |
| **TOTAL AMOUNT DUE:** | **$** | **1,395.22** |

**INVOICE IS PAYABLE UPON RECEIPT**

**PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS**


**<u>EXHIBIT 2</u>**

State of New York          }

County of New York         }

        Robert V. Ferrari being duly sworn, deposes, and says:

     I am an attorney duly admitted to practice in the State of New York during the period of the occupancy of La Boucherie Inc at 411 Park Avenue South, Brough of Manhattan, City and State of New York (the "Premises") from 1990 through March 31, 2016 the vacating of the Premises by La Boucherie Inc.

     During 2015, I represented La Boucherie along with Philip Lajaunie (the principal of La Boucherie) in the negotiation to extend the expiring lease of the Premises. Annexed hereto are the following exhibits to this affidavit:

    (a)   Printed Form of Landlord's proposal to modify and extend the expiring lease from December 1, 2015 to November 30, 2025, and ("Landlord's Proposal").

    (b)   Comments to Landlord's Proposal which were prepared and marked up by the undersigned.

    (c)   Robert V. Ferrari letter to Pollack & Sharon LLP dated March 8, 2016 (Landlord's attorneys) in which an offer was made to lease the Premises with Mr. Lajaunie's new entity and Terrance Brenan would be his new partner.

     At the expiration of the Expiring Lease a proceeding was commenced in the Civil Court of the City of New York, County of New York to evict La Boucherie from the Premises as a Holdover tenant. There were numerous court appearances while negotiations were continuing to modify and extend the expiring lease. The most important issue of the lease was the increase of the rent. All of the other disputes were either disposed of or of such a nature that La Boucherie could agree to them except the large increase in the monthly rent.

     Because Terrance Brenan agreed to be his new partner Mr. Lajaunie authorized me to agree with the attorney for the Landlord to pay the demanded rent and get the modified and extended lease signed (See exhibit(c)letter). I then was informed by the landlord's attorney that the landlord no longer wanted La Boucherie as the tenant and therefore the expiring lease would not be extended even through all of the terms and

conditions were resolved. The attorneys then agreed to a move out date and La Boucherie vacated the Premises on or about March 31, 2016.

The rent as requested by the Landlord was not economically feasible until the arrival of Terence Brennan, a world class chef as a 50% owner of the restaurant.

Moreover, The Landlord informed Mr. Lajaunie that he desired the eviction proceeding so that he could use some of the security deposit in lieu of cash rent payment.

_____
Robert V. Ferrari

Sworn to before me this 8th
Day of March, 2018

_____
Notary Public

LEO FOX
Notary Public, State of New York
No. 4639782
Qualified in New York County
Commission Expires December 31, 1993
3/12/18

**PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

**<u>EXHIBIT 3</u>**

## FERRARI & FERRARI LLP

**Attorneys at Law**
630 THIRD AVENUE, 18TH FLOOR, NEW YORK, N.Y. 10017
(212) 972-7040
TELECOPIER (212) 922-1939

ROBERT V. FERRARI
rvf@rvferrari.com
MICHAEL FERRARI
mf@rvferrari.com

March 8, 2016

Pollack & Sharan, LLP
15 Maiden Lane, Suite 1400
New York, NY 10038

      Re:    2727 Realty LLC et, al v. La Boucherie Inc.

Dear Mr. Pollack,

Because the employees at the restaurant are aware that it will be closing soon they are leaving in large numbers and there will not be enough to operate the restaurant. Therefore, my client has decided to close the restaurant and move out by the end of March, 2016.

The security can be used to cover March rent and taxes instead of April, and the vacate date changed to March 31, 2016. Any amount left of the security shall be refunded to Tenant upon inspection on March 31, 2016.

After the vacate will be implemented and security returned, if the space has not been leased by landlord, my client is proposing to enter into a new 10 year lease on the terms previously negotiated except for the rental rate which they can try to resolve now that Philip has a new partner, Terrance Brenan who is considered a world class chef.

We would appreciate a response to the proposal at your earliest convenience.

Very truly yours,

Robert V. Ferrari

**PLAINTIFF'S RULE 56.1 STATEMENT OF
UNDISPUTED FACTS**


**<u>EXHIBIT 4</u>**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

**REWARDS NETWORK
ESTABLISHMENT SERVICES INC., a
Delaware Corporation,**

**Plaintiff,**

**v.**

Case No.  **1:16-cv-09952**

**LA BOUCHERIE, INC., a New York
Corporation; and PHILIP LAJAUNIE, an
individual.**

**Defendants.**

## PLAINTIFF'S FIRST SET OF REQUESTS
## FOR ADMISSION TO DEFENDANT, PHILIP LAJAUNIE

Plaintiff, Rewards Network Establishment Services, Inc. ("RN"), by and through its

undersigned counsel, Dinsmore & Shohl LLP, pursuant to Rules 26 and 36 of the Federal Rules

of Civil Procedure, requests that Defendant, Philip Lajaunie, in writing and under oath, respond

to the following Requests for Admission, within 30 days:

### INSTRUCTIONS

1.      Answer each request separately and fully in accordance with the Rules 26 and 36

of the Federal Rules of Civil Procedure, and the Instructions and Definitions contained herein.

