IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REWARDS NETWORK ESTABLISHMENT SERVICES INC., a Delaware Corporation, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 1:16 cv 09952 |
| LA BOUCHERIE, INC., a New York Corporation; and PHILIP LAJAUNIE, an Individual, | ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO VACATE
DEFAULT JUDGMENT AND TO REOPEN DISCOVERY AND ALLOW
LA BOUCHERIE TO ANSWER PLAINTIFF'S AMENDED COMPLAINT**

Defendants, La Boucherie, Inc. and Philip Lajaunie, by and through their attorneys, Murphy Law Group, LLC, hereby Reply in Support of Their Motion to Vacate Default Judgment and Reopen Discovery and Allow La Boucherie To Answer Plaintiff's Amended Complaint. In reply, Defendants state as follows:

**INTRODUCTION**

Rewards Network Establishment Services Inc.'s ("Rewards") response to Defendants Motion to Vacate Default Judgment and to Reopen Discovery and Allow La Boucherie to Answer Plaintiff's Amended Compliant (the "Motion"), consists of Rewards pointing to certain facts it favors and claiming that those facts trump Defendants'. It's a fact that La Boucherie has been unable to afford an attorney until recently. It's a fact that as a result, no depositions, interrogatories, documents requests, answers, or affirmative defenses have been able to be conducted or filed on La Boucherie's behalf. It's a fact that Rewards' entry of default against La

Boucherie has been entered without a scintilla of litigation of any sort on the merits of Rewards' claims. Additionally, without having to litigate its claims against La Boucherie, Rewards has suffered minimal prejudice and injury in comparison to the $700,000 sanction it wishes to uphold against La Boucherie. Furthermore, being unable to afford an attorney does constitute good cause in the Seventh Circuit. Many factual issues have been raised by Defendants' Motion and Rewards' Response, as to the merits of the case. Finally, the entry default must be vacated in the interests of justice and this Court should allow discovery to be reopened to allow the merits of the case to be litigated.

## ARGUMENT

This Court should vacate the entry of default that was entered against La Boucherie. A party seeking to vacate an entry of default prior to the entry of final judgment must show: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 630 (7th Cir. 2009). La Boucherie has established all three elements. La Boucherie's failure is not willful and in complete disregard of the Court's authority, which courts have found justifies such a drastic sanction. Rather, it is La Boucherie's inability to afford an attorney which has prevented it from answering Rewards' Complaint to date. The Seventh Circuit has held that one's inability to afford an attorney does constitute good cause to vacate an entry of default. La Boucherie's Motion is also timely as it comes two weeks after obtaining counsel. Finally, given the many factual disputes that exist and the proposed affirmative defenses of fraud and breach of contract, La Boucherie has shown that meritorious defenses exist. Thus, the interests of justice require the entry of default be vacated so the merits of the case can be litigated.

Since La Boucherie has established that the entry of default should be vacated, this Court should also allow discovery to be reopened for both Defendants to allow discovery to be conducted into the merits of their defenses. The decision whether to grant a motion to reopen discovery rests within the sound discretion of this Court. *Ty, Inc. v. Publications Int'l, Ltd.*, 99 C 5565, 2003 WL 21294667, at *6 (N.D. Ill. June 4, 2003).

The Court should use its discretion to reopen discovery in this case for both Defendants. Contrary to Rewards' argument, La Boucherie does have standing to request this Court to reopen discovery after the default is vacated. Further, this Court should grant La Boucherie's request since it has been unable to participate in the litigation until it obtained counsel. Given the fact that Lajaunie has represented himself *pro se*, this Court should reopen discovery for him also. Given Lajaunie's limited legal sophistication, he has been unable to conduct sufficient and meaningful discovery into his defenses. Substantial meritorious defenses exist for him. It has been alleged that Rewards procured the Agreement and Guaranty through fraud. Since both La Boucherie and Lajaunie share the same factual and affirmative defenses, discovery conducted by La Boucherie would be the same as if as Lajaunie did it himself. Thus, Rewards would incur minimal prejudice if this Court reopens discovery for both Lajaunie and La Boucherie.

For these reasons, explained in further detail in the arguments below, this Court should vacate the entry of default against La Boucherie and allow discovery to be reopened for both Defendants so the merits of the case may be litigated.