2.      Any word written in singular shall be construed as plural and any word written in

the plural shall be construed as singular as necessary to bring within the scope of the request any

information which might otherwise be construed to be outside its scope.

3.      As used herein the term "all" refers to any and all, and the term "any" likewise

refers to any and all, as necessary to bring within the scope of the request any information which

might otherwise be construed to be outside its scope.

or has personal knowledge of any part of the communication, and (d) a summary of what each person said during or in the communication.

9.      The term "relating to" as used herein with reference to a subject shall mean both of the following: (a) containing, comprising, constituting, stating, setting forth or recording, contradicting, referring to, relating to or in any way pertaining to, in whole or in part, that subject; and (b) describing, discussing, reflecting, interpreting, identifying, concerning, contradicting, referring to, relating to, or in any way pertaining to, in whole or in part, that subject.

10.     The term "communication" includes all discussions, conversations, interviews, meetings, negotiations, e-mails, facsimiles, or other forms of written or verbal intercourse, however transmitted, including reports, notes, memoranda, lists, agenda and other documents and records of communications, and when used shall require a statement of the name of the individual who made the communication, the person(s) to whom it was made, the date it was made, and the form in which it was made.

## REQUESTS FOR ADMISSION

1.   Admit that Exhibit A attached hereto is a true and accurate copy of the Receivables Purchase and Marketing Agreement ("RPMA") between RN and La Boucherie, Inc.

   **ANSWER:**

2.   Admit that Your signature is located on Exhibit A attached hereto.

   **ANSWER:**

3.   Admit that Exhibit B attached hereto is a true and accurate copy of the Personal Liability Agreement of the Receivables Purchase and Marketing Agreement.

   **ANSWER:**

4.    Admit that Your signature is located on Exhibit B attached hereto.

      **ANSWER:**

5.    Admit that Your address as of March 10, 2016 is located on Exhibit B attached hereto.

      **ANSWER:**

6.    Admit that Your phone number as of March 10, 2016 is located on Exhibit B attached hereto.

      **ANSWER:**

7.    Admit that You have not paid to RN any amounts that RN claims are currently due and owing.

      **ANSWER:**

8.    Admit that You have or had an ownership, membership, or other financial interest in La Boucherie, Inc.

      **ANSWER:**

9.    Admit that You are or were employed by La Boucherie, Inc.

      **ANSWER:**

10.   Admit that on March 10, 2016 RN and La Boucherie, Inc. entered into the attached RPMA attached as Exhibit A.

      **ANSWER:**

11.   Admit that on or around March 24, 2016, La Boucherie, Inc. d/b/a Les Halles closed.

      **ANSWER:**

12.   Admit that on or around March 7, 2016, you were aware of the pending eviction proceedings for the property located at 411 Park Avenue South, New York, NY 10016 against La Boucherie, Inc.

      **ANSWER:**

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS

-------------------------------------------------------------------------x

REWARDS NETWORK ESTABLISHMENT SERVICES INC., :

a Delaware Corporation,

          Plaintiff,                :

              v.                    :          Case No. 1:16-cv-09952

LA BOUCHERIE, INC., a New York Corporation;   :          Honorable John Z. Lee

and Philip Lajaunie, an Individual.          :

          Defendants.        :

-------------------------------------------------------------------------x

### Defendants' Supplemental Reply To Plaintiff's First Set of Requests For Admission To Defendant

1.      Deny

2.      Admit

3.      Deny

4.      Admit

5.      Deny. No address is shown on Exhibit B

6.      Deny. No phone number is shown on Exhibit B

10.     Deny. The RPMA as shown in Exhibit A is not complete

12.     Cannot Deny, nor Admit. Lajaunie was aware of the Eviction Agreement with the landlord. This Agreement enabled the Tenant to use the Security Deposit proceeds to pay for ongoing renovations, in preparation to the new lease, and in anticipation of the new Security Deposit Instrument.

15.     Admit that "RN has made demand on You to make payment to RN pursuant to the Personal Liability Agreement attached hereto as Exhibit B."

Respectfully submitted,

**PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

**EXHIBIT 5**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

**REWARDS NETWORK
ESTABLISHMENT SERVICES INC., a
Delaware Corporation,**

**Plaintiff,**

**v.**

**LA BOUCHERIE, INC., a New York
Corporation; and PHILIP LAJAUNIE, an
individual.**

**Defendants.**

**Case No.  1:16-cv-09952**

## PLAINTIFF'S FIRST SET OF
## INTERROGATORIES TO DEFENDANT PHILIP LAJAUNIE

Plaintiff, Rewards Network Establishment Services, Inc. ("RN"), by their attorneys, Dinsmore & Shohl LLP, pursuant to Rules 23 and 33 of the Federal Rules of Civil Procedure, requests that Defendants, Philip Lajaunie, in writing and under oath, answer the following Interrogatories within 30 days of service hereof:

### INSTRUCTIONS

1.      Answer each interrogatory separately and fully in accordance with Rule 26(e) of the Federal Rule of Civil Procedure, and the Instructions and Definitions contained herein.