### I.   La Boucherie Has Established Good Cause to Vacate the Default

Contrary to Rewards' argument, La Boucherie's inability to afford an attorney constitutes good cause for this Court to set aside Rewards' Motion for Default. In its Response, Rewards argues that "it is well-established in the Seventh Circuit that having insufficient funds to hire an

attorney is not 'good cause' under Rule 55 standards." *See* Reward's Response, pg. 3. In support of this "well-established" principle, Rewards cites to two cases, *Lyons P'ship, L.P. v. Welle* and *Sharma v. Big Limos MFG, LCC*. *Sharma* is unpersuasive as it evaluated "good cause" with regards to the defendants' misunderstanding as to whether an attorney client relationship had been formed. 2017 WL 2779798, at *4 (N.D. Ill. June 27, 2017). The court does refer to district courts' holdings that a party's delay in retaining counsel is an insufficient cause. However, the citation to *Lyons* was in support of the argument that routine problems, such as miscommunications, are insufficient to constitute "good cause" under Rule 55(c). Failing to have the necessary funds to hire an attorney can hardly be considered a routine problem suffered by La Boucherie that should prevent them from having the opportunity to litigate the case on its merits.

Rewards' citation to *Lyons* is also not persuasive. Unlike La Boucherie who has been unable to afford an attorney to represent its interests until recently, the defendants in *Lyons* were able to retain counsel, Christopher Haigh, at the outset of the case. 2010 WL 680877, at *1 (N.D. Ill. Feb. 22, 2010). However, shortly after being retained Haigh was suspended from practicing law in the Northern District, and the defendants failed to contact the court or notify it that they were proceeding *pro se*. *Id.* After the defendant's failed to answer the complaint, the plaintiffs filed a motion for entry of default and the court held a hearing in which the defendants failed to appear. *Id.* Instead, Haigh appeared and attempted to tell the court that the defendants had retained a new attorney, Steve Silvey, who had failed to file an appearance at that time. *Id.* After the entry of default was made, the defendants filed a motion to have it set aside claiming that their cash flow problems prevented them from immediately retaining counsel after Haigh was suspended. *Id.* at * 3. The court rejected the argument stating that nothing prevented the defendants themselves from attending the hearing or Silvey from attending and explaining that he was intending to file

{00294537} 4

an appearance on behalf of the defendants. *Id.* It was that defendants' lack of "due regard for the Court and the process" rather than their inability to afford an attorney that persuaded the court to deny their request to vacate the default.

The current case is drastically different from *Lyons*. La Boucherie was not represented by an attorney at any point before the entry of default. While the entry of default was entered due to La Boucherie's failure to answer the complaint, it was not for its willful disregard for the Court's authority. The defendants in *Lyons* were individuals who could have shown up to the hearing on the motion to enter default and represented their interests. It was the defendants' complete disregard for the court's authority, rather than the defendants' excuse about their cash flow, that led the court to refrain from finding good cause. Rewards fails to recognize that without the necessary funds to hire an attorney, Lajaunie was prohibited by law to represent La Boucherie's interests and answer the complaint on its behalf, because *pro se* individuals cannot represent a corporation. La Boucherie being destitute should not be equated to such disregard of the Court's authority.

Further, Rewards' claim that the inability to afford an attorney is not "good cause" under Rule 55 in the Seventh Circuit is not "well established." To the contrary, in *Allen Russel Pub. v. Levy*, the court found that a defendant's inability to afford an attorney did constitute good cause under the less stringent standards of Rule 55(c). 109 F.R.D. 315, 318 (N.D. Ill. 1985). Thus, La Boucherie's failure to afford an attorney does constitute good cause. Rewards claims that La Boucherie has not provided evidence of its financial situation to prove it couldn't afford an attorney. Such an argument is not well founded. Any rational person who is facing an almost $700,000 breach of contract claim would hire an attorney if he or she could afford one. Rewards fails to account for La Boucherie's grim financial situation. La Boucherie abruptly closed its doors

in 2016 and was unable to file for either Chapter 7 or 11 bankruptcy, due to a complete lack of funds. 15 John Corp. also filed for Chapter 11 bankruptcy in 2016, which was converted to Chapter 7 shortly after it was forced to close in July 2017. Given both closures and 15 John's bankruptcy filing, common sense dictates that La Boucherie's financial situation would be in dire straits and not sufficient to afford an attorney.