2.      Any word written in singular shall be construed as plural and any word written in the plural shall be construed as singular as necessary to bring within the scope of the interrogatory any information which might otherwise be construed to be outside its scope.

3.      As used herein the term "all" refers to any and all, and the term "any" likewise refers to any and all, as necessary to bring within the scope of the interrogatory any information which might otherwise be construed to be outside its scope.

contradicting, referring to, relating to, or in any way pertaining to, in whole or in part, that subject.

9.     The term "communication" includes all discussions, conversations, interviews, meetings, negotiations, e-mails, facsimiles, or other forms of written or verbal intercourse, however transmitted, including reports, notes, memoranda, lists, agenda and other documents and records of communications, and when used shall require a statement of the name of the individual who made the communication, the person(s) to whom it was made, the date it was made, and the form in which it was made.

## INTERROGATORIES

1.     Identify the persons verifying the answering these Interrogatories and all persons who assisted in, or provided information used in, the preparation of the answers to these Interrogatories.

**ANSWER:**

2.     Identify all persons with knowledge of any discoverable matter relating to the events in this lawsuit or who have information regarding the allegations contained in Your Answer with Counterclaims to the Complaint.

**ANSWER:**

3.     Identify all banks and commercial lenders from which You have sought and/or received commercial and/or personal loans in the past five years.

**ANSWER:**

4.     Identify any other lawsuits to which You have been a party (either Plaintiff or Defendant) in the past five years, or, if the basis for the lawsuit was an allegation of an act, oath, or affirmation involving dishonesty, if You have ever been a party to such a suit. For lawsuits identified, provide the caption, filing date, presiding court, and resolution to the suit.

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS

-------------------------------------------------------------------------x

REWARDS NETWORK ESTABLISHMENT SERVICES INC., :

a Delaware Corporation,

        Plaintiff,                :

        v.                    :        Case No. 1:16-cv-09952

LA BOUCHERIE, INC., a New York Corporation;    :        Honorable John Z. Lee

and Philip Lajaunie, an Individual.        :

        Defendants.           :

--------------------------------------------------------------------------------x

## Defendants' Supplemental Reply To Plaintiff's First Set of Requests Of Interrogatories To Defendant

a. "Murphy v. LBI, 15J, First Admin Inc., Lajaunie"

US District Court/Southern District of New York, Index 13-cv-6503:

Restaurant Labor suit in progress. Waiting for Order, so as to file an Appeal, with the objective to go to Trial.

b. "Fadaro v. 15 John Corp."

Civil Court of NYC Index 300683/16:

Unpaid restaurant supplier. Disposed of by Chapter 7 Order (see n.).

c. "G&S v 15 John Corp/ La Boucherie/ First Admin Inc/ Lajaunie"

US District Court/ Southern District of New York Index 15-CV-8072:

Unpaid restaurant supplier. Disposed of by Chapter 7 Order (see n.).

d. "JDB Market Corp. v 15 John Corp."

Civil Court of NYC 007174/16:

Unpaid restaurant supplier. Disposed of by Chapter 7 Order (see n.).

e. "D Best Delivery Inc/ Filco Carting Corp. v La Boucherie Inc/ 15 John Corp"

NYS Supreme Court (no index available):

proceeds. Although KDV was only hired by the insurance company, it is suing First Admin Inc and Lajaunie for its unpaid fees. Procedure in progress.

n.  Bankruptcy Court Southern District of NY: 15 John Corp 16-12453

Chapter 11 filed on or about August 21, 2016. Converted to Chapter 7 by Court Order, in January 2018

Respectfully submitted,

By: */s/ Philip Lajaunie*

Philip Lajaunie

970 W. Broadway #84

P.O. Box 30,000

Jackson, WY 83002

PL@FirstAdminInc.com

(917) 771-0727

Defendant appearing Pro se

**PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

**<u>EXHIBIT 6</u>**



**KAUFMAN DOLOWICH VOLUCK**
ATTORNEYS AT LAW

Jeffery A. Meyer, Esq.
jmeyer@kdvlaw.com

Kaufman Dolowich & Voluck, LLP

135 Crossways Park Drive, Suite 201
Woodbury, New York 11797

Telephone: 516.681.1100
Facsimile: 516.681.1101

www.kdvlaw.com

May 31, 2016

**VIA ECF**
The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:     *Murphy et al. v. LaJaunie et al.*
>         *Case Number: 13 CV 6503 (RJS)*

Dear Judge Sullivan:

We represent the Defendants in the above referenced matter. We write, in accordance with Local Civil Rule 1.4, to request a pre-motion conference in anticipation of our motion to withdraw as counsel as a result of Defendants' failure to pay legal fees associated with the defense of this matter.