Rewards also fails to recognize that a default judgment is a sanction for misconduct during the litigation. *Sims v. EGA Products, Inc.*, 475 F.3d 865, 868 (7th Cir. 2007). Rule 55(c) requires "good cause" for the judicial action, not "good cause" for the defendant's error, the phrase is not a synonym for "excusable neglect." *Id.* Defaults may be set aside for "good cause" and damages disproportionate to the wrong afford good cause for judicial action, even though there is no good excuse for the defendant's inattention to the case. *Id.* Seventh Circuit decisions have indicated that a high-value default judgment warrants a high level of scrutiny by a district court. *Fed. Trade Comm'n v. Construct Data Publishers,* 2014 WL 7004999, at *5 (N.D. Ill. Dec. 11, 2014).

Here there has been an entry of default granted and Rewards is now moving to have default judgment entered against La Boucherie for almost $700,000, all without any litigation on the merits. If La Boucherie did in fact breach the contract, the only injury that Rewards has suffered is the attorneys' fees it has incurred pursuing its claims and the delay in getting paid under the Agreement. However, section 13(a) of the agreement clearly provides that La Boucherie will be liable to Rewards for all attorneys' fees, costs, and amounts due in the event of non-performance. Thus, Rewards will be fully compensated for its "injuries" if it succeeds on its claims. Such a slight injury that Rewards may currently have, does not call for a $700,000 default judgment, especially when such a delay merely causes some anxiety and marginal legal expenses. *Sims*, 475 F.3d at

869. The sanction should fit the offense and is a major reason why district judges should not enter defaults cursorily. *Id.*

Due to the fact that Rewards can collect its costs if it succeeds on its claims and the fact that the merits of the case have not been litigated, this Court should not allow a drastic sanction of almost $700,000 to be imposed on La Boucherie. This is especially true, considering that Rewards has only suffered marginal attorneys' fees in pursuing the entry of default against La Boucherie. Given these facts and La Boucherie's inability to afford an attorney until now, good cause has clearly been established.

## II. La Boucherie's Motion To Vacate The Default Is Timely

In its response, Rewards claims that La Boucherie did not take swift action in moving to vacate the default. It argues that La Boucherie's motion came 256 days after entry, much longer than the nine days in *Lyons*. Rewards argues that Lajaunie appeared many times in court after the entry of default and never once took steps to set it aside. However, Rewards remains mistaken about clearly established law in the Seventh Circuit, that *pro se* litigants are unable to represent corporations. *Nocula v. Tooling Systems International Corp.*, 520 F. 3d 719, 725 (7th Cir. 2008). As such, Lajaunie could not have taken the necessary steps, even if he wanted to set the default aside. Furthermore, the court found in *Allen* that a nine-week delay in filing the motion to vacate after the default was entered, was timely and caused no prejudice to the opposing party due to the defendant's inability to afford an attorney sooner. 109 F.R.D. at 319. Since La Boucherie filed its motion to vacate a mere two weeks after retaining counsel and Rewards has not been prejudiced, the motion is clearly timely.

## III. La Boucherie Has Meritorious Defenses

{00294537} 7

Rewards' response establishes that many factual issues remain in dispute between the parties. As argued in its motion to vacate, La Boucherie claims that there are factual issues regarding the negotiating of its lease with the landlord and regarding La Boucherie's continued operations. La Boucherie also claims that Rewards' representations both before and after the signing of the Agreement defeats Rewards' claims La Boucherie committed fraud and breached the Agreement. In its response, Rewards merely points to facts it favors and claims it should win no matter what. Thus, there are clearly factual issues on the merits that require litigation.

No discovery has been conducted to discover the validity of the facts. All that has occurred is that Rewards filed a complaint with its version of the facts and then filed a motion for entry of default, when La Boucherie was not in a position to defend itself. Now Rewards is merely pointing to its facts and saying they trump La Boucherie's version of events. The entry of default should be vacated and discovery allowed to assess the validity of both party's facts and litigate the merits of the case, rather than rely on Rewards' one-sided account.