Local Civil Rule 1.4 permits the Court to relieve an attorney as counsel "upon a showing by affidavit, or otherwise, of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar, and whether or not the attorney is asserting a retaining or charging lien."

When considering whether to grant a motion to be relieved as counsel, Courts analyze two factors: (1) the reasons for withdrawal and; (2) the impact of the withdrawal on the timing of the proceeding. *Battino v. Cornelia Fifth Ave., LLC*, No. 09 C 04113, 2013 WL 4779635, at *1 (S.D.N.Y. June 26, 2013).

An attorney suffers an irreparable injury where he is forced to represent a client against his will to his own financial detriment. Accordingly, Courts have long recognized that a client's continued failure to pay legal fees constitutes a "satisfactory reason" for withdrawal under Local Civil Rule 1.4. *See Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F.Supp.2d 164 (E.D.N.Y. 2006); *Federal Home Loan Mortgage Corp. v. 41–50 78th St. Corp.*, No. 92–cv–5692, 1997 WL 177862 (E.D.N.Y. April 4, 1997); *HCC, Inc. v. R H & M Machine Co.*, No. 96–cv–4920, 1998 WL 411313, at *1 (S.D.N.Y. July 20, 1998) ("It is well-settled that non-payment of fees is a valid basis for granting counsel's motion to withdraw."); *Kolacek v. Gemexco Trading, Inc.*, No. 90–cv–5760, 1992 WL 14991, at *1 (S.D.N.Y. Jan.23, 1992) ("A client's refusal to pay his

Hon. Richard J. Sullivan
May 25, 2016
Page 2 of 3

attorney is also a sufficient reason for permitting the attorney to withdraw."); *Hallmark Capital Corp. v. Red Rose Collection, Inc.*, No. 96–cv–2839, 1997 WL 661146, at *2 (S.D.N.Y. Oct. 21, 1997) (Same).

Here, to date, Defendants' owe outstanding fees of over $100,000 to our firm in connection with the defense of this matter.[1] Defendants have not made any payments toward our outstanding litigation invoices for several months. We have discussed this issue with our clients many times, to no avail. In addition to the financial injury our firm has already suffered, if we are compelled to continue to represent Defendants, we will spend significant time associated with the completion of class discovery, motion practice, trial preparation, trial, and any post-trial practice. As these tasks will take up the time of myself, my associate, and support staff, the continued financial injury that our firm will suffer will be considerable.

In making this application, we are mindful of the fact that the Court must weigh the impact of withdrawal on the progress of the action. We are also mindful of the decisions of various courts denying motions to withdraw made on the eve of trial. *See e.g. Bruce Lee Enterprises, LLC.* v. A.V.E.L.A., No. 10-CV-2333, 2014 WL 1087934 (S.D.N.Y. Mar. 19, 2014) (denying motion to withdraw filed one month before trial). The withdrawal of an attorney disrupts the prosecution of an action regardless of when it occurs. Moreover, the trial in this matter is not days, weeks, or even a month away. Indeed, class discovery is not yet complete, class notices have not been sent out, pre-trial filings are not due for months, and trial is not scheduled to commence until mid-September. Accordingly, in light of the considerable prejudice our firm will suffer if we must continue to represent Defendants without payment, the current procedural posture of this case does not require that Defendants' motion be denied. *See Kariman v. Time Equities, Inc.*, No. 10 CV 3773, 2011 WL 1900092 (S.D.N.Y. May 11, 2011) (motion to withdraw granted even though trial was "several months" away). Indeed, with an appropriate stay of proceedings, a new attorney should be able to become familiar with this matter and proceed with the representation of Defendants.

In addition, to minimize any impact on the prosecution of this matter, we will not seek a retaining lien. Although we fully intend to collect our outstanding fees from Defendants, we will make our file fully available to subsequent counsel.

We have informed Defendants of our intention to file this motion. Philipe Lajaunie, the individual Defendant, understands that he may proceed *pro se*, but must obtain counsel to represents the various corporate Defendants if our motion is granted. Likewise, Mr. Lajaunie understands that he must attend any hearing that may be scheduled as a result of this motion. Mr. Lajaunie has advised us that he is available to attend a hearing on any day prior to June 20, 2016. He will be travelling out of the country from June 21st to July 5th.

---

[1] If requested, we will submit our outstanding invoices to the Court for *in camera* review.

**PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

**<u>EXHIBIT 7</u>**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| REWARDS NETWORK ESTABLISHMENT SERVICES INC., a Delaware Corporation, | |
| Plaintiff, | Case No.  1:16-cv-09952 |
| v. | |
| LA BOUCHERIE, INC., a New York Corporation; and PHILIP LAJAUNIE, an individual. | |
| Defendants. | |

**AFFIDAVIT OF NICOLE H. DANIEL
IN SUPPORT OF AWARD OF ATTORNEYS' FEES AND COSTS**

The Affiant, Nicole H. Daniel, and after being duly sworn states as follows:

1.      I am an attorney in the firm of Dinsmore & Shohl LLP responsible for representing Rewards Network Establishment Services Inc. ("Rewards Network") in the above-captioned action.