Rewards first takes issue with La Boucherie's good faith belief that its operations would continue for the next 10 years when it signed the Agreement with Rewards. Rewards claims that La Boucherie's belief defies logic because it was a hold over tenant at the time of signing the Agreement. However, as argued in its motion to vacate and as stated in Ferrari's Affidavit, La Boucherie was in negotiations throughout 2015 with its landlord about extending the lease on its premises. The only significant issue in dispute between the parties was the increase in rent. Because the parties could not reach an agreement before the expiration of the lease, the landlord initiated the eviction proceeding in order to use the security deposit in lieu of rent payments during the negotiations. This was communicated by the landlord to Lajaunie. If the landlord did not

{00294537}    8

believe a favorable agreement could be reached with La Boucherie about the rent amount, it would have evicted La Boucherie well before March 2016, since the lease expired in November of 2015.

Rewards also claims that the letter attached to Ferrari's Affidavit further undermines La Boucherie's good faith belief that its business would continue. However, Ferrari's Affidavit states that the letter was written on behalf of Lajaunie, to agree with the landlord's demanded rent and extend the lease, shortly after Lajaunie retained Terrance Brenan. Rewards claims that the letter Ferrari wrote completely contradicts La Boucherie's good faith belief because, as the letters states that La Boucherie's employees are leaving because the restaurant is closing soon.

However, the letter states that Terrance Brenan was brought on as a new partner of Lajaunie's and they were willing to agree to the previously negotiated 10-year lease, save for the rent amount which could be resolved because Brenan was brought on board. Rewards is taking all the allegations in the letter as truthful. What Rewards fails to recognize is that this letter was written in the middle of lease negotiations. Puffery is expected in negotiations. La Boucherie and the landlord had already negotiated a lease at that time. Since Brenan became a new partner, La Boucherie believed that it could agree on a new rent increase with the landlord. Thus, La Boucherie may very well have had a good faith belief that its lease would be extended for 10 years on March 8, 2016. At the very least, discovery should be allowed to determine the truth.

Rewards also claims that Section 2 of the Agreement is clear and does not excuse La Boucherie's obligation to pay back the receivables. However, this is another factual dispute. A look at Section 2 establishes that a merchant's responsibility to pay back the receivables after it goes out of business is ambiguous at best. At the start of the paragraph it states that each entity will remit receivables until Rewards has collected the Amount Sold. A sentence later, it states that if a merchant goes out of business, the merchant "will have no obligation to continue to remit

receivables or make payments to [Rewards]." Skip ahead one more sentence and again it states that both entities are obligated to remit payments until Rewards collects the entire Amount Sold. Nothing is clear about Section 2 of the Agreement. It is well established that mutual assent to the terms of the contract is needed in Illinois to form a binding contract. *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 660 (N.D. Ill. 2012). Section 2 of the Agreement raises the issue of mutual assent on its face. As such, the intent of the parties must be discovered as to their mutual agreement about what the terms of Section 2 meant at the time of signing the Agreement.

Finally, Rewards claims that the Agreement could not have been modified over a phone call, because Paragraph 31 requires all modifications to be in writing. However, it has not been alleged by La Boucherie that the Agreement was modified over a phone call. Rather, it has been alleged that meetings occurred on April 4, 2016 and August 2017 in which the terms of the Agreement were modified to require 15 John Corp to solely pay off its and La Boucherie's portions of the Amount Sold. Further, there may be communications between attorneys sufficient to modify the terms of the Agreement. As such, writings modifying the Agreement may exist. However, without any factual discovery, this will remain unknown. This only reinforces La Boucherie's argument that due to the slight prejudice that would be inflicted on Rewards, the entry of default should be vacated and discovery should be conducted into the factual merits of La Boucherie's defenses.

**IV. La Boucherie Possesses Potential Affirmative Defenses**

Finally, Rewards fails to address La Boucherie's affirmative defenses that were alleged in its proposed answer to Rewards' Complaint, which was attached as an exhibit to the Motion. It is clear that the entry of default should be vacated to allow discovery into the validity of La Boucherie's claims, as the defenses may absolve it of any and all liability.