2.      I have reviewed our records and Rewards Network's records as to fees and expenses incurred in the above-captioned lawsuit. Partner Timothy Binetti, Associates Alexander Wright, Krysta Gumbiner, Felix H. Sharpe, II and R. Samuel Gilley of Dinsmore & Shohl, LLP were also responsible for representing Rewards Network in this matter.

3.      To date, fees for legal services rendered by Dinsmore & Shohl LLP total $37,583.98. See **Group Exhibit A**. The legal services rendered included pre-litigation diligence, complaint preparation and filing, discovery issuance and compliance, motion practice and numerous discussions with Defendant Philip LaJaunie.

4.    The rates for attorneys who rendered services in this action are reasonable and within prevailing market rates in the area and for the services performed.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Nicole H. Daniel

SUBSCRIBED and SWORN
to before me this 29th day of August, 2018.

_____
Notary Public

OFFICIAL SEAL
LUCY M BORDONADA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/13/20

**AFFIDAVIT OF NICOLE H. DANIEL**

**GROUP EXHIBIT A**

August 17, 2018
Invoice # ▮▮▮▮▮▮

Dinsmore & Shohl LLP
Client Number – ▮▮▮▮▮▮
**Matter: La Boucherie, Inc. d/b/a Les Halles**

### Detail of Current Hours Worked

| Date | Timekeeper | Hours | Description |
|------|-----------|-------|-------------|
| 11/21/16 | NHD | 0.10 | Draft correspondence to local counsel regarding service waiver |
| 11/28/16 | NHD | 0.20 | Draft correspondence to bankruptcy counsel regarding service waivers |
| 11/30/16 | NHD | 1.20 | Draft status report for client |
| 12/05/16 | NHD | 1.20 | Attend status hearing (1.0) review and respond to correspondence to K. DeCicco (.2) |
| 01/10/17 | NHD | 1.60 | Attend status hearing (1.1) Draft correspondence to bankruptcy counsel regarding stay (.5) |
| 02/09/17 | NHD | 0.20 | Draft correspondence to K. DeCicco regarding case status |
| 02/10/17 | KKG | 0.90 | Prepared for and attended status hearing on the matter |
| 02/10/17 | NHD | 0.20 | Draft correspondence to K. DeCicco |
| 05/15/17 | KKG | 0.90 | Attended status hearing. |
| 06/26/17 | NHD | 0.20 | Draft correspondence to K. DeCicco regarding status |
| 08/14/17 | KKG | 1.10 | Attended status hearing. |
| 08/15/17 | NHD | 0.20 | Review and respond to correspondence from K. DeCicco regarding litigation |
| 09/13/17 | NHD | 0.40 | Review modified complaint. |
| 10/02/17 | KKG | 1.10 | Prepared for and attended hearing on motion to amend the complaint. |
| 11/16/17 | NHD | 0.40 | Review stipulation and service. |
| 11/20/17 | KKG | 1.10 | Prepared for and attended hearing regarding status and amended complaint. |
| 12/11/17 | NHD | 0.20 | Telephone conference with P. Lajaunie regarding litigation and settlement. |
| 12/11/17 | NHD | 0.20 | Review and respond to correspondence from P. Lajaunie. |
| 12/13/17 | NHD | 0.90 | Draft motion for default. |
| 12/15/17 | NHD | 0.40 | Finalize motion for default. |
| 12/22/17 | NHD | 0.20 | Draft correspondence to debtor regarding pleadings. |
| 07/02/18 | ANW | 0.30 | Review today's minute order, the matter has been set for an initial status conference before Magistrate Judge Mary M. Rowland. Review Judge's standing orders for initial status conference, no written submission is required but the parties should be able to discuss the details of the same. |
| 07/03/18 | ANW | 0.40 | Review payoff information in preparation for call (.1). Phone call with client regarding payoff / prove-up documentation. Client will forward supporting documents for review (.3). |
| 07/12/18 | ANW | 3.70 | Compile notes regarding case history per Judge's standing order and attend hearing on initial status / motion to compel. Lengthy discussion with PG regarding how we will proceed and how to resolve discovery |