In its proposed Answer, La Boucherie alleges that Thompson, a Rewards' representative, made fraudulent misrepresentations to Lajaunie regarding his liability under the personal guaranty. It was alleged that Thompson made the misrepresentations to fraudulently induce Lajaunie into signing the Agreement as La Boucherie's corporate representative. Rewards did not address the truthfulness of the allegations relating to Thompson's representations to Lajaunie in the March 8, 2016 email. Rewards' conduct clearly shows that it never intended to refrain from holding Lajaunie liable under the contract, if La Boucherie went out of business and filed for bankruptcy. La Boucherie also alleges that Rewards promised to provide a marketing program to encourage Lajaunie to sign the Agreement. However, no such marketing program was ever provided for 15 John Corp. If true, this would further bolster La Boucherie's claim that Rewards fraudulently induced Lajaunie into signing the agreement. If Rewards did in fact fraudulently induce La Boucherie into signing the Agreement, such an affirmative defense would negate La Boucherie's liability under the Agreement.

La Boucherie also alleged that Rewards failed to perform under the Agreement. It was alleged that Rewards was on notice that La Boucherie closed its doors and knew and agreed that it would have to provide aggressive marketing to 15 John Corp. to allow the Amount Sold to be paid back. Without being provided any marketing by Rewards, 15 John Corp. was also forced to close its doors. Rewards' failure to perform under the Agreement would certainly relieve La Boucherie of its obligations.

Instead of addressing the sufficiency of La Boucherie's affirmative defenses, Rewards argues that La Boucherie's motion is untimely and it lacks standing to even request discovery to be reopened. However, the proposed affirmative defenses show that La Boucherie possesses

potential affirmative defenses that are meritorious and would absolve it of liability under the Agreement. For these reasons alone, the Court should vacate the default and reopen discovery.

### V. Cause Exists To Reopen Discovery For Both Defendants

Rewards' argument that this Court should not reopen discovery lacks merit and any evaluation of what the interests of justice require. This Court should reopen discovery for Defendants to allow them to jointly conduct discovery into their claims and defenses. If this Court vacates the entry of default against La Boucherie, it should allow La Boucherie to conduct discovery on its behalf. Also, given the fact that Lajaunie is La Boucherie's principle and co-defendant, any defenses that exist would be shared equally amongst them. Lajaunie attempted to conduct discovery on his own behalf, but his failed to do so in a meaningful way. Given the fact that the affirmative defense of fraud may exist and discharge Lajaunie of liability under the personal guaranty, this Court should not bind Lajaunie to his insufficient discovery attempt. This Court should use its discretion in the interests of justice and allow discovery to be reopened for Lajaunie as well.

First, Rewards claims that La Boucherie lacks standing to request the court to reopen discovery. Rewards correctly states that once a party has been found in default, they are no longer a party for discovery purposes. *Standard Mut. Ins. Co. v. Barkley*, 2012 WL 13081715, at *3 (N.D. Ind. Apr. 4, 2012). La Boucherie does not dispute that while the default is in place, it lacks standing as a non-party to request discovery to be reopened. This is why La Boucherie has filed the motion to vacate the entry of default and then, together with Lajaunie, also to reopen discovery.

Filing a motion to vacate and then reopen discovery is common practice and such motions have been granted by district courts in the Seventh Circuit. *See Califano v. Donnelley Mktg.*, 90 C 2845, 1990 WL 259095, at *1 (N.D. Ill. Dec. 27, 1990). Rather than make a meritorious argument, Rewards argues that being indigent and unable to afford an attorney equates to one

sleeping on his rights. Such an argument is inconsiderate and unpersuasive. La Boucherie filed the motion to vacate and reopen discovery immediately after obtaining funds and retaining an attorney. Since many of the factual issues and defenses are shared between the La Boucherie and Lajaunie, if discovery were to be conducted by La Boucherie, it would be conducting discovery into the Lajaunie's defenses as well. Rewards does not argue that La Boucherie must be bound by Lajaunie's discovery attempt, because it cannot. La Boucherie is a separate defendant and Lajaunie could not have conducted discovery on its behalf. Thus, this Court should reopen discovery with regards to La Boucherie.