2

August 17, 2018
Invoice # █████████

Dinsmore & Shohl LLP
Client Number – █████████
**Matter: La Boucherie, Inc. d/b/a Les Halles**

| | | | |
|---|---|---|---|
| | | | disputes without further motions (2.5). Prepare follow up email regarding outcome of hearing / phone call with client regarding hearing and next steps. (1). Pull BK records regarding BK court's position on how liability was allocated between entities (.2). |
| 07/17/18 | ANW | 1.10 | Emails to/from Mr. Lajaunie on outstanding items related to his Motion to Compel (.7). Review previously provided responses and prepare outline for conference call with court. (.4). |
| 07/18/18 | ANW | 2.00 | Prepare notes for hearing on motion to compel (.4). Hearing on motion (1). Prepare email to client on court's finding and follow up phone call with client on the same (.6). |
| 07/20/18 | ANW | 2.60 | Multiple conversations with client/team regarding discovery status, timeline and responsive documents (1.3). Receive and review marketing analysis (.3). Email to defendant regarding extension, prepare a file extension motion (1). |
| 07/24/18 | ANW | 2.30 | Outline remaining issues for phone call / phone call with client regarding discovery (1.6). Review and correspond with client regarding privilege log and possible case resolution (.7). |
| 07/26/18 | ANW | 0.90 | Review all prove-up documentation/figures as provided by client to confirm figures contained in affidavit. |

Total Hours    26.20

3

July 12, 2018
Invoice # ▮▮▮▮▮▮

Dinsmore & Shohl LLP
Client Number – ▮▮▮▮▮▮
**Matter: La Boucherie, Inc. d/b/a Les Halles**

### Detail of Current Hours Worked

| Date | Timekeeper | Hours | Description |
|------|-----------|-------|-------------|
| 12/20/17 | KKG | 1.00 | Prepared for and attended hearing on motion for default judgment. |
| 06/01/18 | ANW | 1.90 | Review discovery responses and prepare letter to Lajaunie demanding further clarification and compliant responses (.8). Review client provided prove-up affidavit and begin amending to for federal court (.6). Review client records for default triggers and remedies (.3). Internal conference to discuss discover status (.2). |
| 06/04/18 | ANW | 0.20 | Review and respond to email from individual defendant regarding outstanding discovery on both sides. |
| 06/05/18 | ANW | 0.80 | Review individual defendant's amended written discovery requests. Draft answers to amended interrogatories and draft general objection regarding classification of "loans." |
| 06/12/18 | ANW | 1.80 | Complete updated responses to PG's discovery requests (.8). Review documents that were previously provided to PG in discovery response (.2). Update client affidavit, leave voice message with client to discuss transaction history (.3). Phone call and email review with client - review default figures (.5). |
| 06/13/18 | ANW | 0.70 | Complete discovery responses for Defendant's amended/updated requests. |
| 06/14/18 | ANW | 0.60 | Complete amended discovery responses for review (.3). Emails and phone call with client on discovery / amended responses (.3). |
| 06/15/18 | ANW | 0.70 | Phone conference with client regarding amended discovery response and amendments thereto (.2). Draft email to defendant and submit responses (.2). Review email and supplemental responses form defendant (.3). |
| 06/22/18 | ANW | 1.60 | Review all BK records for history of the same (.3). Review all payoff information provided by client and update / complete prove-up affidavit (1.3.) |
| 06/27/18 | NHD | 1.00 | Attend status hearing. |

Total Hours      10.30

June 20, 2018
Invoice #████████

Dinsmore & Shohl LLP
Client Number – ████████
**Matter: La Boucherie, Inc. d/b/a Les Halles**

### Detail of Current Hours Worked

| Date | Timekeeper | Hours | Description |
|------|-----------|-------|-------------|
| 04/16/18 | NHD | 1.20 | Draft 26 disclosures; Review motion to dismiss. |
| 04/17/18 | NHD | 0.30 | Draft correspondence to P. Bunkley regarding case status and motion to dismiss. |
| 04/22/18 | NHD | 2.40 | Draft answers to interrogatories and responses to production requests. |
| 04/24/18 | NHD | 0.30 | Complete and transmit discovery responses to Rewards Network. |
| 04/26/18 | NHD | 1.80 | Review and redact documents to produce |
| 05/01/18 | NHD | 0.50 | Commence drafting response to motion to dismiss. |
| 05/03/18 | NHD | 1.60 | Continue drafting response to motion to dismiss |
| 05/04/18 | NHD | 2.60 | Complete drafting response to motion to dismiss |
| 05/09/18 | ANW | 0.40 | Review doocket and status of pending motions. Matter is set for status on 5/30. Will need to move forward with motion for summary judgment after motions are ruled on. |
| 05/14/18 | ANW | 0.90 | Review court's Order denying Defendant's Motion to Dismiss and granting Client's Motion to Dismiss. There are no motions currently pending. Review all pleadings in preparation for Judgment Motion against PG. |
| 05/14/18 | NHD | 0.60 | Review court order; Draft correspondence to Rewards summarizing rulings. |
| 05/21/18 | ANW | 0.70 | Defendant has issued further discovery. Review docket, cutoff has passed. Review matter for MSJ and recommend moving for judgment against both defendants concurrently. Review Motion to Compel. |
| 05/21/18 | NHD | 0.70 | Review motion to compel and discovery requests. |
| 05/22/18 | NHD | 0.20 | Review and respond to correspondence from Lajaunie regarding discovery. |
| 05/23/18 | NHD | 0.30 | Review and respond to correspondence from PG regarding discovery. |
| 05/24/18 | NHD | 0.40 | Telephone conference with P. Lajaunie regarding discovery issues. |
| 05/26/18 | ANW | 1.10 | Review pleadings and discovery, begin draft of Rule 56 memo in support of Motion for Summary Judgment. |
| 05/30/18 | ANW | 1.60 | Prepare for and attend status hearing in federal court. Advise court of current status and provide status update after the hearing. |