Rewards' second argument that this Court should not reopen discovery with regards to Lajaunie, also misses the mark. Rewards claims that discovery should not be reopened due to the fact that Lajaunie conducted much discovery on his own behalf. Rewards argues that Lajaunie must bear the burden of his errors. Finally, Rewards claims that Judge Rowland has already granted Lajaunie a wide scope in his discovery requests, to avoid another referral. However, Rewards fails to appreciate the difficulty a *pro se* litigant has in adequately representing themselves and conducting discovery against sophisticated lawyers, especially when dealing with a set of complex facts as in the current case.

While Lajaunie did proceed *pro* se, he was required to because of the closing of both of his restaurants and the bankruptcy of 15 John Corp. prevented him from having the funds necessary to hire an attorney. Lajaunie is not like the defendant in *People v. Allen*. In *Allen*, the defendant represented himself in a criminal trail *pro se*, but on appeal he argued he was not mentally competent to stand trial. 401 Ill.App.3d 840, 841–42 (2010). Before trial, the defendant had fired his counsel. *Id.* The defendant was admonished about the consequences of proceeding *pro se* and that he would be required to perform as an attorney would and the court could not provide any

legal assistance to him. *Id.* By proceeding *pro se* the court held that the defendant could not complain of a situation of his own making. *Id.* Here, Lajaunie did not have the opportunity to fire his counsel, because he could not afford one in the first place. Nor should it be argued that his indigence and failure to sufficiently conduct discovery is a situation of his own willful making. Rather, this Court should recognize the significant difficulty Lajaunie faced in conducting discovery against a very sophisticated party and the minimal cost Rewards has incurred in opposing Lajaunie's discovery requests. Rewards should not reap the benefit of proceeding against Lajaunie when he was without counsel, especially when the facts warrant this Court to vacate the default and reopen discovery with regards to La Boucherie.

Lajaunie also shares the same affirmative defenses that La Boucherie has alleged in its proposed answer. La Boucherie alleges that Lajaunie was fraudulently induced into signing the personal guaranty. An allegation of fraud is significant and serious. If Lajaunie was fraudulently induced into signing the personal guaranty, the personal guaranty would be rendered void and Lajaunie would be absolved of any liability under it. Count III of Rewards' Complaint alleges that both Lajaunie and La Boucherie committed fraud. Since a judgment against Lajaunie would be based upon Rewards' claim of fraud, the $700,000 would be considered non-dischargeable under bankruptcy law. 11 U.S.C.A. § 523(a)(2)(A) (West 2018). Given the significant prejudice Lajaunie would face and his meritorious defense against Rewards' claim of fraud, this Court should also allow discovery to be reopened to allow Lajaunie to conduct discovery, this time through counsel, into the merits of the claims and defenses in this case.

## CONCLUSION

La Boucherie has satisfied all three elements for this Court to vacate the entry of default against it. La Boucherie's failure to afford an attorney constitutes good cause and it took swift

action to vacate the default once counsel was obtained. Contrary to Rewards' arguments, many factual issues have been raised by La Boucherie as meritorious defenses to Rewards' claims. Rewards' own motion raises more questions regarding the factual circumstances and validity of the Agreement, than it answers. Thus, the interests of justice require that the entry of default must be vacated. As such, discovery should be reopened to allow both Defendants to investigate the merits of Rewards' claims and any defenses Defendants may have. Only after the merits of the case have been fully litigated, will the truth regarding Rewards' claims surface.

WHEREFORE, Defendants, La Boucherie and Lajaunie, request that this Court reopen discovery to allow discovery to be conducted into the sufficiency of Plaintiff's claims, to vacate the default judgment entered against La Boucherie, allow La Boucherie to file an Answer to Plaintiff's Amended Complaint, and for any other relief the Court deems just and merited.

Date: November 13, 2018

Respectfully Submitted,

LA BOUCHERIE, INC. and PHILIP LAJAUNIE

By: /s/ Eugene E. Murphy, Jr.
     One of Their Attorneys

Eugene E. Murphy, Jr. (ARDC No. 6198863)
MURPHY LAW GROUP, LLC
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
Phone (312) 202-3200
gmurphy@murphylitigation.com

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that a true and correct copy of the above and foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO VACATE DEFAULT JUDGMENT AND TO REOPEN DISCOVERY AND ALLOW LA BOUCHERIE TO ANSWER PLAINTIFF'S AMENDED COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this case on November 13, 2018.

                                                               /s/ Eugene E. Murphy, Jr.