Total Hours    17.60

June 20, 2018
Invoice #▆▆▆▆▆▆

Dinsmore & Shohl LLP
Client Number –▆▆▆▆▆
**Matter: La Boucherie, Inc. d/b/a Les Halles**

### Detail of Attorney Costs

| <u>Date</u> | <u>Timekeeper</u> | <u>Description</u> | <u>Amount</u> |
|------|-----------|-------------|--------|
| 04/16/18 | MJM | TransUnion Risk & Alternative Data Solut  Online Document Retrieval Services VENDOR: TransUnion Risk & Alternative Data Solut; INVOICE#: 398763/032018; DATE: 4/1/2018 - Acct ID:398763; Billing Period: 3/1/18-3/31/18 | $ 25.00 |
| 05/01/18 | MJM | Pacer Service Center  Online Document Retrieval Services VENDOR: Pacer Service Center; INVOICE#: 5154345-Q12018; DATE: 4/5/2018 - Acct No:5154345 | $ 11.10 |

Total Attorney Costs     $ 36.10

April 20, 2018
Invoice # ███████

Dinsmore & Shohl LLP
Client Number – ███████
**Matter: La Boucherie, Inc. d/b/a Les Halles**

### Detail of Current Hours Worked

| Date | Timekeeper | Hours | Description |
|------|-----------|-------|-------------|
| 03/01/18 | KKG | 1.40 | Prepared for and attended hearing on status of settlement conference. |
| 03/08/18 | TLB | 1.20 | Review magistrate standing order and prepare for settlement conference |
| 03/09/18 | TLB | 1.90 | Review and analyze defendant's response in opposition to motion to dismiss counterclaims and related filings (1.2); prepare for and attend client call to prepare for settlement conference with Magistrate set for March 15, 2018 (.7) |
| 03/14/18 | TLB | 0.70 | Prepare for settlement conference |
| 03/15/18 | TLB | 3.30 | Attend settlement conference |
| 03/15/18 | TLB | 0.40 | Outline reply brief supporting Reward's motion to dismiss |
| ███████ | ███████ | ███████ | ████████████████████████████████████ |
| 03/20/18 | FHS | 3.10 | Continued to draft reply in support of RN's motion to dismiss with focus on argument section. |
| 03/22/18 | TLB | 0.90 | Finalize reply brief in support of motion to dismiss incorporate client comments |
| 03/28/18 | KKG | 1.20 | Prepared for and attend court hearing on status and case management. |

Total Hours      16.50

April 20, 2018
Invoice # ▮▮▮▮▮▮

Dinsmore & Shohl LLP
Client Number – ▮▮▮▮▮▮
**Matter: La Boucherie, Inc. d/b/a Les Halles**

### Detail of Attorney Costs

| Date | Timekeeper | Description | Amount |
|------|------------|-------------|--------|
| 03/09/18 | TLB | Soundpath Legal Conferencing  Audio Conference | $ 4.48 |
| | | VENDOR: Soundpath Legal Conferencing | |
| | | INVOICE#: 5139778200-031218 DATE: 3/12/2018 | |

Total Attorney Costs $ 4.48

March 21, 2018
Invoice # ▊▊▊▊▊▊

Dinsmore & Shohl LLP
Client Number – ▊▊▊▊▊
**Matter: La Boucherie, Inc. d/b/a Les Halles**

### Detail of Current Hours Worked

| Date | Timekeeper | Hours | Description |
|------|-----------|-------|-------------|
| 02/04/18 | NHD | 1.40 | Draft discovery requests, interrogatories and requests to admit. |
| 02/08/18 | KKG | 1.10 | Prepared for and attended hearing on Plaintiff's motion to dismiss counterclaims. |
| 02/08/18 | NHD | 0.30 | Review and respond to correspondence from opposing counsel regarding motion to dismiss counterclaims. |
| 02/20/18 | NHD | 0.70 | Complete drafting discovery requests. |
| 02/22/18 | NHD | 0.50 | Draft settlement demand. |

Total Hours    4.00

February 21, 2018
Invoice #▮▮▮▮▮▮▮

Dinsmore & Shohl LLP
Client Number – ▮▮▮▮▮▮
**Matter: La Boucherie, Inc. d/b/a Les Halles**

### Detail of Current Hours Worked

| Date | Timekeeper | Hours | Description |
|------|-----------|-------|-------------|
| 01/11/18 | NHD | 0.40 | Review counterclaims. |
| 01/12/18 | RSG | 0.40 | Rewards Center: Correspondence with N. Daniel regarding plan to attack Defendant's pleadings in motion to dismiss. |
| 01/12/18 | NHD | 0.30 | Conference with S. Gilley regarding counterclaims and motion to dismiss. |
| 01/16/18 | RSG | 0.50 | Reviewed and analyzed privileged nature of allegedly defamatory statements made in the course of a legal proceeding. |
| 01/16/18 | RSG | 2.30 | Reviewed and analyzed Illinois law distinguishing loans from deferred-payment agreements involving a sale of services. |
| 01/17/18 | RSG | 0.50 | Reviewed and analyzed whether guarantor of a loan has standing to assert breach-of-contract claims involving the loan. |
| 01/17/18 | RSG | 4.70 | Drafted, reviewed, and proofed Motion to Dismiss Counterclaims asserted by Defendant. |
| 01/19/18 | NHD | 1.20 | Attend status hearing. |
| 01/19/18 | TLB | 1.80 | Revise motion to dismiss counterclaims and correspondence with client re motion and update following court hearing and amended scheduling order |
| 01/30/18 | KKG | 1.30 | Prepared for and attended hearing to schedule settlement conference. |

Total Hours     13.40

February 21, 2018
Invoice #▬▬▬▬▬

Dinsmore & Shohl LLP
Client Number –◄▬▬▬▬
**Matter: La Boucherie, Inc. d/b/a Les Halles**

## Detail of Attorney Costs

| Date | Timekeeper | Description | Amount |
|------|-----------|-------------|--------|
| 01/18/18 | NHD | Photocopies | $ 1.65 |
| 01/18/18 | NHD | Photocopies | $ 31.20 |
| 01/18/18 | NHD | Photocopies | $ 3.90 |
| 01/18/18 | NHD | Photocopies | $ 2.10 |
| 01/18/18 | NHD | Photocopies | $ 3.90 |
| 01/18/18 | NHD | Photocopies | $ 3.15 |

Total Attorney Costs        $ 45.90

# Dinsmôre

CALIFORNIA • COLORADO • CONNECTICUT • ILLINOIS
KENTUCKY • MICHIGAN • OHIO • PENNSYLVANIA
WASHINGTON, D.C. • WEST VIRGINIA

Federal ID: 

Rewards Network, Inc.                                    January 17, 2017
Alice Geene                                             Invoice #██████
2 N. Riverside Plaza, Suite 200
Chicago IL 60606

Billing Attorney - Timothy L. Binetti

Client Number -████████
Matter: La Boucherie, Inc. d/b/a Les Halles

---

## Remittance Advice

For Professional Services Rendered Through December 31, 2016:

| | |
|---|---:|
| Current Fee for Hours Worked | $ 0.00 |
| Attorney Costs | $ 585.00 |
| Total Due for Professional Services | $ 585.00 |

---

## Payment Due on Receipt

Please Return a Copy of this Remittance Advice with your Payment to:

**PLEASE NOTE OUR PAYMENT ADDRESS AND ACCOUNT INFO HAS CHANGED**

By Check:    Dinsmore and Shohl LLP
PO Box 639038
Cincinnati, Ohio 45263-9038

By Wire/ACH:    Bank: Fifth Third Bank
████████████████████████
████████████████████████

By Credit Card:    Please visit https://payments.dinsmore.com or call (513) 977-8131



December 20, 2016
Invoice #‬ ████

Dinsmore & Shohl LLP
Client Number –█████
**Matter: La Boucherie, Inc. d/b/a Les Halles**

### Detail of Current Hours Worked

| Date | Timekeeper | Hours | Description |
|------|-----------|-------|-------------|
| 11/01/16 | NHD | 0.20 | Review and respond to correspondence from P. Bunkley |
| 11/09/16 | NHD | 0.30 | Review and respond to correspondence from P. Bunkley; Telephone conference with P. Bunkley regarding service |
| 11/11/16 | NHD | 0.50 | Telephone conference with K. DeCicco regarding service; Draft service waivers |
| 11/15/16 | NHD | 0.30 | Review and finalize waivers; Transmit to counsel |

Total Hours    1.30

December 20, 2016
Invoice # ▮▮▮▮▮▮▮

Dinsmore & Shohl LLP
Client Number – ▮▮▮▮▮▮
**Matter: La Boucherie, Inc. d/b/a Les Halles**

### Detail of Attorney Costs

| <u>Date</u> | <u>Timekeeper</u> | <u>Description</u> | <u>Amount</u> |
|---|---|---|---|
| 11/28/16 | AK | Fifth Third Bank  Filing and Recording Fees VENDOR: Fifth Third Bank; INVOICE#: 1421/102016; DATE: 10/31/2016 - Mastercard charges for Brian Sullivan for October 2016; IL USDC- filing 10/24 | $ 400.00 |
| | | Total Attorney Costs | $ 400.00 |